LOCKE LORD LLP
Regina J. McClendon (SBN 184669)
rmcclendon@lockelord.com
Xiyi Fu (SBN 278274)
jackie.fu@lockelord.com
101 Montgomery Street, Suite 1950
San Francisco, CA 94104
Telephone: (415) 318-8810
Fax: (415) 676-5816

Attorneys for Defendants
U.S. Bancorp and U.S. Bank National Association

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL D. MEIER, | CASE NO.: 3:18-cv-03917-JST |
| Plaintiffs, | **DECLARATION OF WILLIAM WELLS IN SUPPORT OF DEFENDANTS U.S. BANCORP AND U.S. BANK NATIONAL ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| US BANCORP, US BANK NATIONAL ASSOCIATION, QUALITY LOAN SERVICE CORPORATION, AND DOES 1-100, inclusive, | |
| Defendants. | Date: January 10, 2019 |
| | Time: 2:00 p.m. |
| | Place: Courtroom 9 – 19th Floor |
| | Complaint Filed: June 5, 2018 |

I, William M. Wells, declare:

1.      I am over the age of eighteen and am authorized to make this Declaration on behalf of U.S. Bank National Association ("U.S. Bank") in my capacity as an employee. I have been employed by U.S. Bank for 15 years.

2.      U.S. Bank National Association is a national bank chartered under the National Bank Act and a subsidiary of U.S. Bancorp, which is a publicly traded company. U.S. Bank Home

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104

Mortgage is a division of U.S. Bank. Neither U.S. Bank National Association nor U.S. Bancorp is an authority of the Government of the United States.

3. Through the course of my job duties, I have knowledge that U.S. Bank maintains a computer database (the "Loan Records") of acts, transactions, payments, communications, escrow account activity, disbursements, events, and analyses with respect to the mortgage loans it services. The information and documents described here and referenced below are found in U.S. Bank's business records. The Loan Records are kept in the regularly conducted activity of U.S. Bank and the Loan Records are made as a regular practice of U.S. Bank's business. The entries in the Loan records are made at the time of the events and conditions that they describe either by people with firsthand knowledge of those events and conditions or from information provided by people with such firsthand knowledge. I have access to the Loan Records with respect to the subject loan, and have knowledge of how they are maintained. Included in the Loan Records is a notes log in which U.S. Bank employees document the substance of all phone calls concerning a particular account. The entries in the notes log are made contemporaneously with the phone call; U.S. Bank employees are trained to enter the substance of all matters discussed on the phone call into the notes log. Based upon the Loan Records, I have gained knowledge of the facts set forth here and am familiar with the servicing of Plaintiff's loan. If called upon as a witness to testify, I could and would competently testify as to those facts, under penalty of perjury.

4. U.S. Bank National Association is the owner and holder of the original Adjustable Rate Note (the "Note") made by Plaintiff Carole Meier ("Plaintiff") in favor of Downey Savings and Loan Association, F.A. ("Downey") on or about March 30, 2006, in the amount of $600,000.00 (the "Loan"). U.S. Bank has physical possession of the original "wet-ink" Note. A true and correct copy of the Note is attached hereto as Exhibit 1.

5. The Note is secured by a deed of trust (the "Deed of Trust") granted by Plaintiff on or about March 30, 2006, for the property which has the address of 61 Rudgear Drive, Walnut Creek, California 94596 (the "Property"). A true and correct copy of the Deed of Trust is attached hereto as Exhibit 2.

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104

6.      On November 21, 2008, the Federal Deposit Insurance Corporation (the "FDIC") as receiver for Downey, and U.S. Bank entered into a Loan Sale Agreement Single Family Loss Share Version ("LSA"), whereby U.S. Bank agreed to purchase certain of Downey's assets, including the Loan. A true and correct copy of the LSA, along with relevant portion of Attachment "A" showing Plaintiff's loan, is attached hereto as Exhibit 3.

7.      On April 20, 2009, the FDIC and U.S. Bank entered into an Assignment and Assumption of Interest and Obligations to effectuate the consummation of the sale of Downey's loans pursuant to the LSA. A true and correct copy of the Assignment and Assumption of Interest and Obligations is attached hereto as Exhibit 4.

8.      On May 23, 2012, Debra Weise executed an Assignment of Deed of Trust and caused it to be recorded on October 4, 2012, memorializing the transfer of the beneficial interest under the Deed of Trust to U.S. Bank. A true and correct copy of the Assignment of Deed of Trust is attached hereto as Exhibit 5.

9.      A Notice of Default and a Notice of Trustee's Sale were recorded on April 21, 2010, and July 27, 2010, respectively. True and correct copies of the Notice of Default and Notice of Trustee's Sale are attached hereto as Exhibits 6 and 7, respectively.

10.     At the time the Notice of Default was recorded, the Loan was due for the December 2009 payment and payments that became due thereafter.

11.     A second Notice of Trustee's Sale was recorded on January 18, 2012. A true and correct copy of the Notice of Trustee's Sale is attached hereto as Exhibit 8.

12.     Old Republic Default Management Services ("Old Republic") was substituted as the trustee under the Deed of Trust as of February 25, 2013.  A true and correct copy of the Substitution of Trustee recorded in the Contra Costa County Recorder's office on June 4, 2013 is attached hereto as Exhibit 9.

13.     Two additional Notices of Trustee's Sale were recorded on June 4, 2013, and August 18, 2014, respectively. True and correct copies of the Notices of Trustee's Sale are attached hereto as Exhibits 10 and 11, respectively.

DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*Meier v. US Bancorp, et al.* Case No. 3:18-cv-03917-JST

14. U.S. Bank has not entered into any contract with Plaintiff for the improvement of the Property.

15. U.S. Bank has not entered into any contract for the improvement of the Property.

16. On or about May 12, 2014, U.S. Bank received certain documents from Plaintiff, and one was titled "Non Negotiable Payment Bond."

17. On or about May 23, 2014, U.S. Bank received the following documents from Plaintiff:

    a.    Proof of Service;

    b.    Verified Default in Dishonor, Certificate of Non-Response, Certificate of Estoppel;

    c.    First Notice of Fault - Opportunity to Cure; and

    d.    Demand for Verified Proof of Claim.

18. On May 29, 2014, U.S. Bank acknowledged receipt of the documents and responded as follows: "The statements made and documents contained within your correspondence do not alter or change the nature or terms of your agreement with U.S. Bank in any way nor is your contractual obligation to repay the balance owed on this account in full neither discharged nor forgiven." A true and correct copy of the letter dated May 29, 2014 is attached hereto as Exhibit 12.

19. U.S. Bank did not return the "payment bond" as it is not a valid bond.

20. Plaintiff appears to allege that she served U.S. Bank with the "Second Notice of Fault – Opportunity to Cure" and "Second Notice of Default Certificate of Non-Response" on August 11, 2014 and "Third and Final Notice of Default in Dishonor" on September 30, 2014. U.S. Bank received the "Third and Final Notice of Default in Dishonor" on October 7, 2014. U.S. Bank did not respond to this document because the "payment bond" was worthless and did not satisfy or alter Plaintiff's obligations under the Deed of Trust and Note. U.S. Bank did not receive the "Second Notice of Fault – Opportunity to Cure" and "Second Notice of Default Certificate of Non-Response" contemporaneous to the time that they were allegedly sent to U.S. Bank.

21. U.S. Bank has not "used" the "payment bond."

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104

22.     U.S. Bank has not received any funds from anyone in connection with Plaintiff's "payment bond." Had U.S. Bank received such funds, it would have applied the funds to the Loan and the payment history would display the application of the funds to the Loan. Attached as Exhibit 13 is a true and correct copy of the payment history for the Loan. The payment history shows that no payments were received on the Loan after November 2011.

23.     U.S. Bank has no record of receiving the correspondence from Plaintiff on or about March 21, 2014, attached to Plaintiff's complaint as Exhibit G. If this document was received by U.S. Bank, there would been an entry so indicating in the servicing notes. Such entry does not exist.

24.     U.S. Bank has not authorized Old Republic to receive notices of error, qualified written requests, or requests for information such as Plaintiff's March 21, 2014 correspondence that is attached as Exhibit G to Plaintiff's Complaint.

25.     Plaintiff remains in default on the Note and Deed of Trust. U.S. Bank received the last payment on the Loan on November 28, 2011 and applied it to the payment that was due for January 2010. The Loan is currently due for the February 2010 payment and all payments that became due thereafter.

26.     Quality Loan Service Corporation was substituted as the trustee under the Deed of Trust as of November 4, 2015. A true and correct copy of the Substitution of Trustee recorded in the Contra Costa County Recorder's office on November 13, 2015 is attached hereto as Exhibit 14.

27.     On February 15, 2018, a Notice of Default and Election to Sell under Deed of Trust was recorded. A true and correct copy of the Notice of Default and Election to Sell under Deed of Trust is attached hereto as Exhibit 15.

28.     Two Notices of Trustee's Sale were recorded on May 24, 2018, and August 3, 2018, respectively. True and correct copies of the Notices of Trustee's Sale are attached hereto as Exhibit 16 and 17, respectively.

29.     The most recent trustee's sale was scheduled for September 11, 2018. The sale was postponed due to Plaintiff's filing of Chapter 11 bankruptcy.

30.     As of the date of this declaration, the Loan is not paid in full and is more than 104 months past due. The outstanding balance owing on the Loan is over $832,632.23.

DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*Meier v. US Bancorp. et al.*. Case No. 3:18-cv-03917-JST

1    31.    U.S. Bank has not foreclosed on the Property.

2    32.    U.S. Bank Home Mortgage is a division of U.S. Bank National Association.

3    33.    U.S. Bancorp, the parent of U.S. Bank National Association, does not own or service

4    the Loan.

5    I declare under penalty of perjury under the laws of the United States of America that the

6    foregoing is true and correct and that this declaration was executed on November  2 , 2018.

7

8    _William M. Wells_

9    William M. Wells, Vice President

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104

State of Kentucky
County of Daviess

The foregoing instrument was subscribed and sworn to before me this 
(date), by William M. Wells, Vice President, of U.S. Bank National Association, a
federally chartered banking association, on behalf of U.S. Bank National
Association.

_(signature of notary)_                                        (seal)

State at Large

```
OFFICIAL SEAL
SARA SMITH
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires Feb. 21, 2021
ID # 574004
```

Exhibit 1

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| March 30, 2006 | Walnut Creek | CA |
|---|---|---|
| [Date] | [City] | [State] |

**61 Rudgear Drive, Walnut Creek, CA 94596**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **600,000.00** (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **Downey Savings and Loan Association, F.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.125%** beginning with my first monthly payment. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay a monthly payment of accrued interest only for the first 60 months of this loan by making a payment every month. Beginning on the 61st month, I will pay principal and interest by making a payment every month thereafter.

I will make my monthly payments on the first day of each month beginning on **June 1, 2006**

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **May 1, 2046** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 6060, 3501 Jamboree Rd, Newport Beach, CA 92658-6060**
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ **2,562.50** . This amount may change.

■■■6026

MULTI STATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family

A106N1.UFF (09/07/04) CR22228 RG

Page 1 of 4          Initials: *[initials]*

USB_0044

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **November, 2006** , and on that day every six months thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the date 30 days before each Change Date is called the "Current Index."

If the index is no longer available, or is no longer published, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **two and three-quarters** percentage points (**2.750 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (.125%). Subject to the limits stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **6.125 %** or less than **4.125 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point(s) (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **11.500 %**.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If I make a partial Prepayment during the first sixty (60) months of this loan, my monthly payments due for the remaining portion of this sixty (60) month period will not change as a result of my Prepayment, but a portion of my monthly payments after my partial Prepayment may reduce the Principal. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

■ **6026** Initials

**USB_0045**

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen (15)** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

▮6026

Initials:

USB_0046

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**CAROL MEIER**          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

[Sign Original Only]

6026

A106N4.UFF (09/07/04) CR22228 RG

Page 4 of 4

Exhibit 1, Page 4 of 4

USB_0047

Exhibit 2

RECORDING REQUESTED BY
TICOR TITLE COMPANY

Recording Requested By:
**Downey Savings and Loan Association, F.A.**
Return To:
**Downey Savings and Loan Association, F.A.**
**P.O. Box 6060, 3501 Jamboree Rd, Newport Beach, CA 92658-6060**

Prepared By:
**Downey Savings and Loan Association, F.A.**
**P.O. Box 6060, 3501 Jamboree Rd, Newport Beach, CA 92658-6060**

*20 2200055*

*31*

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2006-0106478-00**
Acct 1-Ticor Title Company
**Thursday, APR 06, 2006 08:00:00**
MIC      $1.00:MOD     $27.00:REC     $31.00
TCF     $26.00:DAF      $1.80:REF      $0.20
**Ttl Pd     $87.00**           Nbr-0003188133
                                 cgv/R2/1-27

————————[Space Above This Line For Recording Data]————————

# DEED OF TRUST

**Title Order No.: 06-202200055**
**Escrow No.: 06-202200055**
**APN:**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated**March 30, 2006** *CM* ,
together with all Riders to this document.
**(B) "Borrower"** is **CAROL MEIER, A Married Woman as her sole and separate property**

Borrower's address is **61 Rudgear Drive, Walnut Creek CA 94596**
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **Downey Savings and Loan Association, F.A.**

Lender is a **federally chartered savings association**
organized and existing under the laws of **the United States of America**

■■■■6026

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3005  1/01

*(VMP)* -6(CA) (0207)
Page 1 of 15                          Initials *CM*

VMP MORTGAGE FORMS - (800)521-7291

Exhibit 2, Page 1 of 27

USB_0001

Lender's address is **3501 Jamboree Road, Newport Beach, CA 92660**

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is **DSL Service Company, A California Corporation**

**(E) "Note"** means the promissory note signed by Borrower and dated **March 30, 2006**
The Note states that Borrower owes Lender **six hundred thousand and 00/100**

Dollars
(U.S. $ **600,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **May 1, 2046**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [x] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |

**Rider to Promissory Note and Security
Instrument**

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Initials: _____

■ 6026

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| **County** | of | **Contra Costa** | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**LOT 226, MAP OF SANS CRAINTE UNIT NO. 4, FILED APRIL 29, 1946, MAP BOOK 29, PAGE 10, CONTRA COSTA COUNTY RECORDS**

Parcel ID Number:
**61 Rudgear Drive**
**Walnut Creek**
("Property Address"):

which currently has the address of
[Street]
[City], California **94596**       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

Initials _____ ████6026

-6(CA) (0207)          Page 3 of 15          Form 3005  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

USB_0004

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

USB_0006

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _____

6026

-6(CA) (0207)    Page 7 of 15    Form 3005   1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6(CA) (0207)      Page 8 of 15      Initials      6026      Form 3005  1/01

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

6026

-6(CA) (0207)

Page 10 of 15

Form 3005 1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials:

6026

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _____

■6026

-6(CA) (0207)

Page 13 of 15

Form 3005  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
CAROL MEIER                          -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)      _____ (Seal)
                      -Borrower                                   -Borrower

_____ (Seal)      _____ (Seal)
                      -Borrower                                   -Borrower

_____ (Seal)      _____ (Seal)
                      -Borrower                                   -Borrower

6026

-6(CA) (0207)                Page 14 of 15                Form 3005  1/01

USB_0014

106478

State of California
County of **CONTRA COSTA**                              } ss.

On **MARCH 31, 2006** before me, **Gerald Schaffner, Notary**
personally appeared

**CAROL MEIER**

, ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



_____ (Seal)

GERALD SCHAFFNER
COMM. #1508618
NOTARY PUBLIC ● CALIFORNIA
ALAMEDA COUNTY
Comm. Exp. SEPT. 16, 2008

Initials _____

6026

-6(CA) (0207)                    Page 15 of 15                    Form 3005  1/01
®

Exhibit 2, Page 15 of 27

USB_0015

# RIDER TO PROMISSORY NOTE AND SECURITY INSTRUMENT

Loan Number: ▮▮▮6026        Date: **March 30, 2006**

Property Address: **61 Rudgear Drive, Walnut Creek, CA 94596**

This Rider is hereby incorporated into that certain deed of trust/mortgage (Security Instrument), and that certain promissory note (Note), both dated the same date as this Rider executed by Borrower in favor of Downey Savings and Loan Association, F.A. (Lender or Note Holder). Anyone who takes the Note by transfer and who is entitled to receive payments under the Note is also called the Note Holder. All capitalized terms used but not defined in this Rider shall have the same meaning as set forth in the Note and Security Instrument. To the extent that any provisions in this Rider are inconsistent with the Security Instrument and/or the Note, this Rider shall prevail. This Rider is secured by the Security Instrument.

If the Federal Home Loan Mortgage Corporation (FHLMC), the Federal National Mortgage Association (FNMA) or any other investor buys all or some of Lender's rights under the Security Instrument and the Note, the provisions of this Rider, may, at the investor's discretion, no longer have any force or effect. If thereafter FHLMC or FNMA or any other owner should retransfer the Security Instrument and Note to Lender or Lender's successor in interest, then this Rider shall thereupon be automatically reinstated, without any additional writing or document.

## 1. LATE CHARGES and ACCRUED INTEREST.

If any installment is not received by Note Holder within fifteen (15) days after its due date, Borrower shall pay Note Holder a late charge in an amount equal to six percent (6.000%) of the installment due that is applicable to the payment of principal and interest, or $5.00, whichever is greater. If the fifteen day period ends on a weekend or a holiday, the period is extended to the next business day. Borrower acknowledges that it would be difficult and impractical to fix Note Holder's actual damages arising out of any late payment and that the foregoing late payment charge is a reasonable estimate of the same and shall be presumed to be the actual amount. The provisions of this paragraph shall not limit Note Holder's right, under the Security Instrument or otherwise, to compel prompt performance under the Note. Upon default, accrued and unpaid interest shall further bear interest at the then applicable interest rate until paid.

If Borrower is assessed a late charge and sufficient funds are not available in Borrower's checking account when Lender attempts to debit Borrower's loan payment from Borrower's designated checking account, a "returned item charge" will be assessed in addition to the late charge.

## 2. INTEREST ON PAST DUE SUMS.

If any sum due under the Note is not paid in accordance with the terms of the Note, including accumulated interest, then the sum(s) not paid shall bear interest at the same rate as the principal, or six percent (6.0%) plus the Bank of America Prime rate as publicly announced by the Bank of America National Trust and Savings Association, a National Association as its 'Referenced Rate', whichever is higher, in order to compensate Lender for its enforcement costs arising from the default. In the event the Index ceases to be published, then Note Holder may select a similar alternative published index over which the Note Holder has no control, in which case such alternative index shall become the Index.

6026

## 3. NOTE HOLDER'S TREATMENT OF PAYMENTS.

Except as otherwise required by law, Note Holder may apply all payments accepted by Note Holder to any outstanding obligations of Borrower under the Loan Documents in any order or priority Note Holder elects in its sole and absolute discretion. Note Holder may disregard any designation or notation by Borrower (or anyone acting on Borrower's behalf) as to how a payment is to be applied by Note Holder. If Note Holder elects not to accept a payment as permitted under Section 1 of the Security Instrument, Note Holder may return the payment to Borrower regardless of who tendered payment, and in such event, Note Holder shall not have any liability to Borrower or any third party as a result thereof. Borrower shall indemnify, defend, protect and hold Note Holder harmless, from and against all claims, damages, expenses, losses and liabilities, in whatever form, suffered or incurred by Note Holder as a result of Note Holder's return of a payment to Borrower.

## 4. EVENTS OF DEFAULT; REMEDIES.

The following shall constitute additional events of default under the Security Instrument:

(A)  Any person's attempt to reconvey Note Holder's interest in the Property without Note Holder's prior written consent;

(B)  Any person's attempt to have the Note, Security Instrument, this Rider or any of the other Loan Documents declared invalid or unenforceable;

(C)  Failure to pay when due any sum due under any of the Loan Documents;

(D)  Any default under any provision of the Security Instrument; or

(E)  Borrower default under any other deed of trust or other instrument secured by the Property.

Note Holder may use in-house counsel or retain outside lawyers to analyze and respond to any event of default, and Note Holder may charge Borrower reasonable attorneys' fees and costs for such analysis and response. Note Holder may add these legal expenses to the Note and/or demand immediate reimbursement from Borrower. Borrower's failure to promptly reimburse Note Holder shall also constitute an event of default under the Security Instrument.

Upon the occurrence of any events of default, all sums secured by the Security Instrument (including all of Note Holder's attorneys' fees and costs) shall at once become due and payable at the option of Note Holder with or without prior notice by Note Holder and regardless of any prior forbearance. In such event Note Holder, at its option, may then or thereafter deliver to the Trustee a written declaration of default and demand to sell the Property and shall cause to be filed of record a written notice of default and election to cause the Property to be sold. Note Holder shall also deposit with the Trustee the Security Instrument and any notes and all documents evidencing expenditures secured thereby. After the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, the Trustee, without demand on Borrower, shall sell the Property at the time and place specified by such Trustee in such notice of sale, or at the time to which such noticed sale has been duly postponed, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, except that Note Holder may credit bid at the sale to the extent of the amount owing under the Loan Documents, including the Trustee's fee and expenses. The Trustee may sell the Property as a whole or in separate parcels if there is more than one parcel, subject to such rights as Borrower may have by law to direct the manner or order of sale, or by such other manner of sale which is authorized by law. The Trustee may postpone the sale of all or any portion of the Property by public declaration made by the Trustee at the time and place last appointed for sale. If the Property is sold, the Trustee shall deliver to the purchaser a deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof.

USB_0017



6026

Any person, including Borrower, the Trustee or Note Holder may purchase at such sale. After deducting all costs, fees and expenses of the Trustee, including costs of evidence of title in connection with such sale, the Trustee shall apply the remaining proceeds of sale first to payment of all sums expended under the terms of the Security Instrument not yet repaid, with accrued interest at the rate then payable under the Note or notes secured thereby, and then to payment of all other sums secured thereby (including the Note). If there be any proceeds remaining, the Trustee shall distribute them to the person or persons legally entitled thereto.

5. HAZARD OR PROPERTY INSURANCE.

Unless Note Holder and Borrower otherwise agree in writing, any insurance proceeds shall be applied first to reimburse Note Holder for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Note Holder's option, in such order and proportion as it may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by the Security Instrument, whether or not then due, and to such components thereof as Note Holder may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Note Holder. If Borrower abandons the Property, or does not answer within 30 days a notice from Note Holder that the insurance carrier has offered to settle a claim, then Note Holder may collect the insurance proceeds. Note Holder may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by the Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

If Borrower obtains earthquake insurance, and other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Note Holder, then (i) Borrower must ensure that such insurance names Note Holder as loss payee and (ii) such insurance shall be subject to this paragraph with respect to use of insurance proceeds.

Note Holder may charge a reasonable fee for the cost of determining whether the building or mobile home securing a loan is located in an area having special flood hazards, subject to applicable law.

USB_0018

106478

█████6026

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rider.

_____(Seal)          _____(Seal)
CAROL MEIER                    -Borrower                                        -Borrower

_____(Seal)          _____(Seal)
                               -Borrower                                        -Borrower

_____(Seal)          _____(Seal)
                               -Borrower                                        -Borrower

_____(Seal)          _____(Seal)
                               -Borrower                                        -Borrower

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **30th** day of **March, 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **Downey Savings and Loan Association, F.A.**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

**61 Rudgear Drive, Walnut Creek, CA  94596**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for interest to be charged on unpaid principal until the full amount of Principal has been paid. Interest shall be paid at a yearly rate of **5.125 %** beginning with my first monthly payment. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A)  **Change Dates**
The interest rate I will pay may change on the first day of **November, 2006** , and on that day every six months thereafter.  Each date on which my interest rate could change is called a "Change Date."

█████6026

MULTI STATE ADJUSTABLE RATE RIDE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family

A106R1.UFF (09/09/04) CR22228 RG

Page 1 of 4        Initials

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 30 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer published, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **two and three-quarters** percentage points (**2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (.125%). Subject to the limits stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **6.125** % or less than **4.125** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point(s) (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **11.500** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

▮6026

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

██████6026

A106R3.UFF (09/09/04) CR22228 RG         Page 3 of 4         Initials: _____

USB_0022

106478

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)
CAROL MEIER                      -Borrower

_____(Seal)
                                 -Borrower

_____(Seal)
                                 -Borrower

_____(Seal)
                                 -Borrower

_____(Seal)
                                 -Borrower

_____(Seal)
                                 -Borrower

_____(Seal)
                                 -Borrower

_____(Seal)
                                 -Borrower

[Sign Original Only]

█████6026

A106R4.UFF (09/07/04) CR22228 RG          Page 4 of 4

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **30th** day of **March, 2006,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **Downey Savings and Loan Association, F.A.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 61 Rudgear Drive, Walnut Creek, CA 94596

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

6026

Page 1 of 3          D057R1A.UFF Task 10747 03/29/02 JS

USB_0024

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**THE FOLLOWING TERMS AND PROVISIONS** shall be applicable only at such time as the Property is no longer owner-occupied.

**D. OCCUPANCY.** Section 6 of the Security Instrument is deleted.

**E. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph E, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**F. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

■6026

D057R2A.UFF (07/13/04) CR20316 RG

USB_0025

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not perform, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**G. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
CAROL MEIER            -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

6026

D057R3A.UFF (7/13/04) CR20316 RG

USB_0026

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF WALNUT CREEK, COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 226, map of Sans Crainte Unit No. 4, filed April 29, 1946, Map Book 29, page 10, Contra Costa County Records.

APN: 187-032-011

**End of Document**

2

Exhibit 3

**LOAN SALE AGREEMENT**
**SINGLE FAMILY LOSS SHARE VERSION**

**BY AND BETWEEN**

**FEDERAL DEPOSIT INSURANCE CORPORATION**
**AS RECEIVER OF DOWNEY**
**SAVINGS AND LOAN ASSOCIATION, FA**
**NEWPORT BEACH, CALIFORNIA**

**AND**

**U. S. BANK NATIONAL ASSOCIATION**

Federal Deposit Insurance Corporation
Loan Sale Agreement/SF Loss Sharing
11-17-08

Downey

Exhibit 3, Page 1 of 91

USB_0094

# TABLE OF CONTENTS

ARTICLE I ...................................................................................................................... 1

DEFINITIONS ................................................................................................................. 1

  ACCOUNTING RECORDS ......................................................................................... 1
  ADVANCES .............................................................................................................. 1
  AFFIDAVIT AND ASSIGNMENT OF CLAIM ................................................................ 1
  AGREEMENT ........................................................................................................... 1
  ASSIGNMENT AND ASSUMPTION OF INTERESTS AND OBLIGATIONS ......................... 1
  ASSIGNMENT AND LOST INSTRUMENT AFFIDAVIT ..................................................... 1
  ATTACHMENT .......................................................................................................... 1
  BANK CLOSING DATE .............................................................................................. 1
  BID ......................................................................................................................... 2
  BID AMOUNT ........................................................................................................... 2
  BID AWARD DATE .................................................................................................... 2
  BID CONFIRMATION LETTER .................................................................................... 2
  BID INSTRUCTIONS .................................................................................................. 2
  BILL OF SALE .......................................................................................................... 2
  BOOK VALUE ........................................................................................................... 2
  BORROWER .............................................................................................................. 2
  BUSINESS DAY ......................................................................................................... 2
  CALCULATION DATE ................................................................................................ 2
  CHARTERING AUTHORITY ........................................................................................ 2
  CLOSING ................................................................................................................. 3
  COLLATERAL ........................................................................................................... 3
  COLLATERAL DOCUMENT ........................................................................................ 3
  CONFIDENTIALITY AGREEMENT ............................................................................... 3
  CONTRACT FOR DEED .............................................................................................. 3
  CORPORATE ADVANCES ........................................................................................... 3
  CORPORATION ......................................................................................................... 3
  DECONVERSION DATE .............................................................................................. 3
  DEFICIENCY BALANCE ............................................................................................. 3
  DISBURSEMENT OF PRINCIPAL ................................................................................. 3
  FOREIGN LOAN ........................................................................................................ 3
  FOREIGN JURISDICTION ........................................................................................... 4
  INFORMATION PACKAGE .......................................................................................... 4
  INTERNAL REVENUE CODE ....................................................................................... 4
  LIMITED POWER OF ATTORNEY ................................................................................ 4
  LOAN(S) ................................................................................................................. 4
  LOAN FILE .............................................................................................................. 4
  LOAN POOL(S) ........................................................................................................ 4

Exhibit 3, Page 2 of 91

USB_0095

LOAN SALE ................................................................................................. 4
LOAN SALE CLOSING DATE ..................................................................... 4
MORTGAGED PROPERTY ........................................................................... 4
NON-FOREIGN LOAN ................................................................................. 5
NON-PERFORMING LOAN(S) ...................................................................... 5
NOTE ............................................................................................................ 5
NOTEHOLDER .............................................................................................. 5
OBLIGATIONS .............................................................................................. 5
OTHER REAL ESTATE
................................................................................................................
PERFORMING LOAN ................................................................................... 5
PROPERTY .................................................................................................... 5
PURCHASE PRICE ........................................................................................ 5
PURCHASER ELIGIBILITY CERTIFICATION ............................................ 6
REDEMPTION PERIOD ................................................................................ 6
RELATED PARTY ......................................................................................... 6
REPURCHASE PRICE ................................................................................... 6
SCHEDULE OF LOANS ................................................................................ 6
SETTLEMENT DATE ..................................................................................... 6
SIGNIFICANT ENVIRONMENTAL CONTAMINATION ............................... 6
TAX CERTIFICATE ....................................................................................... 6
TAXES .......................................................................................................... 7
TRANSFER DOCUMENTS ............................................................................ 7
UNIFORM COMMERCIAL CODE ................................................................. 7

ARTICLE II PURCHASE AND SALE OF LOANS ................................... 8
  2.1. TERMS AND CONDITIONS OF SALE ................................................. 8
  2.2. CLOSING AND PAYMENT OF PURCHASE PRICE ............................ 8
  2.3. ALLOCATION OF PAYMENTS MADE ON LOANS ........................... 8
  2.4. ADJUSTMENTS TO PURCHASE PRICE; OFFSETS AGAINST DEPOSITS ............ 8
  2.5. REBATES AND REFUNDS .................................................................... 9
  2.6. INTEREST CONVEYED ....................................................................... 9
  2.7. RETAINED CLAIMS AND RELEASE ................................................... 9
  2.8. TAXES .................................................................................................. 9
  2.9. LOANS MADE AFTER THE DATE OF THE INFORMATION PACKAGE ............. 10

ARTICLE III TRANSFER OF LOAN(S), COLLATERAL DOCUMENTS AND
SERVICING ............................................................................................... 11
  3.1. DELIVERY OF DOCUMENTS ............................................................. 11
  3.2. RECORDATION OF DOCUMENTS ..................................................... 14
  3.3. TRANSFER OF SERVICING ................................................................ 14

ARTICLE IV REPRESENTATION AND WARRANTIES OF BUYER ...... 15
  4.1. BUYER'S AUTHORIZATION .............................................................. 15

USB_0096

4.2. Compliance with Law ................................................................................ 15
4.3. Execution and Enforceability ...................................................................... 15
4.4 Representations Remain True ...................................................................... 15
5.1. Servicing of Loans ...................................................................................... 16
5.2. Disbursements of Principal ......................................................................... 16
5.3. Collection Agency/Contingency Fee Agreements ....................................... 16

**5.5. BUYER'S DUE DILIGENCE** ....................................................................... **17**

5.6. Reporting to or for the Applicable Taxing Authorities ............................... 17
5.7. Loans in Litigation ..................................................................................... 17
5.8. Loans in Bankruptcy .................................................................................. 18
5.9. Loan Related Insurance .............................................................................. 18
5.10. Loans with Escrow Accounts .................................................................... 19
5.11. [Intentionally Omitted] ............................... Error! Bookmark not defined.
5.12. Contracts for Deed ................................................................................... 19
5.13. Leases ...................................................................................................... 19
5.14. Files and Records ..................................................................................... 19
5.15. Reimbursement for Use of Seller's Employees ........................................ 19
5.16. Notice to Borrowers .................................................................................. 20
5.17. Notice of Claim ......................................................................................... 20
5.18. Use of the FDIC's Name and Reservation of Statutory Powers ................ 20
5.19. Prior Servicer Information ......................................................................... 21
5.20. Release of Seller ....................................................................................... 21
5.21. Indemnification ......................................................................................... 21
5.22. Borrower as Buyer .................................................................................... 22

**ARTICLE VI LOANS SOLD "AS IS" AND WITHOUT RECOURSE** ............................... **23**

6.1. Loans Sold "As Is." .................................................................................... 23
6.2. No Warranties or Representations with Respect to Escrow Accounts ...... 23
6.3. No Warranties or Representations as to Amounts of Unfunded Principal . 23
6.4. Disclaimer Regarding Calculation or Adjustment of Interest on any Loan
................................................................................................................... 23
6.5. No Warranties or Representations With Regard to Due Diligence Data ... 23
6.6. Buyer's Waiver of Cause of Action ............................................................ 23
6.7. Intervening or Missing Assignments .......................................................... 24
6.8. No Warranties or Representations as to Documents .................................. 24

**ARTICLE VII REPURCHASE BY SELLER AT BUYER'S OPTION** ............................... **25**

7.1. Repurchases at Buyer's Option .................................................................. 25
7.2. Securities Laws Right of Rescission ........................................................... 26
7.3. Defects not Qualifying for Repurchase ...................................................... 26
7.4. Notice to Seller .......................................................................................... 26
7.5. Re-delivery of Note(s), Files and Documents ............................................ 27
7.6. Waiver of Buyer's Repurchase Option ....................................................... 27

Federal Deposit Insurance Corporation   iii   Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 4 of 91

USB_0097

**ARTICLE VIII NOTICES**...................................................................**29**

   **8.1.** NOTICES .................................................................................... 29
   **8.2.** ARTICLE VII NOTICE ...................................................................... 29
   **8.3.** ALL OTHER NOTICES ...................................................................... 29

**ARTICLE IX CONDITION PRECEDENT**.......................................**31**

   **9.1** FAILURE TO CLOSE ......................................................................... 31

**ARTICLE X MISCELLANEOUS PROVISIONS** ...........................**32**

   **10.1.** SEVERABILITY .............................................................................. 32
   **10.2.** CONSTRUCTION ............................................................................ 32
   **10.3.** SURVIVAL .................................................................................... 32
   **10.4.** GOVERNING LAW .......................................................................... 32
   **10.5.** COST, FEES AND EXPENSES ............................................................ 32
   **10.6.** NONWAIVER, AMENDMENT AND ASSIGNMENT................................ 32
   **10.7.** DRAFTING PRESUMPTION................................................................ 32
   **10.8.** CONTROLLING AGREEMENT ........................................................... 32
   **10.9.** VENUE ........................................................................................ 33
   **10.10.** COUNTERPARTS........................................................................... 33

   **ATTACHMENT A** SCHEDULE OF LOANS.......................................... A-1
   **ATTACHMENT B** REPURCHASE PERCENTAGES ............................... B-1
   **ATTACHMENT C** BILL OF SALE .................................................... C-1
   **ATTACHMENT D** ASSIGNMENT AND ASSUMPTION OF INTERESTS AND OBLIGATIONS .. D-1
   **ATTACHMENT E** ASSIGNMENT AND LOST INSTRUMENT AFFIDAVIT ..............................E-1
   **ATTACHMENT F** AFFIDAVIT AND ASSIGNMENT OF CLAIM............................F-1
   **ATTACHMENT G** LIMITED POWER OF ATTORNEY ......................................... G-1
   **ATTACHMENT H** Shared Loss Agreement

Federal Deposit Insurance Corporation         iv         Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 5 of 91

USB_0098

# LOAN SALE AGREEMENT

THIS AGREEMENT, entered into this day of November 21, 2008, by and between the Federal Deposit Insurance Corporation ("FDIC") as Receiver ("Seller") of Downey Savings and Loan Association, FA, Newport Beach California ("Failed Bank") and U. S. Bank National Association ("Buyer") sets forth the terms and conditions whereby Seller agrees to sell and Buyer agrees to purchase all those Loans set forth in the attached Schedule of Loans for the consideration herein stated.

NOW THEREFORE, Seller and Buyer agree and represent as follows:

## Article I
## Definitions

For purposes of this Agreement the following terms shall have the meanings indicated:

**"Accounting Records"** means the general ledger and supporting subsidiary ledgers and schedules.

**"Advances"** means the sum of all unreimbursed amounts advanced by or on behalf of the Failed Bank, Seller or Buyer for the benefit of a Borrower or a third-party advanced to meet required scheduled payments, or to protect the Noteholder's lien position or the Collateral, including payment of ad valorem taxes and hazard and forced placed insurance as permitted by the terms of any Loan sold hereunder. Advances do not include Disbursements of Principal or Corporate Advances.

**"Affidavit and Assignment of Claim"** means an Affidavit and Assignment of Claim in the form of Attachment "F" to this Agreement.

**"Agreement"** means this Loan Sale Agreement and the Attachments hereto.

**"Assignment and Assumption of Interests and Obligations"** means an Assignment and Assumption of Interests and Obligations in the form of Attachment "D" to this Agreement.

**"Assignment and Lost Instrument Affidavit"** means an Assignment and Lost Instrument Affidavit in the form of Attachment "E" to this Agreement.

**"Attachment"** means any of the attachments to this Agreement.

**"Bank Closing Date"** means the close of business of the Failed Bank on the date on which the Chartering Authority closed such institution.

Federal Deposit Insurance Corporation  
Loan Sale Agreement/SF Loss Sharing  
Version 1.5 (FM)  
11-17-08

1

Downey

Exhibit 3, Page 6 of 91

USB_0099

**"Bid"** means the offer to purchase one or more Loan Pool(s) that was submitted by Buyer and accepted by the Seller.

**"Bid Amount"** means the First Loss Amount specified in the Shared Loss Agreement attached hereto as Attachment H.

**"Bid Award Date"** means the date the Bid Confirmation Letter is sent to Buyer by Seller.

**"Bid Confirmation Letter"** means the letter sent to Buyer by Seller confirming acceptance of a Bid submitted by Buyer.

**"Bid Instructions"** means the document under such title provided to bidders and potential bidders.

**"Bill of Sale"** means a Bill of Sale in the form of Attachment "C" to this Agreement.

**"Book Value"** means a Loan's unpaid principal balance as stated on the Accounting Records of the Failed Bank as of Bank Closing Date and adjusted by (i) subtracting payments of principal received by Seller or its predecessor on or before the Calculation Date, (ii) adding Disbursements of Principal made by Seller or its predecessor on or before the Calculation Date, and (iii) adding back any principal previously charged or written off by the Failed Bank subsequent to the date of the Information Package. Book Value for pre-computed interest Loans shall include, in addition, the amount of outstanding earned and unearned interest for such Loans. The Book Value shall not include any general or specific reserves on the Accounting Records of the Failed Bank.

**"Borrower"** means any obligor, guarantor or surety of any Loan or any other party liable for the performance of obligations associated with any Loan.

**"Business Day"** means any day other than a Saturday, Sunday or federal legal holiday.

**"Calculation Date"** means Bank Closing Date, which date shall be used to calculate the Purchase Price. For each Loan in Loan Pools serviced by others, "Calculation Date" means the date of the most recent remittance report prior to the Loan Sale Closing Date.

**"Chartering Authority"** means (i) with respect to a national bank, the Office of the Comptroller of the Currency, (ii) with respect to a federal savings association or savings bank, the Office of Thrift Supervision, (iii) with respect to a bank or savings institution chartered by a state, the agency of such state charged with primary responsibility for regulating and/or closing banks or savings institutions, as the case may be, (iv) the Corporation in accordance with 12 U.S.C. Section 1821(c), with regard to self appointment, or (v) the appropriate federal banking agency in accordance with 12 U.S.C. 1821(c)(9).

USB_0100

**"Closing"** means the simultaneous delivery by Seller and Buyer of documents and funds and the performance of the other acts herein provided to be performed on the Loan Sale Closing Date in order to effect the consummation of the Loan Sale.

**"Collateral"** means any and all collateral securing a Loan, including without limitation, any accounts receivable, inventory, property of any kind, whether real or personal (including but not limited to equipment and other physical assets), and any contract and other rights and interests of a Borrower pledged pursuant to or otherwise subject to any Collateral Document.

**"Collateral Document"** means each deed of trust, mortgage, assignment of production, security agreement, assignment of security interest, personal guaranty, corporate guaranty, letter of credit, pledge agreement, collateral agreement, loan agreement or other agreement or document, whether an original or copy or whether similar to or different from those enumerated, securing in any manner the performance or payment by any Borrower of its obligations or the obligations of any other Borrower under any Note evidencing a Loan.

**"Confidentiality Agreement"** means the confidentiality agreement executed or assented to by Buyer in anticipation of gaining access to the documents related to the sale of the Loans.

**"Contract for Deed"** means an executory contract with a third party to convey real property.

**"Corporate Advances"** means the payment of appraisal fees, broker opinion fees, attorney fees and associated legal fees, foreclosure fees, trustee fees, property inspection fees, property preservation and operating cost fees, tax penalties, title policies, lien search fees or any other cost that can be directly associated with the collection and servicing of a Note.

**"Corporation"** means the Federal Deposit Insurance Corporation in its corporate capacity.

**"Deconversion Date"** means the date Loan servicing records are transferred to the Buyer's system of record, which date shall be a Business Day not later than thirty (30) calendar days after the Loan Sale Closing Date.

**"Deficiency Balance"** means the remaining unpaid principal balance of any Note purchased hereunder after crediting to it the proceeds of a foreclosure sale which occurred on or before the Calculation Date, and for which the Redemption Period, if any, expired on or before the Calculation Date.

**"Disbursement of Principal"** means incremental funding of loan proceeds under a Note, such as in the case of a revolving credit loan or a construction loan.

**"Foreign Loan"** means a Loan regarding which the Borrower or any of the Collateral concerning the Loan is located in a country other than the United States.

USB_0101

**"Foreign Jurisdiction"** means any country, other than the United States, and any subdivision or other jurisdiction of or in such other country in which a Borrower or any Collateral is located.

**"Information Package"** means the compilation of financial and other data with respect to the Failed Bank entitled "Information Package" and any amendments or supplements thereto provided to the Buyer by the Corporation.

**"Internal Revenue Code"** means the Internal Revenue Code of 1986 of the United States, as it may be amended from time to time.

**"Limited Power of Attorney"** means the Limited Power of Attorney in the form of Attachment "G" to this Agreement.

**"Loan(s)"** means and includes: (a) any obligation evidenced by a Note or other evidence of indebtedness; (b) all rights, powers, liens or security interests of Seller in or under the Collateral Document(s); (c) any judgment founded upon a note to the extent attributable thereto and any lien arising therefrom; (d) any Contract for Deed and the real property which is subject to such Contract for Deed; (e) any lease and the related leased property; (f) all right, title and interest in and to any Deficiency Balance; and (g) any other asset of whatever kind or type, all as identified on the attached Schedule of Loans, including without limitation, all rights arising therefrom or appurtenant thereto. Loan(s) include Other Real Estate .

**"Loan File"** means (i) all Failed Bank documents pertaining to any Loan, either copies or originals, that are in the possession of Seller excluding the Note, renewals of the Note and Collateral Documents and (ii) any files with respect to a Loan established and maintained by Seller's employee(s) or contractor(s) responsible for the management of that Loan following the closing of the Failed Bank, excluding Seller's internal memoranda and confidential communications between Seller and its legal counsel. The Loan File does not include other files maintained by other employees or agents of Seller, such as Seller's legal counsel.

**"Loan Pool(s)"** means one (or more) of the groups of Loans identified in the Schedule of Loans set forth in Attachment "A" to this Agreement.

**"Loan Sale"** means the sale of Loans of the Failed Bank by Seller.

**"Loan Sale Closing Date"** means a date selected by Seller, which date shall not be later than twenty (20) Business Days after the Bid Award Date.

**"Mortgaged Property"** means the land, fixtures and improvements, if any, securing any Loan sold to Buyer under the terms and conditions of this Agreement. Mortgaged Property does not include property repossessed or foreclosed on or before the Calculation Date as to which the Redemption Period, if any, expired on or before the Calculation Date.

USB_0102

**"Non-Foreign Loan"** means any Loan which is not a Foreign Loan.

**"Non-Performing Loan(s)"** means any Loan other than a Performing Loan.

**"Note"** means each agreement, document and instrument evidencing a Loan, including without limitation, each promissory note, loan agreement, shared credit or participation agreement, inter-creditor agreement, letter of credit, reimbursement agreement, draft, bankers' acceptance, transmission system confirmation of transaction or other evidence of indebtedness of any kind evidencing each Loan (including loan histories, affidavits, general collection information, correspondence and comments pertaining to such obligation).

**"Noteholder"** means the holder of a Note.

**"Obligations"** means all obligations and commitments of Seller relating to a Loan and arising under and in accordance with the relevant Note(s) or Collateral Documents relating thereto, including without limitation the commitment to make advances of funds to or for the benefit of a Borrower.

**"Other Real Estate"** means all interests in 1-4 single family residential real estate and loans on "in substance foreclosure" status as of Bank Closing as identified on the Schedule of Loans set forth in Attachment A, including but not limited to mineral rights, leasehold rights, condominium and cooperative interests, air rights and development rights that are owned by the Failed Bank.

**"Performing Loan"** means any Loan for which the last payment of principal, interest and any escrow amounts that is required to be paid by the terms of the Note or Collateral Documents is less than sixty days past due (for matured loans, less than thirty days past due) as of the Calculation Date as shown on the Schedule of Loans attached hereto as Attachment "A," regardless of whether such Loan is in a Loan Pool consisting primarily of Performing Loans or consisting primarily of Non-Performing Loans.

**"Property"** means the real or personal property securing any Loan contained in a Loan Pool.

**"Purchase Price"** means, an amount equal to the sum of (i) the Book Value of all Loans, plus (ii) Disbursements of Principal made by Seller that are not included in the Book Value, plus (iii) any Advances made by the Failed Bank or Seller, plus (iii) interest calculated on the Book Value and at the rate payable for each Performing Loan (except those with pre-computed interest) from the interest "paid-to date" to, but not including, the Loan Sale Closing Date. No amount with respect to unpaid interest shall be due for Non-Performing Loans.

USB_0103

**"Purchaser Eligibility Certification"** means the document under such title provided to bidders and potential bidders as part of the Information Package and executed by Buyer in connection with the Loan Sale.

**"Redemption Period"** means the applicable state statutory time period, if any, during which a foreclosed owner may buy back foreclosed real property from the foreclosure sale purchaser. Not all states provide for a Redemption Period. The length of a Redemption Period may vary among the states which do provide for a Redemption Period. The law of the state in which the real property is located is the applicable law in determining whether there is a Redemption Period and if so, how long it is.

**"Related Party"** means any party related to the Borrower in the manner delineated in 26 U.S.C.A 267(b) and the regulations promulgated thereunder, as such law and regulations may be amended from time to time.

**"Repurchase Price"** means, with respect to any Loan the Book Value, adjusted to reflect changes in accordance with Section 2.4 hereof, , plus (ii) any Advances and interest on such Loan included in the Purchase Price, minus (iii) the total of amounts received after the Calculation Date by Buyer for such Loan, regardless of how applied, plus (iv) Advances made by Buyer, plus (v) total Disbursements of Principal made by Seller that are not included in the Book Value.

**"Schedule of Loans"** means the list of all Loans that are the subject of this transaction appended to this Agreement as Attachment "A."

**"Settlement Date"** means a date determined by Seller upon which final adjustments will be made to the Purchase Price pursuant to Section 2.4 hereof. Any Settlement Date determined by Seller shall be a Business Day not later than one hundred eighty (180) calendar days after the Loan Sale Closing Date.

**"Significant Environmental Contamination"** means the presence at, in or under a Mortgaged Property, at a level or in an amount that poses a threat to human health or the environment sufficient to prompt a regulator to require remediation under any federal or state law, of any substance defined as a "hazardous substance" under Section 101(14) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601(14), and including petroleum, including crude oil or any fraction thereof that is liquid at standard conditions of temperature and pressure.

**"Tax Certificate"** means a certificate signed by the chief financial officer, chief accounting officer or other executive officer with knowledge of tax matters, or the general counsel, of Buyer certifying that under the applicable laws of each relevant Foreign Jurisdiction and jurisdiction in which Buyer, its lending or other relevant office or agents may be located, (i) no Taxes are payable by Seller or Buyer, or if any such Taxes are payable, certifying the type and amount of such taxes, the party responsible for the payment thereof, the relevant taxing

Federal Deposit Insurance Corporation      6      Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 11 of 91

USB_0104

authority to which payment of such Taxes must be made and the timing for such payment as required by applicable law, and (ii) no Tax forms or other information reports are required of the Seller, or if any such forms or reports are required, certifying the type of form, the relevant taxing authority and the deadline for such form or other report.

**"Taxes"** means any taxes, assessments, levies, imposts, duties, deductions, fees, withholdings or other charges of whatever nature, including interest and penalties thereon, required to be paid to any taxing authority of or in any Foreign Jurisdiction or any jurisdiction in which Buyer, its lending or other relevant office or agents may be located under the applicable laws of such Foreign Jurisdiction or other jurisdiction with respect to the sale and transfer of the Loans, the Collateral Documents or the rights in the Collateral or the assignment and assumption of Obligations thereunder, including without limitation any withholding taxes payable by virtue of the sale of the Loans at a discount from Book Value and any value-added taxes.

**"Transfer Documents"** means the endorsements and allonges to Notes, Assignment and Lost Instrument Affidavits (if applicable), assignments, deeds and other documents of assignment, conveyance or transfer required under the laws of any jurisdiction within the United States to evidence the transfer to Buyer of the Loans, the Collateral Documents and Seller's rights with respect to the Loans and the Collateral. Transfer Documents do not include this Agreement, the Bill of Sale, and the Assignment and Assumption of Interests and Obligations.

**"Uniform Commercial Code"** means the uniform law governing commercial transactions as adopted by the State of New York.

## Article II
## Purchase and Sale of Loans

**2.1. Terms and Conditions of Sale.** Seller agrees to sell, assign, transfer and convey to Buyer, and Buyer agrees to purchase and accept from Seller, all the right, title and interest of Seller, subject to the provisions of Section 3.3, as of the Bank Closing Date, in and to each Loan in the Loan Pool(s) on a servicing-released basis, and all rights in the Property pursuant to the Collateral Documents. Seller agrees to assign and Buyer agrees to assume all of the Obligations of the Failed Bank or Seller under and with respect to all the Notes and Collateral Documents. Such sale, assignment, transfer and conveyance by Seller and the purchase, acceptance and assumption by Buyer shall occur at and as of the Bank Closing Date, and shall be on the terms and subject to the conditions set forth in this Agreement. Seller and Buyer agree that the Loans sold and purchased hereunder shall be subject to the terms of the Loss-Share Agreement attached hereto as Attachment H regarding the Loan Pools.

**2.2. Closing .** The Closing shall occur on the Loan Sale_Closing Date, and, at Seller's option, be either by mail or conducted in person at a place designated by Seller.

**2.3. Allocation of Payments Made on Loans.** All payments received by Seller on account of any of the Loans on or before the Calculation Date shall belong to Seller. All payments received by Seller on account of the Loans after the Calculation Date shall belong to Buyer. In the event that a check Seller has received with respect to a Loan on or before the Calculation Date is dishonored before or after the Calculation Date, an adjustment to the Book Value of the Loan in the amount of the dishonored check shall be made within ten (10) days of notification by Seller to Buyer that a check has been dishonored. In the event Seller deposits a check received after the Calculation Date and issues a check or other payment therefor to Buyer, Buyer shall bear the risk that any such check will be dishonored and Buyer shall reimburse Seller within ten (10) Business Days after receipt of notice by Seller to Buyer that such check was dishonored.

**2.4. Adjustments to Purchase Price; Offsets Against Deposits.**

(a) On or before the Settlement Date, Seller shall provide Buyer with a statement(s) setting forth adjustments to the Purchase Price that Buyer or Seller discovers reflecting (1) any changes in the Book Value (i) because of miscalculations, misapplied payments, unapplied payments, unrecorded Disbursements of Principal disbursed on or before the Calculation Date, or other accounting errors; or (ii) resulting from a final court decree, unappealable regulatory enforcement order or other similar action of a legal or regulatory nature effective on or before the Calculation Date; and (2) any unreimbursed Advances or Disbursements of Principal disbursed after the Calculation Date that were not previously included in the Purchase Price. No adjustment to Purchase Price will be made for any changes resulting from any calculation or adjustment of interest on any Loan as provided in Section 6.4

USB_0106

hereof. No monies will be due Seller or Purchaser as a result of any adjustments made pursuant to Section 2.4a.

(b) With respect to any Loan, Seller reserves the right to permit or require offsets against deposit accounts of the Failed Bank. If allowed by Seller, such offsets will be retroactive to the date such Failed Bank closed. At such time as an offset is effected, Seller will give notice of such to Buyer and pay Buyer the amount of the offset on a dollar-for-dollar basis and Buyer shall credit such amount to the Loan according to the terms and conditions of the applicable Note(s) as of Bank Closing Date.

**2.5. Rebates and Refunds.** Buyer is not entitled to any rebates or refunds from Seller from any pre-computed interest Loan regardless of when the Note matures. Further, on pre-computed interest Loans, Seller will not refund any unearned discount amounts to Buyer.

**2.6. Interest Conveyed.** Seller shall convey all of its right, title and interest in and to each Loan. In the event a foreclosure occurs after the Calculation Date, or occurred on or before the Calculation Date, but the Redemption Period had not expired on or before the Calculation Date, Seller shall convey to Buyer the Deficiency Balance, if any, together with the net proceeds, if any, of such foreclosure sale. If Seller was the purchaser at such foreclosure sale, Seller shall convey to Buyer the Deficiency Balance, if any, together with a quitclaim deed to the property purchased at such foreclosure sale. Buyer acknowledges and agrees that Buyer shall not acquire any interest in or to any performance or completion bond filed with any governmental entity for the purpose of ensuring that improvements constructed or to be constructed on such property are completed in accordance with any governmental regulation(s) or building requirement(s) applicable to the proposed or completed improvement.

**2.7. Retained Claims and Release.** Buyer and Seller agree that the sale of the Loans pursuant to this Agreement will exclude the transfer to Buyer of all right, title and interest of Seller in and to any and all claims of any nature whatsoever that might now exist or hereafter arise, whether known or unknown, that Seller has or might have (a) against officers, directors, employees, insiders, accountants, attorneys, other persons employed by Seller or the Failed Bank and any of its predecessors, underwriters or any other similar persons who have caused a loss to Seller or the Failed Bank and any of its predecessors in connection with the initiation, origination or administration of a Loan, (b) against any appraisers, accountants, auditors, attorneys, investment bankers or brokers, loan brokers, deposit brokers, securities dealers or other professional individuals or entities who performed services for the Seller or the Failed Bank or any of its predecessors, relative to a Loan, (c) against any third parties involved in any alleged fraud or other misconduct relating to the making or servicing of a Loan or (d) against any appraiser or other party from whom Seller or any servicing agent contracted for services or title insurance in connection with the making, insuring or servicing of a Loan.

**2.8. Taxes.** Notwithstanding that Taxes may, under applicable law, be assessed against and payable by Seller, Buyer hereby agrees to accept responsibility for and to pay, on its own behalf or on behalf of Seller, as the case may be, any and all Taxes, and Seller shall have no

---

obligation to reimburse Buyer therefor. Payment of Taxes shall not affect the Purchase Price. Within thirty days after the Loan Sale Closing Date, Buyer shall deliver to Seller a Tax Certificate in accordance with Section 3.1 hereof. In the event that the Tax Certificate shall prove to have been incorrect or for any other reason Buyer becomes aware of Taxes due, Buyer shall promptly notify Seller and shall pay such Taxes in accordance with the provisions of this Section 2.8. In the event that Taxes shall be payable, Buyer shall make payment thereof to the relevant taxing authorities when due, identifying to such authorities in appropriate manner and in accordance with applicable law the nature of the payment and identifying the party on whose behalf the payment is being made. In the event that, under applicable law, Buyer shall be unable to make payment of Taxes on behalf of Seller, then Buyer shall promptly notify Seller thereof and Seller may, at its sole option, grant to Buyer a limited power of attorney, in such form as Seller shall determine, solely for the purpose of making payment of such Taxes and filing information returns with respect thereto as agent for Seller. Buyer shall notify Seller, in accordance with the provisions of Article VIII of this Agreement, promptly after payment of any Taxes that such payment has been made.

**2.9. Loans Made After the Date of the Information Package.** Subject to 7.1(h), Loans made after the date of the Information Package shall be placed, in the sole discretion of the Seller, in a Loan Pool of like Loans, and such Loans shall be purchased by the Buyer on the same terms and conditions as the other Loans in the Loan Pool(s).

Federal Deposit Insurance Corporation
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

10

Downey

Exhibit 3, Page 15 of 91

USB_0108

## Article III
## Transfer of Loan(s), Collateral Documents and Servicing

**3.1. Delivery of Documents.** Buyer and Seller agree to execute and deliver to one another the following files and documents:

(a)　At Closing, Buyer shall deliver to Seller:

1.　Two originals of the Assignment and Assumption of Interests and Obligations, in the form of Attachment "D" to this Agreement, executed by Buyer.

2.　A corporate resolution certified by Buyer's corporate secretary or, if Buyer is not a corporation, other evidence satisfactory to Seller as to Buyer's authority: (i) to purchase the Loans and assume the Obligations thereunder, and (ii) to execute and deliver this Agreement and all related instruments required to consummate the transactions contemplated hereby and to carry out all of its obligations hereunder (including a certificate of incumbency of any person who executes any document on behalf of Buyer).

3.　Two originals of this Agreement executed by Buyer.

4.　Two originals of the Loss-Share Agreement, in the form of Attachment "H" to this Agreement, executed by Buyer

5.　Other documents as Seller may reasonably require as evidence of Buyer's good standing, existence or authority.

(b)　At Closing, Seller shall deliver to Buyer:

1.　A Bill of Sale transferring all of Seller's right, title and interest in and to the Loans to Buyer, in the form of Attachment "C" to this Agreement, executed by Seller.

2.　Two originals of the Assignment and Assumption of Interests and Obligations, in the form of Attachment "D" to this Agreement, executed by Seller.

3.　Two originals of this Agreement executed by Seller.

4.　Two originals of the Loss-Share Agreement, in the form of Attachment "H" to this Agreement, executed by Seller.

Federal Deposit Insurance Corporation　　　　　11　　　　　Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 16 of 91

USB_0109

4.     Such Transfer Documents executed by Seller as Seller elects to deliver at Closing.

(c)     Within thirty days after the Loan Sale Closing Date, Buyer shall deliver the Tax Certificate to Seller, if applicable.

(d)     Within a reasonable time after the Loan Sale Closing Date, Seller shall deliver to Buyer the Note, the Loan File(s) and Collateral Document(s) pertaining to the Loan(s) sold.

(e)     After Closing, Seller, in Seller's sole discretion, may elect to grant a Limited Power of Attorney to selected Buyer employees. If Seller elects to grant such a Limited Power of Attorney, Seller will provide it to Buyer within a reasonable time after the Loan Sale Closing Date. If Buyer is granted such a Limited Power of Attorney, Buyer, at Buyer's expense, will prepare and execute on behalf of Seller, within a reasonable time after the Loan Sale Closing Date, all Transfer Documents not delivered by Seller to Buyer at Closing. All Transfer Documents prepared by Buyer shall be in appropriate form suitable for filing or recording (if applicable) in the relevant jurisdiction and otherwise subject to the limitations set forth herein, and Buyer shall be solely responsible for the preparation, contents and form of such documents. Buyer hereby releases Seller from any loss or damage incurred by Buyer due to the contents and form of any documents prepared by Buyer and shall indemnify and hold Seller harmless for any action or cause of action by any person, including Buyer, arising out of the contents or form of the Transfer Documents, including without limitation, any claim relating to the adequacy or inadequacy of any of such documents or instruments for the purposes thereof.

The form which Buyer shall use for endorsing promissory notes or preparing allonges to promissory notes is as follows:

Pay to the order of

_____

Without Recourse

FEDERAL DEPOSIT INSURANCE
CORPORATION [insert applicable capacity(ies)]

By: _____
Name: _____
Title:   Attorney-in-Fact

All other documents of assignment, conveyance or transfer shall contain this sentence: "This assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver."

Federal Deposit Insurance Corporation          12                              Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 17 of 91

USB_0110

(f)     In the event Seller elects not to provide Buyer with a Limited Power of Attorney in accordance with Section 3.1(e), then all Transfer Documents not delivered by Seller to Buyer at Closing shall be prepared and executed by one of the following methods, at Seller's option:

1.     Seller, at Seller's expense, will prepare and execute all endorsements and allonges to Notes or Assignment and Lost Instrument Affidavits (if applicable) not delivered by Seller to Buyer at Closing and provide them to Buyer within a reasonable time after the Loan Sale Closing Date. Buyer, at Buyer's expense, will prepare all other Transfer Documents not delivered by Seller to Buyer at Closing and shall deliver such documents to Seller for execution within a reasonable time after the Loan Sale Closing Date. All Transfer Documents prepared by Buyer shall be subject to the terms and conditions for Transfer Documents specified in Section 3.1(e) above. If any Transfer Document delivered by Buyer to Seller for execution is unacceptable to Seller for any reason whatsoever, Seller may return such document to Buyer along with an explanation as to why the document is unacceptable to Seller. When requesting execution of any such document, Buyer shall furnish Seller with the Loan Pool and the Loan numbers set forth on the Schedule of Loans, and a copy of the Note(s), a copy of the Collateral Document(s) or other document(s) to be transferred, and copies of any previous assignments of the applicable Collateral Document or other document; or

2.     Seller, at Seller's expense, will prepare and execute all Transfer Documents not delivered by Seller to Buyer at Closing and provide them to Buyer within a reasonable time after the Loan Sale Closing Date. Seller shall furnish all such documents to Buyer in appropriate form suitable for filing or recording (if applicable) in the relevant jurisdiction and otherwise subject to the limitations set forth herein.

(g)     As to Foreign Loans, Buyer, at its own expense, must retain counsel who are licensed in the Foreign Jurisdiction(s) involved with the Foreign Loans. Such foreign counsel must draft the documents necessary to assign the Foreign Loans to Buyer. Documents presented to Seller to assign Foreign Loans to Buyer must be accompanied by a letter on the foreign counsel's letterhead, signed by the foreign counsel preparing those documents, certifying that those documents conform to all the laws of the Foreign Jurisdiction. Each such document and instrument shall be delivered to Seller in the English language, provided, however, that any document required for its purposes to be executed by Seller in a language other than the English language shall be delivered to Seller in such language, accompanied by a translation thereof in the English language, certified as to its accuracy by an executive officer or general counsel of Buyer and, if such executive officer or general counsel shall not be fluently bilingual, by the translator thereof.

USB_0111

(h)     Nothing contained herein or elsewhere in this Agreement shall require Seller to make any agreement, representation or warranty or provide any indemnity in any such document or instrument or otherwise, nor is Seller obligated to obtain any consents or approval to the sale or transfer of the Loans or the related servicing rights, if any, or the assumption by the Buyer of the Obligations.

(i)     Seller agrees to execute any additional documents required by applicable law or necessary to effectively transfer and assign any and all Loans to Buyer.  Seller shall have no obligation to provide, review or execute any such additional documents unless the same shall have been requested of Seller within 365 calendar days of the Loan Sale Closing Date.

**3.2. Recordation of Documents.** Buyer shall be responsible for, and agrees to promptly deliver, at its sole cost and expense, all appropriate documents and instruments with respect to each Loan for recordation or filing in the appropriate land, chattel, Uniform Commercial Code, and other records of the appropriate county, state and/or other jurisdiction(s) or Foreign Jurisdiction to effect the transfer of the Loans and the Collateral Documents and all rights in Collateral, and to render legal, valid and enforceable the obligations of the Borrower(s) to the Buyer and the assumption by the Buyer of any Obligations related to a Loan arising under and in accordance with the relevant Note and Collateral Documents.  Seller shall, if such is affirmatively required under the applicable laws of a relevant Foreign Jurisdiction, take such actions as are necessary in such Foreign Jurisdiction to effect the purposes of this Article III.  In accordance with Section 2.8 hereof, Buyer shall be responsible for and shall pay any and all Taxes, fees, costs and expenses incurred in connection therewith, including without limitation notarization fees and stamp, transfer and similar Taxes or fees.

**3.3. Transfer of Servicing.** The Loans are hereby sold and conveyed to Buyer on a servicing-released basis.  From and after the Bank Closing Date, all rights, obligations, liabilities and responsibilities with respect to the servicing of the Loans shall pass to the Buyer, and Seller shall be discharged from all liability therefor, including any liability arising from any limited interim servicing provided by Seller pursuant to this Section 3.3.

To provide for the orderly transfer of the servicing to Buyer, Seller will provide, at Seller's expense, limited interim servicing of the Loans on Buyer's behalf from the Bank Closing Date through the Deconversion Date, as follows:  (i) receive payments and post them to the system of record, (ii) maintain records reflecting payments received, (iii) provide Buyer on request a schedule of payments processed, and (iv) provide payoff information to Buyer regarding particular Loans as applicable.  Seller may engage agents of Seller's own choosing to perform such limited interim servicing.  Seller's performance of this limited interim servicing shall cease on the Deconversion Date.

Federal Deposit Insurance Corporation                  14                              Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 19 of 91

USB_0112

## Article IV
## Representation and Warranties of Buyer

Buyer hereby represents and warrants to Seller as of the date of this Agreement and as of the Loan Sale Closing Date:

**4.1. Buyer's Authorization.** Buyer and the undersigned duly authorized representative of Buyer, acting individually, represent that Buyer is authorized to enter into this Agreement and that all laws, rules, regulations, charter provisions and bylaws to which Buyer may be subject have been duly complied with, and that such representative is authorized to act upon behalf of and bind Buyer to the terms of this Agreement.

**4.2. Compliance with Law.** Neither Buyer nor any of its subsidiaries is in violation of any statute, regulation, order, decision, judgment or decree of, or any restriction imposed by, the United States of America, any State, municipality or other political subdivision or any agency of any of the foregoing, or any court or other tribunal having jurisdiction over Buyer or any of its subsidiaries or any assets of any such person, or any foreign government or agency thereof having such jurisdiction, with respect to the conduct of the business of Buyer or of its subsidiaries, or the ownership of the properties of Buyer or any of its subsidiaries, which, either individually or in the aggregate with all other such violations, would materially and adversely affect the business, operations or condition (financial or otherwise) of Buyer or the ability of Buyer to perform, satisfy or observe any obligation or condition under this Agreement. Neither the execution and delivery nor the performance by Buyer of this Agreement will result in any violation by Buyer of, or be in conflict with, any provision of any applicable law or regulation, or any order, writ or decree of any court or governmental authority.

**4.3. Execution and Enforceability.** This Agreement has been duly executed and delivered by Buyer and when duly authorized, executed and delivered by Seller, this Agreement will constitute a legal, valid and binding obligation of Buyer, enforceable in accordance with its terms.

**4.4 Representations Remain True.** Buyer represents and warrants that all information and documents provided to Seller or its agents by or on behalf of Buyer in connection with this Agreement and the transactions contemplated hereby, including, but not limited to, the Purchaser Eligibility Certification and the Confidentiality Agreement, are true and correct in all material respects and do not fail to state any fact necessary to make the information contained therein not misleading.

USB_0113

## Article V
## Covenants, Duties and Obligations of Buyer

**5.1.  Servicing of Loans.** From and after the Deconversion Date, Buyer shall comply with all state and federal laws and the laws of any Foreign Jurisdiction applicable with respect to the ownership and/or servicing of the Loans, including, without limitation, the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*, as amended) and similar state requirements, rules and regulations, and shall abide by and be subject to all of the terms and conditions of the Collateral Documents and other instruments and documents governing or relating to the Loans and/or the servicing rights and other rights thereunder.

**5.2.  Disbursements of Principal.** Buyer accepts and assumes and expressly agrees to perform in accordance with the terms, all Obligations under the Note and the Collateral Documents, including without limitation, all Obligations for Disbursements of Principal, and Buyer hereby expressly agrees to indemnify, defend and hold harmless the Failed Bank, Seller and Seller's agents and employees from and against any claims, demands and causes of action arising out of claims of breach or default by Buyer of such Obligations.

**5.3.  Collection Agency/Contingency Fee Agreements.** Buyer takes the Loan(s) subject to any agreements with collection agencies currently in force or contingency fee agreements with attorneys and agrees to fulfill all Obligations of Seller thereunder. Buyer hereby indemnifies and agrees to hold Seller harmless from and against any and all claims, demands, losses, damages, penalties, forfeitures or judgments made or rendered against Seller or any legal fees or other costs, fees or expenses incurred by Seller arising out of or based upon such agreements with collection agencies or contingency fee agreements with attorneys. Buyer agrees to notify Seller within ten (10) Business Days of notice or knowledge of any such claim or demand.

**5.4.  Insured or Guaranteed Loans.** If any Loans being transferred pursuant to this Agreement are insured or guaranteed by any department or agency of any governmental unit, federal, state or local and such insurance or guaranty is not being specifically terminated by Seller, Buyer represents that Buyer has been approved by such agency and is an approved lender or mortgagee, as appropriate, if such approval is required or, if Buyer has not been approved, Buyer recognizes that any such insurance or guarantees may be terminated. Buyer further assumes full responsibility for determining whether or not such insurance or guarantees are in full force and effect on the date of this Agreement and with respect to those Loans whose insurance or guaranty is in full force and effect on the date of this Agreement, Buyer assumes full responsibility for doing all things necessary to insure such insurance or guarantees remain in full force and effect. Buyer agrees to assume all of Seller's Obligations under the contract(s) of insurance or guaranty, agrees to indemnify and hold Seller harmless from and against any claims of breach thereof after the Closing and agrees to cooperate with Seller where necessary to complete forms required by the insuring or guaranteeing department or agency to effect or complete the transfer to Buyer.

USB_0114

**5.5. Buyer's Due Diligence.** Buyer represents that it has made an independent evaluation of the Loan and Loan Files and/or any electronic data made available to it pertaining to the Loans being purchased hereunder. Buyer also represents that it has conducted such other investigations as it deems appropriate and as are consistent with the terms of the Confidentiality Agreement executed or assented to by Buyer in connection with this transaction, including, without limitation, searches of Uniform Commercial Code, title, court, bankruptcy and other public records. Buyer agrees and represents that it is entering into this Agreement solely on the basis of its own investigations and its judgment as to the nature, validity, enforceability, collectibility and value of the Loans and all other facts material to their purchase, including, but not limited to the legal matters and risks relating to the collection and enforcement, and the performance of Obligations in any Foreign Jurisdiction. Buyer further acknowledges that no employee or representative of Seller has been authorized to make any statements or representations other than those specifically contained in this Agreement.

**5.6. Reporting to or for the Applicable Taxing Authorities.** The Seller shall be responsible for submitting all Internal Revenue Service information returns related to the Loans sold hereunder for all applicable periods prior to the Deconversion Date. The Buyer shall be responsible for submitting all Internal Revenue Service information returns related to the Loans sold hereunder for all applicable periods commencing with the Deconversion Date. Information returns include 1098 and 1099 reporting. Buyer shall be responsible for submitting all information returns required under applicable laws of any Foreign Jurisdiction, to the extent such are required to be filed by Buyer or Seller under such laws, relating to the loans sold hereunder, for the calendar or tax year in which the Closing occurs and thereafter.

**5.7. Loans in Litigation.** With respect to any Loan sold pursuant to this Agreement, which is the subject of any type of pending litigation, Buyer shall notify Seller's Regional Counsel, 1601 Bryan St., Dallas, Texas 75201, within fifteen (15) Business Days of the Loan Sale Closing Date of the name of the attorney selected by Buyer to represent Buyer's interests in the litigation. Buyer shall, within fifteen (15) Business Days of the Loan Sale Closing Date, notify the clerk of the court or other appropriate official and all counsel of record that ownership of the Loan was transferred from Seller to Buyer. Buyer shall have its attorney file appropriate pleadings and other documents and instruments with the court or other appropriate body within twenty (20) Business Days of the Loan Sale Closing Date, substituting Buyer's attorney for Seller's attorney and also removing Seller as a party to the litigation and substituting Buyer as the real party-in-interest. Except as provided in the next succeeding sentence, should Buyer fail to comply with the provisions of this section within twenty (20) Business Days after the Loan Sale Closing Date, Seller may, at its option, dismiss with or without prejudice or withdraw from, any such pending litigation.

In the event that Buyer shall be unable, as a matter of applicable law, to cause Seller to be replaced by Buyer as party-in-interest in any such litigation, Buyer shall provide to Seller's Regional Counsel at the address specified above within twenty (20) Business Days of the Loan Sale Closing Date a legal opinion of Buyer's legal counsel, qualified in the relevant jurisdiction, to such effect and stating the reasons for such failure. In such event, (i) Buyer shall cause its

Federal Deposit Insurance Corporation        17        Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 22 of 91

USB_0115

attorney to conduct such litigation at Buyer's sole cost and expense; (ii) Buyer shall cause the removal of Seller and substitution of Buyer as party-in-interest in such litigation at the earliest time possible under applicable law; (iii) Buyer shall use its best efforts to cause such litigation to be resolved by judgment or settlement in as reasonably efficient a manner as practical; (iv) Seller shall cooperate with Buyer and Buyer's attorney as reasonably required in Seller's sole judgment to bring such litigation or any settlement relating thereto to a reasonable and prompt conclusion; (v) no settlement shall be agreed upon by Buyer or its agents or counsel without the express prior written consent of Seller, unless such settlement includes an irrevocable and complete waiver and release of any and all potential claims against Seller in relation to such litigation or the subject Loans or Obligations by any person, including without limitation Buyer and any Borrower, and any and all losses, liabilities, claims, causes of action, damages, demands, taxes, fees, costs and expenses relating thereto are expressly agreed, duly, validly and enforceably, to be paid by Buyer without recourse of any kind to Seller; and (vi) Buyer shall pay all costs and expenses of Seller and Seller's counsel, if any, engaged in connection with such litigation as provided for in the next succeeding sentence.

Buyer agrees to reimburse Seller, upon demand, for Seller's legal expenses in such litigation. Buyer shall pay all of the costs and expenses incurred by it in connection with the actions provided for in this Section 5.7, including, without limitation, all legal fees and expenses and court costs, and agrees to pay or reimburse Seller, upon demand, for Seller's legal expenses in connection with such litigation incurred on or after the Loan Sale Closing Date, including the dismissal thereof or withdrawal therefrom.

**5.8. Loans in Bankruptcy.** In accordance with Bankruptcy Rule 3001(e), Buyer agrees to take all actions necessary to file within thirty (30) Business Days of the Loan Sale Closing Date, (i) proofs of claims in pending bankruptcy cases involving any Loans purchased for which Seller has not already filed a proof of claim, and (ii) all documents required by Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure and to take all such similar actions as may be required in any relevant jurisdiction in any pending bankruptcy or insolvency case or proceeding in such jurisdiction involving any Loans purchased in order to evidence and assert Buyer's rights. Buyer shall prepare and provide to Seller within thirty (30) Business Days of the Loan Sale Closing Date, an Affidavit and Assignment of Claim or any similar forms as may be required in any relevant Foreign Jurisdiction and shall be acceptable to Seller, for each Loan purchased pursuant to this Agreement where a Borrower under such Loan is in bankruptcy at Closing. Buyer releases Seller from any claim, demand, suit or cause of action Buyer may have as a result of any action or inaction on the part of the Failed Bank or the Seller with respect to such Loan and Buyer further agrees to reimburse Seller for any cost or expense incurred by Seller as a result of Buyer's failure to file an Affidavit and Assignment of Claim or similar forms as required herein.

**5.9. Loan Related Insurance.** As of the Bank Closing Date, Buyer is responsible for having itself substituted as loss payee on all Loan related insurance in which the Failed Bank or Seller is currently listed as a loss payee. Any loss after the Bank Closing Date to a Borrower, a

Federal Deposit Insurance Corporation       18       Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 23 of 91

USB_0116

participant in a Participated Loan, or to Buyer or to the value or collectibility of any Loan due to Seller's cancellation of any insurance is the sole responsibility of Buyer.

**5.10. Loans with Escrow Accounts.** Buyer agrees to assume, undertake and discharge any and all Obligations of the holder of the Loans with respect to any escrow, maintenance of escrow and payments from escrow of monies paid by or on account of the Borrower. Seller shall transfer to Buyer that sum of monies held by Seller as of the Deconversion Date, which represents undisbursed escrow payments.

5.11. **[Intentionally Omitted]**

**5.12. Contracts for Deed.** Buyer agrees to comply with all Obligations set forth in any Contract for Deed contained in any Loan Pool subject to this Agreement. Pursuant to the provisions of Section 3.1 hereof, Seller may require Buyer to prepare and furnish Special Warranty Deed(s) for Seller's approval and execution, conveying the real property subject to any such contract to Buyer. Title curative work, if required, shall be at Buyer's sole cost and expense.

**5.13. Leases.** Buyer agrees to comply with all Obligations set forth in any lease related to any Loan subject to this Agreement. Pursuant to the provisions of Section 3.1 hereof, Seller may require Buyer to prepare and furnish applicable Transfer Documents for Seller's approval and execution.

**5.14. Files and Records.** Buyer agrees to abide by all applicable state, federal and Foreign Jurisdiction laws, rules and regulations regarding the handling and maintenance of all documents and records relating to the Loans purchased hereunder including, but not limited to, the length of time such documents and records are to be retained. Buyer further agrees to:

(a)  Allow Seller the continuing right to use, inspect and make extracts from or copies of any such documents or records upon Seller's reasonable notice to Buyer.

(b)  Allow Seller the possession, custody and use of original documents for any lawful purpose and upon reasonable terms and conditions.

(c)  Give reasonable notice to Seller of Buyer's intention to destroy or dispose of any documents or files and to allow Seller, at its own expense, to recover the same from Buyer.

**5.15. Reimbursement for Use of Seller's Employees.** In the event of litigation with respect to the Loans purchased by Buyer in which Seller or its employees are requested or required by subpoena, court order or otherwise, to perform any acts including, but not limited to, testifying in litigation, preparing responses to subpoenas or other legal process or pleadings, and/or performing any review of public or private records such as tracing funds, whether said litigation is commenced by Buyer or any other party, Seller shall be reimbursed by Buyer for the time expended by each of Seller's employees involved in the performance of said acts at the rate

USB_0117

of the greater of $75.00 per hour per employee or the then prevailing hourly rate per employee charged by the Seller or the FDIC to perform such services, plus all associated travel, lodging and per diem costs. Seller shall, in its sole and absolute discretion, determine and assign the personnel necessary to perform said acts. Buyer also agrees to reimburse Seller for copies made in the course of performing said acts at the rate of 25 cents ($.25) per copy. Nothing in this section shall require Seller to provide Buyer with any information or service in this regard.

**5.16. Notice to Borrowers.** Buyer or, at Seller's option, Seller shall promptly after the Loan Sale Closing Date, but in no event later than thirty (30) calendar days after the Loan Sale Closing Date, at its own cost and expense, give notice of this transfer to all Borrowers or Loan servicers, in the case of Borrowers located in the United States, by first class U.S. mail at their current or last known address of record or, in the case of Borrowers located in a Foreign Jurisdiction, in such manner as may be required under the laws of such jurisdiction in order to effectively give notice to such Borrowers of the transfer of the Loans. In the event there is no known address for a Borrower, no personal notice to that Borrower shall be necessary. Upon subsequently locating such Borrower, Buyer shall send such notice to such Borrower. Buyer shall be liable to Seller for any and all costs and expenses incurred by Seller as a result of Buyer's failure to comply with the provisions of this section. Such costs and expenses shall include, but not be limited to, salaries of Seller's personnel and other administrative expenses, the time expended by each of Seller's employees involved in the performance of said acts at the rate of the greater of $75.00 per hour per employee or the then prevailing hourly rate per employee charged by the Seller or the FDIC to perform such services, plus all associated travel, lodging and per diem costs. Seller shall, in its sole and absolute discretion, determine and assign the personnel necessary to perform said acts. Buyer also agrees to reimburse Seller for copies made in the course of performing said acts at the rate of 25 cents ($.25) per copy. Nothing in this section shall require Seller to provide Buyer with any information or service in this regard.

**5.17. Notice of Claim.** Buyer shall immediately notify Seller of any claim, threatened claim or litigation against Seller or the Failed Bank arising out of any Loan contained in a Loan Pool purchased by Buyer that may come to its attention.

**5.18. Use of the FDIC's Name and Reservation of Statutory Powers.** Buyer agrees that it will not use or permit the use by its agents, successors or assigns of any name or combination of letters that is similar to the FDIC or the Federal Deposit Insurance Corporation. Buyer will not represent or imply that it is affiliated with, authorized by or in any way related to the FDIC. Seller specifically permits Buyer to assert the statute of limitations established under 12 U.S.C. § 1821(d)(14) pursuant to the terms of the Assignment and Assumption of Interests and Obligations. However, Buyer acknowledges and agrees that the assignment of any Loan or Collateral Document pursuant to the terms of this Agreement shall not constitute the assignment of any other rights, powers or privileges granted to Seller pursuant to the provisions the Federal Deposit Insurance Act, including, without limitation, those granted pursuant to 12 U.S.C. § 1821(d), 12 U.S.C. § 1823(e) and 12 U.S.C. § 1825, all such rights and powers being expressly reserved by Seller; nor, shall Buyer assert or attempt to assert any such right, power or privilege in any pending or future litigation involving any Loan purchased hereunder. Buyer and Seller

agree and stipulate that breach of the provisions of this section will result in actual and substantial damages to Seller in an amount that cannot be determined with precision. It is therefore agreed that in the event of such breach, Buyer shall pay the sum of $25,000.00 to Seller for each such breach as liquidated damages, together with such fees and expenses as Seller may incur in preventing further or continuing breach of said provision and recovering liquidated damages. Notwithstanding the provisions of this section, the FDIC may also pursue any equitable remedy it may have for Buyer's breach of this covenant.

**5.19. Prior Servicer Information.** Buyer acknowledges and agrees that Seller might not have access to information from prior servicers of a Loan and that Seller has not requested any information not in the possession of Seller or its servicing contractor from any prior servicer of a Loan. Buyer acknowledges and agrees that Seller will not be required under the terms of this Agreement to request any information from any prior servicer.

**5.20. Release of Seller.** (a)  Except as otherwise specifically provided in Article VII of this Agreement, Buyer hereby releases and forever discharges Seller, the Failed Bank and the FDIC, all of their officers, directors, employees, agents, attorneys, contractors and representatives, and their successors, assigns and affiliates, from any and all claims (including any counterclaim or defensive claim), demands, causes of action, judgments or legal proceedings and remedies of whatever kind or nature that Buyer now has or might have in the future, whether now known or unknown, which are related in any manner whatsoever to the Loans and this Agreement.

(b)  Buyer agrees that it will not renew, extend, renegotiate, compromise, settle or release any Note or Loan or any right of Buyer founded upon or growing out of this Agreement, except upon payment in full thereof, unless all Borrowers on said Note or Loan shall first release and discharge the Failed Bank(s) and Seller and its agents and assigns (the "Released Parties") from all claims, demands and causes of action which any such Borrower may have against any such Released Party arising from or growing out of any act or omission occurring prior to the date of such release. If Buyer fails to obtain such release, Buyer agrees to protect, save and hold Seller harmless from any expense or damage Seller suffers that might have been prevented had Buyer obtained the release.

**5.21. Indemnification.** Buyer agrees to pay, or reimburse to Seller, and to protect, indemnify, save and hold harmless Seller, Seller's agents and financial services advisor engaged in connection with the Loan Sale from and against any and all losses, liabilities, claims, causes of action, damages, demands, taxes, fees, costs and expenses of whatever kind, arising out of, incurred in connection with or otherwise relating to Buyer's actions or inactions in performing, or failure to perform, the obligations of Buyer set forth in this Agreement. Buyer further agrees to pay when due or promptly reimburse Seller for any fees, taxes, costs and expenses incurred by Seller in connection with the performance or nonperformance by Buyer of all of the obligations of Buyer specified herein.

Federal Deposit Insurance Corporation                      21                                    Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 26 of 91

USB_0119

**5.22. Borrower as Buyer.** In the event that Buyer is the Borrower or a Related Party with respect to any Loan in the Loan Pool, then Buyer, on its own behalf and on behalf of any Related Party, agrees that it shall, and hereby does, release and discharge and agrees to indemnify, defend and hold harmless the Failed Bank(s), Seller and Seller's agents and employees from and against all claims, demands and causes of action arising out of any act or omission related to said Loan. Buyer acknowledges and agrees that it shall have no repurchase option on any Loan for which Buyer or a Related Party is the Borrower pursuant to Article VII of this Agreement. At Buyer's request, and upon preparation of appropriate documentation by Buyer in conformance with Section 3.1, Seller will release and discharge a Loan for which Buyer is the Borrower in lieu of assigning the same to Buyer. In any event, Seller will issue a 1099 to report any discharge of indebtedness in connection with the sale or release of the Loan to the Borrower or a Related Party in accordance with IRS regulations and FDIC policy. Notwithstanding the foregoing, any failure by the FDIC to issue a 1099 does not relieve the Buyer of its responsibility to report the discharge of indebtedness in accordance with applicable federal tax law.

Federal Deposit Insurance Corporation
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

22

Downey

Exhibit 3, Page 27 of 91

USB_0120

## Article VI
## Loans Sold "As Is" and Without Recourse

**6.1. Loans Sold "As Is."** THE LOANS ARE SOLD "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION, WARRANTY OR RECOURSE WHATSOEVER AS TO EITHER COLLECTIBILITY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED. SELLER SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST OR PRESENT, EXPRESS OR IMPLIED, CONCERNING THE LOANS, THE STRATIFICATION OR PACKAGING OF THE LOANS, THE COLLATERAL OR THE COLLATERAL DOCUMENTS.

**6.2. No Warranties or Representations with Respect to Escrow Accounts.** Seller makes no warranties or representation of any kind or nature as to the sufficiency of funds held in any escrow account to discharge any obligations related in any manner to an escrow obligation, as to the accuracy of the amount of any monies held in any escrow account or as to the propriety of any previous disbursements or payments from any escrow account.

**6.3. No Warranties or Representations as to Amounts of Unfunded Principal.** Seller further makes no warranties or representation of any kind or nature as to the amount of any additional or future Disbursements of Principal Buyer is obligated to make.

**6.4. Disclaimer Regarding Calculation or Adjustment of Interest on any Loan.** Seller makes no warranties or representation of any kind as to the accuracy of any calculation or adjustment of interest on any Loan, including, without limitation, any adjustable rate mortgage Loan, whether such calculation or adjustment is made by the Failed Bank, Seller, any agent or contractor of Seller, or any predecessor-in-interest of Seller or any other party.

**6.5. No Warranties or Representations With Regard to Due Diligence Data.** Seller makes no warranties or representation of any kind as to the completeness or accuracy of any information provided by Seller with respect to any Loan. Buyer's exclusive remedies with respect to any inaccurate or incomplete information provided by Seller are an adjustment to the Purchase Price in accordance with Section 2.4 hereof or an option to repurchase under Article VII, and such exclusive remedies are available only if all other conditions therefor expressed in this Agreement have been met.

**6.6. Buyer's Waiver of Cause of Action.** Buyer hereby waives any right or cause of action it might now or in the future have against the Failed Bank(s) or Seller as a result of its purchase of the Loan Pool(s) subject to this Agreement; provided, however, that this waiver does not include any action taken as a result of Seller's failure to perform under the terms of this Agreement.

Federal Deposit Insurance Corporation 23 Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 28 of 91

USB_0121

**6.7. Intervening or Missing Assignments.** Buyer acknowledges and agrees that Seller shall have no obligation to secure or obtain any missing intervening assignment or any assignment to Seller that is not contained in the Loan File or among the Collateral Documents. Buyer shall have the sole responsibility and expense of securing any intervening assignment or any assignment to Seller that may be missing from the Collateral Documents from the appropriate source.

**6.8. No Warranties or Representations as to Documents.** Seller makes no warranties or representations of any kind or nature as to the effectiveness or enforceability in any Foreign Jurisdiction of this Agreement, the Bill of Sale, the Assignment and Assumption of Interests and Obligations or any other document or instrument prepared in connection herewith, whether or not prepared and executed in the forms provided herewith, all of such forms being provided for reference only.

Federal Deposit Insurance Corporation          24          Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 29 of 91

USB_0122

## Article VII
## Repurchase by Seller at Buyer's Option

**7.1. (a) Repurchases at Buyer's Option.** Buyer may, at its option, and upon satisfaction of the procedures and other requirements set forth below, require Seller to repurchase a Loan, if, and only if, prior to the Loan Sale Closing Date one of the following events set forth below has occurred. IN NO EVENT SHALL THE OCCURRENCE OF ANY SUCH EVENT BE EVIDENCE OF BAD FAITH, MISCONDUCT OR FRAUD EVEN IN THE EVENT THAT IT IS SHOWN THAT SELLER, IN ANY CAPACITY, ANY AGENT OF SELLER, ANY FAILED BANK OR ANY OF THEIR RESPECTIVE DIRECTORS, EMPLOYEES, OFFICERS OR AGENTS KNEW OR SHOULD HAVE KNOWN OF THE EXISTENCE OF ANY FACTS RELATING TO THE OCCURRENCE OF SUCH EVENT:

(i)     The Borrower had been discharged in a no asset bankruptcy proceeding and no collateral exists out of which the Loan may be satisfied and all guarantors or sureties of the Note, if any, or the obligations contained therein, have similarly been discharged in no asset bankruptcies.

(ii)     A court of competent jurisdiction had entered a final judgment (other than a bankruptcy decree or judicial foreclosure order) holding that neither the Borrower nor any guarantors or sureties owe an enforceable obligation to pay the holder of the Note or its assignee(s).

(iii)     The Failed Bank or Seller had executed and delivered to the Borrower a release of liability from all obligations under the Note.

(iv)     A title defect exists in connection with the property which is the subject of a Contract for Deed and which title defect requires a prior order or judgment of a court to enable Buyer to convey title to such property in accordance with the terms and conditions set forth in the Contract for Deed.

(v)     Seller is not the owner of the Loan (or, in the case of a participation interest in a Loan, Seller is not the owner of the *pro rata* interest in such participation interest set forth on the attached Schedule of Loans).

(vi)     The Mortgaged Property securing any Loan sold hereunder has Significant Environmental Contamination. Buyer's recourse with respect to this Section 7.1(f) shall be conditioned upon: (i) the presence of Significant Environmental Contamination not being disclosed in the Loan, Loan File or other material made available by Seller to Buyer prior to submission of a Bid; (ii) such Loan having a Book Value greater than $250,000.00 as of the Loan Sale Closing Date; and, (iii) Buyer delivering, along with the notice required by Section 7.4 hereof, the following, each of which must be satisfactory in form and substance to Seller in its sole discretion:

---

Federal Deposit Insurance Corporation          25          Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 30 of 91

USB_0123

1.     A Phase I environmental assessment, from a qualified and reputable firm, of the Mortgaged Property securing the Loan; and,

2.     A Phase II environmental assessment of such Mortgaged Property from a qualified and reputable firm, which assessment shall confirm (i) the existence of Significant Environmental Contamination on such Mortgaged Property and (ii) that the regulator is likely to require such remediation; and,

3.     Buyer shall have submitted a written certification of Buyer under penalty of perjury that no action has been taken by or on behalf of Buyer (i) to initiate foreclosure proceedings or (ii) to accept a deed-in-lieu-of-foreclosure in connection with such Loan.

(vii)    The Failed Bank, its officers, directors or employees fraudulently caused the Borrower to receive less than all of the proceeds and benefits of a Note. Buyer's recourse with respect to this Section 7.1(g) shall be conditioned upon Buyer delivering, along with the notice required by Section 7.4 hereof, written evidence of such fraud, which evidence must be satisfactory in form and substance to Seller in its sole discretion.

(vii)    The Loan was made after the date of the Information Package.

(b)  **Repurchases at Seller's Option.** The Purchaser agrees at the request of the Receiver set forth in a written notice to the Purchaser to assign, transfer convey and deliver to the Receiver all of the Purchaser's right title and interest in any Loan where the Mortgaged Property has Significant Environmental Contamination. Seller will pay the Purchaser the Repurchase Price for any Loan repurchased under this Section.

**7.2.  Securities Laws Right of Rescission.** In the event that Buyer is entitled to and wishes to exercise its rescission rights under any federal or state securities law, Buyer shall deliver the notice required by Section 7.4 hereof, together with written evidence of the circumstances giving rise to Buyer's right to rescission, which evidence must be satisfactory in form and substance to Seller in its sole discretion.

**7.3.  Defects not Qualifying for Repurchase.** Neither the absence of any intervening assignment or any assignment to Seller, nor the existence of any lien, claim or encumbrance on the Loan or its Collateral, nor any defect in the lien or priority of Seller's security interest in the Collateral shall give rise to any claim for repurchase under this Article VII.

**7.4.  Notice to Seller.** Buyer shall notify Seller of each Loan with respect to which Buyer seeks repurchase. Such notice shall be on Buyer's letterhead paper and include the following information: (a) Buyer's tax identification number, (b) Buyer's wire transfer instructions, (c) the subsection under Section 7.1 hereof for which Buyer is seeking repurchase and (d) a summary of the reasons Buyer believes that the Loan(s) should be repurchased. The notice shall be accompanied by evidence supporting the basis for repurchase of such Loan. Promptly upon

Federal Deposit Insurance Corporation          26                    Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 31 of 91

USB_0124

request by Seller, Buyer shall supply Seller with any additional evidence that Seller may require. Seller shall have no obligation to repurchase any Loan pursuant to this Article VII for which notice and all supporting evidence reasonably required by Seller have not been received by Seller at the addresses specified in Sections 8.2 and 8.3 hereof no later than the first Business Day after the expiration of 180 calendar days after the Loan Sale Closing Date, or in the case of a Contract for Deed, the first Business Day after the expiration of 360 calendar days after the Loan Sale Closing Date.

**7.5. Re-delivery of Note(s), Files and Documents.** For any Loan that qualifies for repurchase under this Article, Buyer shall: (a) re-endorse and deliver the Note(s) to Seller, (b) reassign all Collateral Documents associated with such Loan and reconvey any real property subject to a Contract for Deed or transferred by quitclaim deed pursuant to Section 2.6 hereof, together with such other documents or instruments as shall be necessary or appropriate to convey the Loan back to Seller, (c) re-deliver to Seller the Loan File, along with any additional records compiled or accumulated by Buyer pertaining to the Loan, and (d) deliver to Seller a certification, notarized and executed under penalty of perjury by a duly authorized representative of Buyer, certifying that as of the date of repurchase none of the conditions relieving Seller of its obligation to repurchase the Loan(s) as specified in Section 7.6 hereof has occurred. The documents evidencing such reconveyance shall be substantially the same as those executed as of Closing pursuant to Article III of this Agreement. In all cases where Buyer recorded or filed among public records any document or instrument evidencing a transfer of the Loan to Buyer, Buyer shall cause to be recorded or filed among such records a similar document or instrument evidencing the reconveyance of the Loan to Seller. Upon compliance by Buyer with the provisions hereof, Seller shall pay to Buyer the Repurchase Price.

**7.6. Waiver of Buyer's Repurchase Option.** Seller will be relieved of its obligation to repurchase any Loan for any reason set forth in subsections (a) through (g) of Section 7.1 hereof, if Buyer: (a) modifies any of the terms of the Loan (including the terms of any Collateral Document or Contract for Deed); (b) exercises forbearance with respect to any scheduled payment on the Loan; (c) accepts or executes new or modified lease documents assigned by Seller to Buyer; (d) sells, assigns or transfers the Loan or any interest therein; (e) fails to employ usual and customary care in the maintenance, collection, servicing and preservation of the Loan, including usual and customary delinquency prevention, collection procedures and protection of collateral as warranted; (f) initiates any litigation in connection with the Loan or the Mortgaged Property securing the Loan other than litigation to force payment or to realize on the Collateral securing the Loan; (g) completes any action with respect to foreclosure on, or accepts a deed-in-lieu of foreclosure for any Property securing the Loan; (h) causes, by action or inaction, the priority of title to the Loan, Mortgaged Property and other security for the Loan to be less than that conveyed by Seller; (i) causes, by action or inaction, the security for the Loan to be different than that conveyed by Seller, except as may be required by the terms of the Collateral Documents; (j) causes, by action or inaction, a claim of third parties to arise against Buyer that, as a result of repurchase under this Agreement, might be asserted against Seller; (k) causes, by action or inaction, a security interest, lien, pledge or charge of any nature to encumber the Loan

USB_0125

to arise; (l) is the Borrower or any Related Party under such Loan; or (m) makes a disbursement other than an Advance.

## Article VIII
### Notices

**8.1. Notices.** All notices or deliveries required or permitted hereunder shall be in writing and shall be deemed given when personally delivered to the individual hereinafter designated or when actually received by means of e-mail, facsimile, overnight mail or certified mail, return receipt requested, at the following address or such other address as either party may hereafter designate by notice to the other party, making specific reference to this Article VIII of this Agreement. Any notice sent by facsimile must be confirmed by submission of an original or hard copy on the next Business Day following such notification.

**8.2. Article VII Notice.** Notice required by Article VII (Repurchases at Buyer's Option) shall be delivered to:

> SELLER:   Manager, Asset Claims Administration
> FDIC Asset Claims Administration
> 550 17th Street, N.W.
> Washington, D.C. 20429-002
> Attention: Ralph Malami, Manager, Capital Markets
>
> Federal Deposit Insurance Corporation
> As Receiver for Downey Savings and Loan Association, FA
> Room #7056
> 3501 Fairfax Drive, Arlington, VA 22226
> Attn: Senior Counsel , Special Issues Unit

**8.3. All Other Notices.** Notice required by all other provisions of this Agreement other than Section 5.7 shall be delivered to:

> BUYER:   U. S. Bank National Association
> U. S. Bancorp Center
> BC-MN-H21N
> 800 Nicollet Mall
> Minneapolis, Minnesota 55402-4302
>
> Attention:   Lee R. Mitau
> Telephone Number:
> Facsimile Number:
> E-mail Address:

Federal Deposit Insurance Corporation          29          Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 34 of 91

**USB_0127**

SELLER:    Federal Deposit Insurance Corporation
           Franchise and Asset Marketing Branch
           550 17th Street, N.W.
           Washington, D.C. 20429
           Attention: Ralph Malami, Manager, Capital Markets


           Federal Deposit Insurance Corporation
           as Receiver for Downey Savings and Loan Association, FA
           3501 Fairfax Drive, Arlington, VA 22226
           Attn: Senior Counsel, Special Issues Unit

Federal Deposit Insurance Corporation     30     Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 35 of 91

USB_0128

# Article IX
## Condition Precedent

**9.1 Failure to Close**. The obligations of the parties to this Agreement are subject to the Receiver and the Corporation having received at or before Bank Closing Date evidence reasonably satisfactory to each of any necessary approval, waiver, or other action by any governmental authority, the board of directors of the Buyer, or other third party, with respect to this Agreement and the transactions contemplated hereby, of the closing of the Failed Bank and the appointment of the Receiver, the chartering of the Buyer, and any agreements, documents, matters or proceedings contemplated hereby or thereby.

# Article X
## Miscellaneous Provisions

**10.1. Severability.** Each part of this Agreement is intended to be severable. If any term, covenant, condition or provision hereof is unlawful, invalid or unenforceable for any reason whatsoever, such illegality, invalidity or unenforceability shall not affect the legality, validity or enforceability of the remaining parts of this Agreement and all such remaining parts hereof shall be valid and enforceable and have full force and effect as if the invalid or unenforceable part had not been included.

**10.2. Construction.** Unless the context otherwise requires, singular nouns and pronouns when used herein, shall be deemed to include the plural and vice versa and impersonal pronouns shall be deemed to include the personal pronoun of the appropriate gender.

**10.3. Survival.** Each and every covenant made by Buyer or Seller in this Agreement shall survive the Closing and shall not merge into the closing documents, but instead shall be independently enforceable.

**10.4. Governing Law.** Federal law of the United States shall control this Agreement. To the extent that federal law does not supply a rule of decision, this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York. Nothing in this Agreement will require any unlawful action or inaction by either party.

**10.5. Cost, Fees and Expenses.** Except as otherwise provided herein, each party hereto agrees to pay all costs, fees and expenses which it has incurred in connection with or incidental to the matters contained in this Agreement, including without limitation any fees and disbursements to its accountants and counsel; provided that Buyer shall pay all fees, costs and expenses (other than attorneys' fees incurred by Seller) incurred in connection with the transfer to it of any Loan hereunder.

**10.6. Nonwaiver, Amendment and Assignment.** No provision of this Agreement may be amended or waived except in writing executed by all of the parties to this Agreement. This Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof, including the Attachments to this Agreement, shall be binding upon, and shall inure to the benefit of the undersigned parties and their respective heirs, executors, administrators, representatives, successors and assigns. Notwithstanding the foregoing, this Agreement may not be transferred or assigned without the express prior written consent of Seller (and any attempted assignment without such consent shall be void).

10.7. **Drafting Presumption.** This Agreement will be construed fairly as to each party regardless of which party drafted it.

10.8. **Controlling Agreement.** Seller and Buyer hereby acknowledge and agree that this Agreement shall in all instances be the controlling document with respect to the terms of the

USB_0130

sale and transfer of the Loans, Collateral Documents and Collateral, and the assignment and assumption of all obligations thereunder, except in the event of a conflict with the Shared-Loss Agreement attached hereto as Exhibit H (the "SLA"), the terms of the SLA shall control. With the exception of the LSA, in the event of a conflict between the terms of this Agreement and the terms of any other document or instrument executed in connection herewith and with the transactions contemplated hereby, including, without limitation, any translation into a foreign language of this Agreement, any Collateral Document, or any other document or instrument executed in connection herewith which is prepared for notarization, filing or any other purpose, the terms of this Agreement shall control. Furthermore, with the exception of the SLA, the terms of this Agreement shall in no way be or be deemed to be amended, modified or otherwise affected in any manner by the terms of such other document or instrument.

10.9. **Venue.** Buyer and Seller each hereby irrevocably and unconditionally agree that any legal action arising under or in connection with the sale, this Agreement or the transactions contemplated hereby are to be instituted in the United States District Court in and for the District of Columbia.

10.10. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

10.11. **Waiver of Jury Trial.** **Buyer and Seller each hereby irrevocably and unconditionally waive any right to have a jury participate in resolving any dispute, whether sounding in contract, tort or otherwise, arising out of or relating to or in connection with the sale of the Loans, this Agreement or any transaction contemplated hereby.**

EXECUTED AS OF THE 21ST DAY OF NOVEMBER, 2008.



BUYER:

U. S. BANK NATIONAL
ASSOCIATION

By:

Name: Richard C. Hartnack

SELLER

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
DOWNEY FEDERAL SAVINGS AND LOAN
ASSOICTAION, F.A.

B

Name: Steven A. Carr

Federal Deposit Insurance Corporation        33                    Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 38 of 91

USB_0131

**ATTACHMENT "A"**
**to**
**Loan Sale Agreement**

**SCHEDULE OF LOANS**

**This list shall be provided on the Loan Sale Closing Date to accurately reflect the Loans, and the Book Value of such Loans as of the Calculation Date.**

Federal Deposit Insurance Corporation          A-1                                    Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 39 of 91

USB_0132

**ATTACHMENT B**
**to**
**Loan Sale Agreement**

[NOT APPLICABLE]

USB_0133

# ATTACHMENT C
## to
## Loan Sale Agreement


## BILL OF SALE
## (Loan Pool Number[s]: _____)

      For value received and pursuant to the terms and conditions of the Loan Sale Agreement by and between the Federal Deposit Insurance Corporation as Receiver of _____, ("Seller"), and _____ ("Buyer") dated _____ (the "Agreement"), does hereby sell, assign and convey to Buyer, its successors and assigns, all right, title and interest of Seller in and to those assets described in Exhibit A, attached to this Bill of Sale and made a part hereof for all purposes, which consist of tangible personal property.

      **THIS BILL OF SALE IS EXECUTED WITHOUT RECOURSE AND WITHOUT REPRESENTATIONS OR WARRANTIES, WHETHER EXPRESS, IMPLIED OR CREATED BY OPERATION OF LAW, EXCEPT AS PROVIDED IN THE AGREEMENT.**

      EXECUTED THIS _____ DAY OF _____, _____ .

      **SELLER:**

      FEDERAL DEPOSIT INSURANCE
      CORPORATION AS RECEIVER OF

      _____

By: _____    By: _____
Name: _____    Name: _____
      Witness                  Title:    Attorney-in-Fact

USB_0134

# ACKNOWLEDGMENT

STATE OF _____ )

COUNTY OF _____ )

Before me, the undersigned authority, a Notary Public in and for the county and state aforesaid, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, as Attorney-in-Fact of the Federal Deposit Insurance Corporation as Receiver of _____ and acknowledged to me that s/he executed the same as the act of the FEDERAL DEPOSIT INSURANCE CORPORATION, for the purposes and consideration therein expressed, and in the capacity(ies) therein stated.

Given under my hand and seal of office on this the ___ day of _____, _____.

_____
Notary Public

[SEAL]

My Commission expires: _____

*(Note to FDIC Preparer: Attach Exhibit A which should be the same as Attachment A to the Loan Sale Agreement.)*

Federal Deposit Insurance Corporation                    C-2                                    Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 42 of 91

USB_0135

**ATTACHMENT D**
to
**Loan Sale Agreement**

*(Note to FDIC Preparer: When preparing the actual Assignment, delete this instruction and the reference to Attachment D above.)*

## ASSIGNMENT AND ASSUMPTION OF INTERESTS AND OBLIGATIONS
### (Loan Pool Number[s]: _____)

THIS ASSIGNMENT AND ASSUMPTION OF INTERESTS AND OBLIGATIONS ("Assignment") is made and entered into as of the ____ day of _____, 20__ by and between the Federal Deposit Insurance Corporation [insert applicable capacities] ("Assignor") and _____, a _____ organized and existing under the laws of _____ ("Assignee").

Whereas, Assignor and Assignee have entered into that certain Loan Sale Agreement dated _____, 20__ (the "LSA"), pursuant to which Assignor has agreed to sell, assign, transfer and convey to Assignee all the assets identified on Exhibit A attached to this Agreement (the "Assets").

Whereas, pursuant to a Bill of Sale of even date herewith, Assignor has conveyed to Assignee that part of the Assets which consists of tangible personal property.

Whereas, part of the Assets may consist of documents and instruments evidencing loans (including without limitation, promissory notes, loan agreements, shared credit or participation agreements, inter-creditor agreements, letters of credit, reimbursement agreements, drafts, bankers' acceptances, transmission system confirmations of transaction and other evidences of indebtedness, including loan histories, affidavits, general collection information, correspondence and comments pertaining to such obligations), and equipment leases (the "Agreements to Pay").

Whereas, another part of the Assets may consist of documents securing Agreements to Pay, such as mortgages, deeds of trust, security agreements, loan agreements and other documents or instruments of similar nature relating to the Agreements to Pay (the "Collateral Documents").

Whereas, another part of the Assets may consist of real estate, Contracts for Deed to real estate, and leases, tenancies, concessions, licenses and other rights of occupancy or use related to real estate (including any security deposits relating thereto in Assignor's possession) (the "Real Estate Interests").

Whereas, another part of the Assets may be affected by contracts relating to the Assets, such as collection and service agreements (the "Miscellaneous Agreements"). The term "Miscellaneous Agreements" does not include loan servicing agreements between Assignor and independent contractors.

Whereas, under the LSA, Assignor has agreed to assign and convey to Assignee all of Assignor's right, title and interest to the Agreements to Pay, the Collateral Documents, the Real Estate Interests and the Miscellaneous Agreements related to the Assets.

Whereas, Assignee has agreed to accept and assume all of Assignor's duties, obligations and liabilities under the Agreements to Pay, Collateral Documents, Real Estate Interests and Miscellaneous Agreements related to the Assets (the "Obligations").

Whereas, the term "Advances" as used herein means the sum of all unreimbursed amounts advanced by or on behalf of the failed institution(s) which once owned the Assets (i) to protect the noteholder's lien position or the collateral, including payment of ad valorem taxes and hazard and forced placed insurance as permitted by the terms of any loan, or (ii) to meet required scheduled payments. The term "Advances" does not include (A) incremental funding of loan proceeds under an Agreement to Pay, such as in the case of a revolving credit loan or a construction loan, or (B) the payment of appraisal fees, broker opinion fees, attorney fees and associated legal fees, foreclosure fees, trustee fees, property inspection fees, property preservation and operating cost fees, tax penalties, title policies, lien search fees, or any other cost that can be directly associated with the collection and servicing of a loan.

NOW THEREFORE, in consideration of the foregoing and the sum of ten dollars ($10.00), and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

1. __Assignor's Assignment__. Assignor hereby transfers, grants, conveys and assigns to Assignee all of Assignor's right, title and interest in the Agreements to Pay, the Collateral Documents, the Real Estate Interests and the Miscellaneous Agreements.

2. __Assignee's Acceptance__. Assignee does hereby accept such assignment from Assignor and assumes all Obligations arising from and after the date hereof. The Obligations assumed include, without limitation, any and all obligations to (i) make payments relating to Agreements to Pay serviced by Assignor; (ii) make Advances with respect to Agreements to Pay serviced by Assignor, (iii) reimburse third party servicers for Advances on Agreements to Pay, and (iv) make incremental disbursements of loan proceeds, such as in the case of a revolving credit loan or a construction loan.

3. __Assignee's Covenants regarding Securities Law__. Assignee hereby represents and warrants to, and covenants with Assignor as follows:

Federal Deposit Insurance Corporation        D-2        Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 44 of 91

USB_0137

a.     Assignee understands that (a) neither the Assets, nor any interest therein or evidence thereof, has been registered or qualified under the Securities Act of 1933, as amended (the "Securities Act"), or the securities laws of any state or any other jurisdiction, and (b) the Assignor is not required, and does not intend, to so register or qualify the Assets.

b.     Assignee is a substantial, sophisticated investor having such knowledge and experience in financial and business matters, and in particular in matters relating to the purchase, sale, origination or ownership of notes and loan participations such as the Assets, that it is capable of evaluating the merits and risks of investment in the Assets and understands and is able to bear the economic risks of such an investment (including a total loss of its investment and the risk that Assignee might be required to hold the Assets for an indefinite period of time).

c.     Assignee is acquiring the Assets for investment, for its own account, and not for or on account of any other person or entity, and not with a view to or for sale in connection with a distribution within the meaning of Section 5 of the Securities Act.

d.     Assignee has been furnished with, and has had an opportunity to review and understands, all information relating to the Assets as has been requested and as is considered necessary by Assignee, and has had all questions arising from or relating to such review answered to the satisfaction of Assignee.

e.     Neither Assignee nor anyone acting on its behalf has (i) offered, transferred, pledged, sold or otherwise disposed of any of the Assets (or any interest therein or evidence thereof) or, (ii) solicited any offer to buy or accept a transfer, pledge or other disposition of any of the Assets (or any interest therein or evidence thereof) from, or (iii) otherwise approached or negotiated with respect to any of the Assets (or any other interest therein or evidence thereof) with any person or entity in any manner, or taken any other action that would constitute a distribution under, or render the disposition to Assignee or the disposition by Assignee to any other party of any of the Assets (or any interest therein or evidence thereof) a violation of the Securities Act or of any other securities law or require registration or qualification pursuant thereto, nor will it act, nor has it authorized or will it authorize any person or entity to so act, in any such manner with respect to the Assets (or any interest therein or evidence thereof).

f.     Either (i) Assignee is not an employee benefit plan within the meaning of Section 3(3) of the Employee Retirement Income Security Act

USB_0138

of 1974, as amended ("ERISA") or a plan within the meaning of Section 4975(e)(l) of the Internal Revenue Code, and Assignee is not, directly or indirectly, purchasing the Assets on behalf of, as investment manager of, as named fiduciary of, as trustee of or with assets of any such plan; or (ii) Assignee's purchase of the Assets (A) will not cause Assignor to be deemed a fiduciary of any such plan, or (B) either will not result in a prohibited transaction under Section 406 of ERISA or Section 4975 of the Internal Revenue Code or will be exempt from the prohibited transaction rules in Section 406 of ERISA and Section 4975 of the Internal Revenue Code.

4. <u>Assignee's Indemnification</u>. Assignee hereby indemnifies and holds harmless and agrees to defend Assignor, the failed bank, and Assignor's agents and employees (the "Indemnified Parties") from and against any and all damages, liabilities, losses, costs, charges, liens, deficiencies and expenses of any nature (including, without limitation, reasonable attorneys' fees and all other actual litigation costs) suffered or incurred by or assessed against the Indemnified Parties from and after the date hereof as a result of (i) Assignee's failure to perform the assumed Obligations, or (ii) Assignee's failure to pay the assumed liabilities identified in Section 2 above, or (iii) Assignee's breach of any representation, warranty or covenant contained in this Assignment.

5. <u>Beneficiaries of this Assignment</u>. This Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective successors and assigns, and the Federal Deposit Insurance Corporation in its corporate capacity shall be a third-party beneficiary with respect hereto.

6. <u>Incorporation of terms of LSA</u>. This Assignment is made, executed and delivered pursuant to the LSA, and is subject to all of the terms, provisions and conditions thereof.

7. <u>Controlling Law</u>. Federal law of the United States shall control this Agreement. To the extent that federal law does not supply a rule of decision, this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York. Nothing in this Agreement will require any unlawful action or inaction by either party.

8. <u>Counterparts</u>. This Assignment may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

IN WITNESS WHEREOF, each of the parties has caused this Assignment and Assumption of Interests and Obligations to be executed and delivered by its duly authorized officer or agent as of the day and year first written above.

Federal Deposit Insurance Corporation      D-4      Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 46 of 91

USB_0139

**ASSIGNOR:**

FEDERAL DEPOSIT INSURANCE
CORPORATION [insert capacity(ies)]

By: _____        By: _____
Name: _____        Name: _____
    Witness                        Title:   Attorney-in-Fact


**ASSIGNEE:**

_____

By: _____        By: _____
Name: _____        Name: _____
    Witness                        Title: _____


## ACKNOWLEDGMENT

STATE OF TEXAS         )
                            )
COUNTY OF DALLAS    )

     Before me, the undersigned authority, a Notary Public in and for the county and state aforesaid, on this day personally appeared _____ , known to me to be the person whose name is subscribed to the foregoing instrument, as Attorney-in-Fact of the Federal Deposit Insurance Corporation as [insert applicable capacity(ies)] and acknowledged to me that s/he executed the same as the act of the Federal Deposit Insurance Corporation, for the purposes and consideration therein expressed, and in the capacity(ies) therein stated.

     Given under my hand and seal of office on this the __day of _____ , 20__.


_____
Notary Public
[SEAL]                                My Commission expires: _____

Federal Deposit Insurance Corporation      D-5                     Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 47 of 91

USB_0140

# ACKNOWLEDGMENT

STATE OF _____ )
                               )
COUNTY OF _____ )

       Before me, the undersigned authority, a Notary Public in and for the county and state aforesaid, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, as _____ of _____, and acknowledged to me that s/he executed the same as the act of the _____ _____, for the purposes and consideration therein expressed, and in the capacity therein stated.

       Given under my hand and seal of office on this the __day of _____, 20__.


                       _____
                       Notary Public

[SEAL]                   My Commission expires: _____


*(Note to FDIC Preparer: Attach Exhibit A which should be the same as Attachment A to the Loan Sale Agreement.*

*)*

USB_0141

*(Note to FDIC Preparer: When preparing the actual Affidavit delete this instruction and the reference to Attachment E above.)*

STATE OF _____ )
                        )
COUNTY OF _____ )

## ASSIGNMENT AND LOST INSTRUMENT AFFIDAVIT
### (Loan Pool Number[s]: _____)

      Before me, the undersigned authority, personally appeared _____, who upon being duly cautioned and sworn deposes and says, to the best of his /her knowledge, as follows:

      1.     That s/he is the Attorney-in-Fact for the Federal Deposit Insurance Corporation (the "FDIC") acting in its [ ] corporate capacity [ ] capacity as Receiver of _____ _____, whose address is 1910 Pacific, Dallas, Texas 75201 ("Seller").

      2.     That at the time of the preparation of transfer to _____("Buyer"), Seller was the owner of that certain loan, obligation or interest in a loan or obligation evidenced by a promissory note, evidencing an indebtedness or evidencing rights in an indebtedness (the "Instrument"), as follows:

                  Loan Number: _____

                  Name of Maker: _____

                  Original Principal Balance: _____

                  Date of Instrument: _____

      3.     That the original Instrument has been lost or misplaced. The Instrument was not where it was assumed to be, and a search to locate the Instrument was undertaken, without results. Prior to the transfer to Buyer the Instrument had not been assigned, transferred, pledged or hypothecated.

      4.     That if Seller subsequently locates the Instrument, Seller shall use reasonable efforts to provide written notice to Buyer and deliver and endorse the Instrument to Buyer in

Federal Deposit Insurance Corporation         E-1                      Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 49 of 91

USB_0142

accordance with written instructions received from Buyer (or such other party designated in writing by Buyer).

5.      That the purpose of this affidavit is to establish such facts. This affidavit shall not confer any rights or benefits, causes or claims, representations or warranties (including, without limitation, regarding ownership or title to the Instrument or the obligations evidenced thereby) upon Buyer, its successors or assigns. All such rights, benefits, causes or claims, representations and warranties (if any) shall be as set forth in the Loan Sale Agreement between Buyer and Seller dated as of _____.

6.      That pursuant to the terms and conditions of the aforementioned Loan Sale Agreement the Instrument (including, without limitation, any and all rights Seller may have to enforce payment and performance of the Instrument, including any rights under Section 3-309 of the Uniform Commercial Code) is hereby assigned effective as of the date hereof, without recourse, representation or warranty, to Buyer. A copy of the Instrument is attached to this affidavit, if available.

FEDERAL DEPOSIT INSURANCE
CORPORATION, ACTING IN THE
CAPACITY STATED ABOVE

By: _____
Name: _____
Title:  Attorney-in-Fact

Signed and sworn to before me this __day of _____, _____.

_____
Notary Public

[SEAL]                              My Commission expires: _____

Federal Deposit Insurance Corporation          E-2                              Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 50 of 91

USB_0143

# ACKNOWLEDGMENT

STATE OF _____ )
                        )
COUNTY OF _____ )

Before me, the undersigned authority, a Notary Public in and for the county and state aforesaid, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, as Attorney-in-Fact of the Federal Deposit Insurance Corporation acting in the capacity stated above, and acknowledged to me that s/he executed the same as the act of the Federal Deposit Insurance Corporation, for the purposes and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office on this the _____ day of _____, 20___.


_____
Notary Public

[SEAL]                                     My Commission expires: _____

Federal Deposit Insurance Corporation          E-3                     Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 51 of 91

USB_0144

# ATTACHMENT F
## to
## Loan Sale Agreement

### (For use with Loans in Bankruptcy)

*(Note to FDIC Preparer: When preparing the actual Affidavit and Assignment, delete this instruction and the reference to Attachment F above.)*

State of _____ )
                            )
County of _____ )

## AFFIDAVIT AND ASSIGNMENT OF CLAIM
### (Loan Pool Number[s]:_____)

The undersigned, being first duly sworn, deposes and states as follows:

The Federal Deposit Insurance Corporation, acting [ ] in its corporate capacity [ ] in its capacity as Receiver of [Name of Institution] ("Assignor"), acting by and through its duly authorized officers and agents, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged does hereby sell, transfer, assign and set over to _____ ("Assignee") of *[insert Buyer's address]*_____ _____, _____ his/her/its successors and assigns, all of the Assignor's interest in any claim in the bankruptcy case commenced by or against *[insert Obligor's name]*_____("Obligor") in the *[insert (1) appropriate U. S. Bankruptcy Court, including the district of the court, such as for the Western District of Texas, or (2) the Foreign Jurisdiction Bankruptcy Court]*_____being designated as Case Number *[insert docket number assigned case]* ("Bankruptcy Claim"), or such part of said Claim as is based on the promissory note of *[insert the names of the makers of the note exactly as they appear on the note]*, dated *[insert the date the note was made]*, and made payable to *[insert the name of the payee on the note exactly as it appears on the note]*, provided, however, that this assignment is made pursuant to the terms and conditions as set forth in that certain Loan Sale Agreement between the Assignor and the Assignee dated *[insert the date of the governing Loan Sale Agreement]* (the "Agreement").

For purposes of Bankruptcy Rule 3001, this assignment and affidavit represent the unconditional transfer of the Bankruptcy Claim or such part of the Claim as is based on the promissory note or notes described in section one above and shall constitute the statement of the transferor acknowledging the transfer and stating the consideration therefore as required by said Rule 3001.

Federal Deposit Insurance Corporation                 F-1                              Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

USB_0145

This transfer was not for the purpose of the enhancement of any claim in a pending bankruptcy. The transfer of the debt was pursuant to the Agreement, through which numerous debts were sold; no specific amount of the total consideration was assigned to the debt that forms the basis of claim.

This assignment shall also evidence the unconditional transfer of the Assignor's interest in any security held for the claim.

IN WITNESS WHEREOF, the Assignor has caused this Affidavit and Assignment of Claim to be executed this _____ day of _____, _____.


FEDERAL DEPOSIT INSURANCE
CORPORATION, ACTING IN THE
CAPACITY STATED ABOVE


By: _____
Name: _____
Title:     Attorney-in-Fact




Signed and sworn to before me this _____ day of _____, 20 ___.




Notary Public

[SEAL]                                          My Commission expires:

USB_0146

# ACKNOWLEDGMENT

STATE OF _____ )
                                                    )
COUNTY OF _____ )

Before me, the undersigned authority, a Notary Public in and for the county and state aforesaid, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, as Attorney-in-Fact of the Federal Deposit Insurance Corporation acting in the capacity stated above, and acknowledged to me that s/he executed the same as the act of the Federal Deposit Insurance Corporation, for the purposes and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office on this the ___ day of _____, _____.

_____
Notary Public

[SEAL]                                    My Commission expires: ____

Federal Deposit Insurance Corporation                    F-3                    Downey
Loan Sale Agreement/SF Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 54 of 91

USB_0147

*(Note to FDIC Preparer: When preparing the actual Limited Power of Attorney, delete this instruction and the reference to Attachment G above.)*

## LIMITED POWER OF ATTORNEY

### (Loan Pool No.[s] _____ )

KNOW ALL PERSONS BY THESE PRESENTS, that the FEDERAL DEPOSIT INSURANCE CORPORATION, a corporation organized and existing under an Act of Congress, hereafter called the "FDIC", hereby designates the individual(s) set out below (the "Attorney(s)-in-Fact") for the sole purpose of executing the documents outlined below:

_____

_____

WHEREAS, the undersigned has full authority to execute this instrument on behalf of the FDIC under applicable Resolutions of the FDIC's Board of Directors and redelegations thereof.

NOW THEREFORE, the FDIC grants to the above-named Attorney(s)-in-Fact the authority, subject to the limitations herein, as follows:

1.     To execute, acknowledge, seal and deliver on behalf of the FDIC as Receiver of _____ all instruments of transfer and conveyance, appropriately completed, with all ordinary or necessary endorsements, acknowledgments, affidavits and supporting documents as may be necessary or appropriate to evidence the sale and transfer of any asset contained in the Loan Pools enumerated above.

The form which the Attorney(s)-in-Fact shall use for endorsing promissory notes or preparing alloges to promissory notes is as follows:

Pay to the order of

_____

Without Recourse

FEDERAL DEPOSIT INSURANCE
CORPORATION [insert applicable capacity(s)]

By: _____
Name: _____

USB_0148

Title: Attorney-in-Fact

All other documents of assignment, conveyance or transfer shall contain this sentence: "This assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver."

2.　FDIC further grants to each Attorney-in-Fact full power and authority to do and perform all acts necessary to carry into effect the powers granted by this Limited Power of Attorney as fully as FDIC might or could do with the same validity as if all and every such act had been herein particularly stated, expressed and especially provided for.

This Limited Power of Attorney shall be effective from _____ and shall continue in full force and effect through _____, unless otherwise terminated by an official of the FDIC authorized to do so by the Board of Directors ("Revocation"). At such time this Limited Power of Attorney will be automatically revoked. Any third party may rely upon this document as the named individual(s)' authority to continue to exercise the powers herein granted unless a Revocation has been recorded in the public records of the jurisdiction where this Limited Power of Attorney has been recorded, or unless a third party has received actual notice of a Revocation.

IN WITNESS WHEREOF, the FDIC by its duly authorized officer empowered by appropriate resolution of its Board of Directors, has caused these presents to be executed and subscribed in its name this ___ day of _____, 20__.

### FEDERAL DEPOSIT INSURANCE CORPORATION

By:_____

Name:_____

Title: _____

(CORPORATE SEAL)　　ATTEST:_____

Name: _____

Title: _____

Signed, sealed and delivered
in the presence of

By:_____

Name:_____

　　　Witness

By:_____

USB_0149

Name:_____
     Witness


## ACKNOWLEDGMENT

**STATE OF TEXAS**     §
                        §
**COUNTY OF DALLAS**   §

    On this _____ day of _____, 20__, before me, a Notary Public in and for the State of Texas appeared _____, to me personally known, who, being by me first duly sworn did depose that s/he is _____of the Dallas Field Operations Branch of the Federal Deposit Insurance Corporation (the "Corporation"), in whose name the foregoing Limited Power of Attorney was executed and subscribed, and the said Limited Power of Attorney was executed and subscribed on behalf of the said Corporation by due authority of the Corporation's Board of Directors, and the said _____ acknowledged the said Limited Power of Attorney to be the free act and deed of said Corporation.


                                _____
                                Notary Public
                                My Commission Expires:_____

Federal Deposit Insurance Corporation      G-3                       Downey
Loan Sale Agreement/Loss Sharing
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 57 of 91

USB_0150

# ACKNOWLEDGMENT

| UNITED STATES OF AMERICA | § |
| | § |
| DISTRICT OF COLUMBIA | § |

On this __ day of _____, 20__, before me, a Notary Public in and for the District of Columbia, personally appeared _____, to me known personally, who being by me first duly sworn did depose that s/he is _____ of the Federal Deposit Insurance Corporation, the Corporation in whose name the foregoing Limited Power of Attorney has been subscribed, who further said that the seal affixed to the said Limited Power of Attorney is the corporate seal of the said Federal Deposit Insurance Corporation and its seal thereto affixed by due authority of the Corporation's Board of Directors, and the said _____ acknowledged the said Limited Power of Attorney to be the free act and deed of the said Corporation.

_____
Notary Public, District of Columbia
United States of America
My Commission expires:_____

# EXHIBIT H
## SHARED-LOSS AGREEMENT

This Shared-Loss Agreement ("Agreement") is made and entered into as of
_____, 2008, by and between the Federal Deposit Insurance Corporation as
Receiver for Downey Savings and Loan Association, FA ("Receiver"), and
_____("Purchaser"). The terms hereof shall modify and
supplement, as necessary, the terms of the Loan Sale Agreement between the Receiver
and Purchaser of even date herewith (the "LSA"), to which this Agreement is attached as
an Exhibit. To the extent any inconsistencies may arise between the terms of the LSA and
this Agreement with respect to the subject matter of this Agreement, the terms of this
Agreement shall control. References in this Agreement to a particular Section shall be
deemed to refer to a Section in this Agreement, unless the context indicates that it is
intended to be a reference to a Section of the LSA.

## ARTICLE I -- DEFINITIONS

The capitalized terms set forth below, as used in this Agreement, shall have the
following meanings. Capitalized terms that are not otherwise defined herein are used as
defined in the LSA.

**"Accounting Records"** means the subsidiary system of record on which
the loan history and balance of each Shared-Loss Loan is maintained; individual loan
files containing either an original or copies of documents that are customary and
reasonable with respect to loan servicing, including management and disposition of ORE;
the records documenting alternatives considered with respect to loans in default or for
which a default is reasonably foreseeable; records of loss calculations and supporting
documentation with respect to line items on the loss calculations; monthly delinquency
reports and other performance reports customarily utilized by the Purchaser in
management of loan portfolios.

**"Accrued Interest"** means, with respect to Shared-Loss Loans, the
amount of earned and unpaid interest at the note rate specified in the applicable loan
documents, limited to 90 days.

**"Commencement Date "** means the first calendar day following the Bank
Closing Date.

**"Cumulative Loss Amount"** means the sum of the Monthly Loss
Amounts less the sum of all Recovery Amounts.

**"Cumulative Shared-Loss Amount"** means the excess, if any, of the
Cumulative Loss Amount over the First Loss Amount.

Federal Deposit Insurance Corporation   H-1       Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 59 of 91

USB_0152

"**Customary Servicing Procedures** " means procedures (including collection procedures) that the Purchaser customarily employs and exercises in servicing and administering mortgage loans for its own accounts and the servicing procedures established by FNMA or FHLMC, which are in accordance with accepted mortgage servicing practices of prudent lending institutions.

"**Final Shared-Loss Month**" means the calendar month in which the tenth anniversary of the Commencement Date occurs.

"**Final Shared-Loss Recovery Month**" means the calendar month in which the tenth anniversary of the Commencement Date occurs.

"**First Loss Amount**" means $1,522,410.00.

"**Foreclosure Loss**" means the Loss realized when the Purchaser has completed the foreclosure on a Shared-Loss Loan and realized final recovery on the collateral through liquidation and recovery of all insurance proceeds. Each Foreclosure Loss shall be calculated in accordance with the form and methodology specified in Exhibit 2a.

"**Loss**" means a Foreclosure Loss, Restructuring Loss, Short Sale Loss, and Portfolio Loss.

"**Monthly Certificate**" has the meaning provided in Section 2.1(b) of this Agreement.

"**Monthly Loss Amount**" means the sum of all Foreclosure Losses, Restructuring Losses and Short Sale losses realized by the Purchaser for any Shared Loss Month.

"**Monthly Shared-Loss Amount**" means the change in the Cumulative Shared-Loss Amount from the beginning of each month to the end of each month.

"**Portfolio Loss**" means the Loss realized on the portfolio sale of the remaining Shared-Loss Loans in accordance with the terms of Article IV.

"**Purchaser's Loss Mitigation Strategies**" means the Purchaser's policies, practices and procedures with respect to minimizing the potential credit loss that may result from a borrower's inability to pay the mortgage payments due on a Shared-Loss Loan, taking into consideration interagency guidance on loss mitigation strategies.

Federal Deposit Insurance Corporation      H-2      Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 60 of 91

USB_0153

**"Recovery Amount"** means, with respect to any period prior to the Termination Date, the amount of collected funds received by the Purchaser that (i) are applicable against a Foreclosure Loss which has previously been paid to the Purchaser by the Receiver or (ii) gains realized from a Section 4.1 sale of Shared-Loss Loans for which the Purchaser has previously received a Restructuring Loss payment from the Receiver.

**"Restructuring Loss"** means the Loss on a modified or restructured loan measured by the difference between (a) the principal, Accrued Interest, tax and insurance advances and third party fees due on a loan prior to the modification or restructuring, and (b) the net present value of estimated cash flows on the modified or restructured loan, discounted at the Then-Current Interest Rate. Each Restructuring Loss shall be calculated in accordance with the form and methodology attached as Exhibit 2b and Exhibit 5.

**"Restructured Loan"** means a Shared-Loss Loan for which the Purchaser has received a Restructuring Loss payment from the Receiver.

**"Servicing Officer"** has the meaning provided in Section 2.1(b) of this Agreement.

**"Shared-Loss Loans"** means the Loans in Loan Pools identified on the Schedule of Loans set forth in Attachment __ to the LSA.

**"Shared-Loss Month"** means each calendar month between the Commencement Date and the last day of the month in which the tenth anniversary of the Commencement Date occurs, provided that, the first Shared-Loss Month shall begin on the Commencement Date and end on the last day of that month.

**"Short-Sale Loss "** means the Loss resulting from the Purchaser's agreement with the mortgagor to accept a payoff in an amount less than the balance due on the loan, further provided, that each Short-Sale Loss shall be calculated in accordance with the form and methodology specified in Exhibit 2c.

**"Stated Threshold"** means total Shared-Loss payments by the Receiver to the Purchaser in the amount of $2,000,000,000.

**"Termination Date"** means the last day of the Final Shared-Loss Recovery Month.

**"Then-Current Interest Rate"** means the most recently published Freddie Mac survey rate for 30-year fixed-rate loans.

# ARTICLE II -- SHARED-LOSS ARRANGEMENT

## 2.1    Shared-Loss Arrangement.

(a)    **Loss Mitigation and Consideration of Alternatives.**  For each Shared-Loss Loan in default or for which a default is reasonably foreseeable, the Purchaser shall undertake reasonable and customary loss mitigation efforts.  The Purchaser shall document its consideration of foreclosure, loan restructuring, and short-sale (if short-sale is a viable option) alternatives and shall select the alternative resulting in the least Loss.  Purchaser shall retain its calculations of the estimated loss under each alternative, such calculations to be provided to the Receiver upon request.

(b)    **Monthly Certificates.**

Not later than fifteen (15) days after the end of each Shared-Loss Month, beginning with the month in which the Commencement Date occurs and ending in the month in which the tenth anniversary of the Commencement Date occurs, the Purchaser shall deliver to the Receiver a certificate, signed by an officer of the Purchaser involved in, or responsible for, the administration and servicing of the Shared-Loss Loans whose name appears on a list of servicing officers furnished by the Purchaser to the Receiver, (a "Servicing Officer") setting forth in such form and detail as the Receiver may reasonably specify (a "Monthly Certificate"):

(A)    a schedule substantially in the form of Exhibit 1 listing:

(i) each Shared-Loss Loan for which a Loss Amount is being claimed, the related Loss amount for each Shared-Loss Loan, and the total Monthly Loss Amount for all Shared-Loss Loans;

(ii) each Shared-Loss Loan for which a Recovery Amount was received, the Recovery Amount for each Shared-Loss Loan, and the total Recovery Amount for all Shared-Loss Loans;

(iii) the total Monthly Loss Amount for all Shared-Loss Loans minus the total monthly Recovery Amount for all Shared-Loss Loans;

(iv) the Cumulative Shared-Loss Amount as of the beginning and end of the month;

(v) the Monthly Shared Loss Amount;

Federal Deposit Insurance Corporation          H-4                                    Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 62 of 91

USB_0155

(vi) the result obtained in (v) times 80%, which is the amount to be paid under Section 2.1(d) of this Agreement by the Receiver to the Purchaser if the amount is a positive number, or by the Purchaser to the Receiver if the amount is a negative number , or the result in (v) times 95%, if the Stated Threshold has been met.

(B)     for each of the Shared-Loss Loans for which a Loss is claimed for that Shared-Loss Month, a schedule showing the calculation of the Loss Amount using the form and methodology shown in Exhibit 2a, Exhibit 2b, or Exhibit 2c, as applicable.

(C)     For each of the Restructured Loans where a gain or loss is realized in a sale under Section 4.1 or 4.2, a schedule showing the calculation using the form and methodology shown in Exhibit 2d.

(D)     a portfolio performance and summary schedule substantially in the form shown in Exhibit 3.

Federal Deposit Insurance Corporation       H-5                  Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 63 of 91

USB_0156

(c) **Monthly Data Download.**  Not later than fifteen (15) days after the end of each month, beginning with the month in which the Commencement Date occurs and ending with the Final Shared-Loss Recovery Month, Purchaser shall provide Receiver:

(i)  the servicing file in machine-readable format including but not limited to the following fields for each outstanding Shared-Loss Loan, as applicable:

(A) Loan number
(B) FICO score
(C) Origination date
(D) Original principal amount
(E) Maturity date
(F) Paid-to date
(G) Last payment date
(H) Loan status (bankruptcy, in foreclosure, etc.)
(I) Delinquency counters
(J) Current principal balance
(K) Current escrow account balance
(L) Current Appraisal/BPO value
(M) Current Appraisal/BPO date
(N) Interest rate
(O) Monthly principal and interest payment amount
(P) Monthly escrow payment for taxes and insurance
(Q) Interest rate type (fixed or adjustable)
(R) If adjustable: index, margin, next interest rate reset date
(S) Payment/Interest rate cap and/or floor
(T) Underwriting type (Full doc, Alt Doc, No Doc)
(U) Lien type (1st, $2^{nd.}$)
(V) Amortization type (amortizing or I/O)
(W) Property address, including city, state, zip code
(X) A code indicating whether the Mortgaged Property is owner-occupied
(Y) Property type (single-family detached, condominium, duplex, etc.)

(ii)  An Excel file for ORE held as a result of foreclosure on a Shared-Loss Loan listing:

(A) Foreclosure date
(B) Unpaid loan principal balance
(C) Appraised value or BPO value, as applicable
(D) Projected liquidation date

Federal Deposit Insurance Corporation          H-6                    Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 64 of 91

USB_0157

(d)     **Payments With Respect to Shared-Loss Assets.**

(i) **Losses Under the Stated Threshold**.  Not later than fifteen (15) days after the date on which the Receiver receives the Monthly Certificate, the Receiver shall pay to the Purchaser, in immediately available funds, an amount equal to eighty percent (80%) of the Monthly Shared-Loss Amount reported on the Monthly Certificate.  If the total Monthly Shared-Loss Amount reported on the Monthly Certificate is a negative number, the Purchaser shall pay to the Receiver in immediately available funds eighty percent (80%) of that amount.

(ii) **Losses in Excess of the Stated Threshold.**  In the event that that the Stated Threshold has been met the loss/recovery sharing percentages shall change from 80/20 to 95/5 and thereafter the Receiver shall pay to the Purchaser, in immediately available funds, an amount equal to ninety-five percent (95%) of the Monthly Shared-Loss Amount reported on the Monthly Certificate. If the Monthly Shared-Loss Amount reported on the Monthly Certificate is a negative number, the Purchaser shall pay to the Receiver in immediately available funds ninety-five percent (95%) of that amount..

(e)     **Limitations on Shared-Loss Payment.**  The Receiver shall not be required to make any payments pursuant to Section 2.1 (d) with respect to any Foreclosure Loss, Restructuring Loss, Short Sale Loss or Portfolio Loss that the Receiver determines, based upon the criteria set forth in this Agreement (including the analysis and documentation requirements of Section 2.1(a)) or Customary Servicing Procedures, should not have been effected by the Purchaser. In the event that the Receiver does not make any payment with respect to Losses claimed pursuant to Section 2.1(d), the Receiver and Purchaser shall make the necessary adjustments to the Monthly Shared-Loss Amount for that Monthly Certificate and the payment pursuant to Section 2.1(d) above shall be adjusted accordingly.

(f)     **Payments by Wire-Transfer.**  All payments under this Agreement shall be made by wire-transfer in accordance with the wire-transfer instructions on Exhibit 4.

**2.2     Auditor Report; Right to Audit**

(a)     Within ninety (90) days after the end of each calendar year during which the Receiver makes any payment to the Purchaser under this Agreement, the Purchaser shall deliver to the Receiver a report signed by its independent public accountants stating that they have reviewed the terms of this Agreement and that, in the course of their annual audit of the Purchaser's books and records, nothing has come to

Federal Deposit Insurance Corporation          H-7                         Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

USB_0158

their attention suggesting that any computations required to be made by the Purchaser during such calendar year pursuant to this Article II were not made by the Purchaser in accordance herewith. In the event that the Purchaser cannot comply with the preceding sentence, it shall promptly submit to the Receiver corrected computations together with a report signed by its independent public accountants stating that, after giving effect to such corrected computations, nothing has come to their attention suggesting that any computations required to be made by the Purchaser during such year pursuant to this Article II were not made by the Purchaser in accordance herewith. In such event, the Purchaser and the Receiver shall make all such accounting adjustments and payments as may be necessary to give effect to each correction reflected in such corrected computations, retroactive to the date on which the corresponding incorrect computation was made.

(b)     The Receiver or the FDIC in its corporate capacity ("Corporation") may perform an audit or audits to determine the Purchaser's compliance with the provisions of this Agreement, including this Article II, by providing not less than ten (10) Business Days' prior written notice. Purchaser shall provide access to pertinent records and proximate working space in Purchaser's facilities. The scope and duration of any such audit shall be within the sole discretion of the Receiver or the Corporation. The Receiver or the Corporation, as the case may be, shall bear the expense of any such audit. In the event that any corrections are necessary as a result of such an audit or audits, the Purchaser and the Receiver shall make such accounting adjustments and payments as may be necessary to give retroactive effect to such corrections.

2.3     **Withholdings.** Notwithstanding any other provision in this Article II, the Receiver, upon the direction of the Director (or designee) of the Federal Deposit Insurance Corporation's Division of Resolutions and Receiverships, may withhold payment for any amounts included in a Monthly Certificate delivered pursuant to Section 2.1, if there is a reasonable basis for denying the eligibility of an item for which reimbursement or payment is sought under such Section. In such event, the Receiver shall provide a written notice to the Purchaser detailing the grounds for withholding such payment. At such time as the Purchaser demonstrates to the satisfaction of the Receiver, in its reasonable judgment, that the grounds for such withholding of payment, or portion of payment, no longer exist or have been cured, then the Receiver shall pay the Purchaser the amount withheld which the Receiver determines is eligible for payment, within fifteen (15) Business Days.

2.4     **Books and Records**. The Purchaser shall at all times keep books and records sufficient to ensure and document compliance with the terms of this Agreement, including but not limited to (a) documentation of alternatives considered with respect to defaulted loans or loans for which default is reasonably foreseeable, (b) documentation showing the calculation of loss for claims submitted to the Receiver, (c) retention of documents that support each line item on the loss claim forms, and (d)  documentation

USB_0159

with respect to the Recovery Amount on loans for which the Receiver has made a loss-share payment

**2.5** **Information**. The Purchaser shall promptly provide to the Receiver such other information, including but not limited to, financial statements, computations, and bank policies and procedures, relating to the performance of the provisions of this Agreement, as the Receiver may reasonably request from time to time.

**2.6** **Tax Ruling.** The Purchaser shall not at any time, without the Receiver's prior written consent, seek a private letter ruling or other determination from the Internal Revenue Service or otherwise seek to qualify for any special tax treatment or benefits associated with any payments made by the Receiver pursuant to this Agreement.

**2.7** **Sale of Shared-Loss Loans.** The Receiver shall be relieved of its obligations with respect to a Shared-Loss Loan upon payment of a Foreclosure Loss amount or a Short Sale Loss amount with respect to such Shared-Loss Loan or upon the sale of a Shared-Loss Loan by Purchaser to an unaffiliated person or entity. The Purchaser shall provide the Receiver with timely notice of any such sale. Notwithstanding the foregoing, a sale of the Shared-Loss Loan, for purposes of this Section 2.7, shall not be deemed to have occured as the result of (i) any change in the ownership or control of Purchaser, (ii) a merger by Purchaser with or into any other entity, or (iii) a sale by Purchaser of all or substantially all of its assets.

## ARTICLE III - RULES REGARDING THE ADMINISTRATION OF SHARED-LOSS LOANS

**3.1** **Agreement with Respect to Administration.** The Purchaser shall (and shall cause any of its Affiliates to which the Purchaser transfers any Shared-Loss Loans to) manage, administer, and collect the Shared-Loss Loans while owned by the Purchaser or any Affiliate thereof during the term of this Agreement in accordance with the rules set forth in this Article III. The Purchaser shall be responsible to the Receiver in the performance of its duties hereunder and shall provide to the Receiver such reports as the Receiver reasonably deems advisable, including but not limited to the reports required by Sections 2.1, 2.2 and 3.3 hereof, and shall permit the Receiver to monitor the Purchaser's performance of its duties hereunder.

**3.2** **Duties of the Purchaser.** (a) In performance of its duties under this Article III , the Purchaser shall:

(i) manage and, administer each Shared-Loss Loan in accordance with Purchaser's usual and prudent business and banking practices and Customary Servicing Procedures;

Federal Deposit Insurance Corporation
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Downey

USB_0160

(ii) exercise its best business judgment in managing, administering and collecting amounts owed on the Shared-Loss Loans;

(iii) use commercially reasonable efforts to maximize Recoveries with respect to Losses on Shared-Loss Loans without regard to the effect of maximizing collections on assets held by the Purchaser or any of its Affiliates that are not Shared-Loss Loans; and

(iv) retain sufficient staff to perform its duties hereunder; and

(v) comply with the terms of Exhibit 5 attached hereto, the FDIC Loan Modification Program, for any Shared-Loss Loans meeting the requirements set forth therein. The Purchaser may propose exceptions to Exhibit 5 for a group of Loans with similar characteristics, with the objectives of (1) minimizing the loss to the Purchaser and the FDIC and (2) maximizing the opportunity for qualified homeowners to remain in their homes with affordable mortgage payments.

(b) Any transaction with or between any Affiliate of the Purchaser with respect to any Shared-Loss Loan including, without limitation, the execution of any contract pursuant to which any Affiliate of the Purchaser will manage, administer or collect any of the Shared-Loss Loans shall be subject to the prior written approval of the Receiver.

**3.3** **Shared-Loss Asset Records and Reports**. The Purchaser shall establish and maintain such records as may be appropriate to account for the Shared-Loss Loans in such form and detail as the Receiver may reasonably require, and to enable the Purchaser to prepare and deliver to the Receiver such reports as the Receiver may from time to time request regarding the Shared-Loss Loans and the Monthly Certificates required by Section 2.1 of this Agreement.

**3.4** **Related Loans**.

(a) Purchaser shall use its best efforts to determine which loans are "Related Loans", as hereinafter defined. The Purchaser shall not manage, administer or collect any "Related Loan" in any manner that would have the effect of increasing the amount of any collections with respect to the Related Loan to the detriment of the Shared-Loss Loan to which such loan is related. A "Related Loan" means any loan or extension of credit held by the Purchaser at any time on or prior to the end of the final Shared-Loss Month that is made to an Obligor of a Shared-Loss Loan.

(b) The Purchaser shall prepare and deliver to the Receiver with the Monthly Certificates for the calendar months ending June 30 and December 31, a schedule of all Related Loans on the Accounting Records of the Purchaser as of the end of each such semi-annual period.

USB_0161

**3.5    Legal Action; Utilization of Special Receivership Powers**. The Purchaser shall notify the Receiver in writing (such notice to be given in accordance with Article V below and to include all relevant details) prior to utilizing in any legal action any special legal power or right which the Purchaser derives as a result of having acquired an asset from the Receiver, and the Purchaser shall not utilize any such power unless the Receiver shall have consented in writing to the proposed usage. The Receiver shall have the right to direct such proposed usage by the Purchaser and the Purchaser shall comply in all respects with such direction. Upon request of the Receiver, the Purchaser will advise the Receiver as to the status of any such legal action. The Purchaser shall immediately notify the Receiver of any judgment in litigation involving any of the aforesaid special powers or rights.

## ARTICLE IV – PORTFOLIO SALE

**4.1    Purchaser Portfolio Sale of Remaining Shared-Loss Loans.** The Purchaser shall have the right with the concurrence of the Receiver to liquidate for cash consideration, all Shared-Loss Loans held by the Purchaser at any time prior to the Termination Date ("Portfolio Sale"). If the Purchaser exercises its option under this Section 4.1, it must give thirty (30) days notice in writing to the Receiver setting forth the details and schedule for the Portfolio Sale which shall be conducted by means of sealed bid sales to third parties, not including any of the Purchaser's affiliates, contractors, or any affiliates of the Purchaser's contractors. Sales of Restructured Loans shall be sold in a separate pool from Shared-Loss Loans not restructured. The Receiver's review of the Purchaser's proposed Portfolio Sale will be considered in a timely fashion and approval will not be unreasonably withheld, delayed or conditioned.

**4.2    Purchaser Liquidation of Remaining Shared-Loss Loans.** In the event that the Purchaser does not conduct a Portfolio Sale pursuant to Section 4.1 the Receiver shall have the right, exercisable in its sole and absolute discretion, to require the Purchaser to liquidate for cash consideration, any Shared-Loss Loans held by the Purchasers at any time after the date that is six months prior to the Termination Date. If the Receiver exercises its option under this Section 4.2, it must give notice in writing to the Purchaser, setting forth the time period within which the Purchaser shall be required to liquidate the Shared-Loss Loans. The Purchaser will comply with the Receiver's notice and must liquidate the Shared-Loss Loans as soon as reasonably practicable by means of sealed bid sales to third parties, not including any of the Purchaser's affiliates, contractors, or any affiliates of the Purchaser's contractors. The selection of any financial advisor or other third party broker or sales agent retained for the liquidation of the remaining Shared-Loss Loans pursuant to this Section shall be subject to the prior approval of the Receiver, such approval not to be unreasonably withheld, delayed or conditioned.

**4.3    Calculation of Sale Gain or Loss.**  For Shared-Loss Loans that are not Restructured Loans gain or loss on the sales under Section 4.1 or section 4.2 will be calculated as the sale price received by the Purchaser less the unpaid principal balance of the remaining Shared-Loss Loans. For any Restructured Loan included in the sale gain or loss on sale will be calculated as (a) the sale price received by the Purchaser less (b) the net present value of estimated cash flows on the Restructured Loan that was used in the calculation of the related Restructuring Loss plus (c) Loan principal payments collected by the Purchaser from the date the Loan was restructured to the date of sale. (See Exhibit 2d for example calculation).

## ARTICLE V -- LOSS-SHARING NOTICES GIVEN TO RECEIVER AND PURCHASER

All notices, demands and other communications hereunder shall be in writing and shall be delivered by hand, or overnight courier, receipt requested, addressed to the parties as follows:

If to Receiver, to:

Federal Deposit Insurance Corporation
as Receiver for _____
Division of Resolutions and Receiverships
550 17th Street, N.W.
Washington, D.C. 20429
Attention: Ralph Malami, Manager, Capital Markets

with a copy to:

Federal Deposit Insurance Corporation
as Receiver for _____
Room E7056
3501 Fairfax Drive, Arlington, VA 2226
Attn: Special Issues Unit

With respect to a notice under Section 3.5 of this Agreement, copies of such notice shall be sent to:

Federal Deposit Insurance Corporation
Legal Division
1910 Pacific Avenue
Dallas, Texas 75201
Attention: Regional Counsel

If to Purchaser, to:

Federal Deposit Insurance Corporation          H-12          Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 70 of 91

USB_0163

with a copy to:

Such Persons and addresses may be changed from time to time by notice given pursuant to the provisions of this Article V. Any notice, demand or other communication delivered pursuant to the provisions of this Article IV shall be deemed to have been given on the date actually received.

## ARTICLE VI -- MISCELLANEOUS

**6.1** **Expenses.** Except as otherwise expressly provided herein, all costs and expenses incurred by a party hereto in connection with this Agreement shall be borne by such party whether or not the transactions contemplated herein shall be consummated.

**6.2** **Successors and Assigns; Specific Performance.** All terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto only; provided, however, that, Receiver may assign or otherwise transfer this Agreement (in whole or in part) to the Federal Deposit Insurance Corporation in its corporate capacity without the consent of Purchaser. Notwithstanding anything to the contrary contained in this Agreement, except as is expressly permitted in this Section 6.2, Purchaser may not assign or otherwise transfer this Agreement (in whole or in part) without the prior written consent of the Receiver, which consent may be granted or withheld by the Receiver in its sole discretion, and any attempted assignment or transfer in violation of this provision shall be void *ab initio*.

**6.3** **Governing Law.** This Agreement shall be construed in accordance with federal law, or, if there is no applicable federal law, the laws of the State of New York, without regard to any rule of conflict of law that would result in the application of the substantive law of any jurisdiction other than the State of New York.

**6.4** **WAIVER OF JURY TRIAL.** EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ALL RIGHT TO TRIAL BY JURY IN OR TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, ARISING OUT OF OR RELATING TO OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY.

Federal Deposit Insurance Corporation     H-13     Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 71 of 91

USB_0164

**6.5    Captions**.  All captions and headings contained in this Agreement are for convenience of reference only and do not form a part of, and shall not affect the meaning or interpretation of, this Agreement.

**6.6    Entire Agreement; Amendments.**  This Agreement, including the Exhibits and any other documents delivered pursuant hereto, embody the entire agreement of the parties with respect to the subject matter hereof, and supersede all prior representations, warranties, offers, acceptances, agreements and understandings, written or oral, relating to the subject matter herein.  This Agreement may be amended or modified or any provision thereof waived only by a written instrument signed by both parties or their respective duly authorized agents.

**6.7    Severability**.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid, illegal or unenforceable under applicable law, such provision shall be construed and enforced as if it had been more narrowly drawn so as not to be prohibited, invalid, illegal or unenforceable, and the validity, legality and enforceability of the remainder of such provision and the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

**6.8    No Third Party Beneficiary.**  This Agreement and the Exhibits hereto are for the sole and exclusive benefit of the parties hereto and their respective permitted successors and permitted assigns and there shall be no other third party beneficiaries, and nothing in this Agreement or the Exhibits shall be construed to grant to any other Person any right, remedy or Claim under or in respect of this Agreement or any provision hereof.

**6.9    Counterparts.**  This Agreement may be executed separately by Receiver and Purchaser in any number of counterparts, each of which when executed and delivered shall be an original, but such counterparts shall together constitute one and the same instrument.

**6.10    Consent.**  Except as otherwise provided herein, when the consent of a party is required herein, such consent shall not be unreasonably withheld or delayed.

**6.11    Rights Cumulative.**  Except as otherwise expressly provided herein, the rights of each of the parties under this Agreement are cumulative, may be exercised as often as any party considers appropriate and are in addition to each such party's rights under the Purchase and Sale Agreement and any of the Related Agreements or under law. Except as otherwise expressly provided herein, any failure to exercise or any delay in exercising any of such rights, or any partial or defective exercise of such rights, shall not operate as a waiver or variation of that or any other such right.

Federal Deposit Insurance Corporation          H-14          Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 72 of 91

USB_0165

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first above written.

FEDERAL DEPOSIT INSURANCE CORPORATION
as RECEIVER for _____

By:_____

Name: _____

Title: _____


_____


By:_____

Name:

_____

Title: _____

Federal Deposit Insurance Corporation          H-15                              Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 73 of 91

USB_0166

**Exhibit 1**

**Monthly Certificate**

**SEE FOLLOWING PAGE**



## PART 1 - CURRENT MONTH NET LOSS

**MONTH ENDED:** [input report month]

> Specify loss type as Foreclosure, Restructuring, or Short-Sale.

### Losses

| Loan No. | Loss Type | Loss Amount | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL | | XX | A | |

> Loss Amount is the amount of Loss incurred and reported on the loan in a previous month.

> Loss Month is the reporting month in which the Loss was reported.

### Recoveries

| Loan No. | Recovery Amount | Loss Amount | Loss Month |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL | XX | B | |
| | | | |
| Net Losses (Recoveries) | XX | C = A - B | |

> If Col. D minus Col. E is less than zero, enter zero.

## PART 2 - FIRST LOSS TEST

| | Col. D | Col. E | Col.D - Col. E |
|---|---|---|---|
| | Cumulative Loss Amount | First Loss Amount | Cumulative Shared-Loss Amount |

| | | | | | |
|---|---|---|---|---|---|
| Balance, beginning of month | | XX | XX | XX | F |
| Current month Net Losses (from Part 1) | | XX | | | |
| Balance, end of month | | XX | XX | XX | G |
| | | | | | |
| | | | | | |
| Shared Loss Amount | | | | XX | G - F |
| Times Loss Share percentage | | | | 80% | |
| | | | | | |
| Amount due from (to) FDIC as Receiver | | | | XX | |

Pursuant to Section 2.1 of the Shared-Loss Agreement, the undersigned hereby certifies the information on this Certificate is true, complete and correct.

| **OFFICER SIGNATURE** | |
|---|---|
| **OFFICER NAME:** | **TITLE** |

Federal Deposit Insurance Corporation      H-18      Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 76 of 91

USB_0169

## Exhibit 2a
## Calculation of Foreclosure Loss

| Shared-Loss Month: | [Input month] | | |
|---|---|---|---|
| **Loan no.:** | [Input loan no.) | | |
| | | | |
| | | | |
| Interest paid-to date | | | |
| Foreclosure date | | | |
| Liquidation date | | | |
| Note Interest rate | | | |
| | | | |
| ***Foreclosure Loss calculation*** | | | |
| Loan Principal balance after last paid installment | xx | | |
| | | | |
| Accrued interest, limited to 90 days | xx | (1) | |
| Attorney's fees | xx | (2) | |
| | | | |
| Foreclosure costs, including title search, filing fees, advertising, etc. | xx | | |
| Property protection costs, maint. and repairs | xx | | |
| Tax and insurance advances | xx | | |
| Other Advances | | (3) | |
| Appraisal/Broker's Price Opinion fees | xx | | |
| Inspections | xx | | |
| Other | xx | | |
| | | | |
| Gross balance recoverable by Purchaser | xx | xx | (A) |
| | | | |
| *Cash Recoveries:* | | | |
| Net liquidation proceeds (from HUD-1 settl stmt) | xx | | |
| Insurance proceeds | xx | | |
| T & I escrow account balance, if positive | xx | | |
| Other credits, if any (itemize) | xx | | |
| Total Cash Recovery | xx | xx | (B) |
| | | | |
| ***Loss Amount*** | | xx | (A) - (B) |
| Times 80% (Receiver Loss Share percentage) | x | 80% | |
| Amount due Purchaser for Receiver Loss Share Amount | | xx | |
| | | | |
| | | | |

Federal Deposit Insurance Corporation      H-19      Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 77 of 91

USB_0170

| | | | | | |
|---|---|---|---|---|---|
| (1) Accrued interest is limited to 90 days and is calculated (a) at the note interest rate that would have been in effect if the loan was performing, (b) on the principal balance after application of the last payment made by the borrower. | | | | | |
| (2) Reasonable and customary third-party attorney's fees and expenses incurred by Purchaser in connection with any enforcement procedures or otherwise with respect to such Mortgage Loan. | | | | | |
| (3) Purchaser's reasonable and customary out-of-pocket costs paid to either a third-party or an affiliate (if affiliate is pre-approved by the FDIC) for foreclosure, property protection and maintenance costs, repairs, assessments, taxes, insurance and similar items, to the extent not paid from funds in borrower escrow account. Allowable costs are limited to amounts per Freddie Mac or Fannie Mae guidelines, where applicable. | | | | | |
| | | | | | |
| DO NOT INCLUDE late fees, prepayment penalties, or any similar lender fees or charges by the Purchaser to the loan account, any allocation of Purchaser's servicing costs, or any allocations of Purchaser's G&A or other operating costs. | | | | | |

USB_0171

## 2b
## CALCULATION OF LOSS FOR RESTRUCTURED LOANS

### Concept and Definition - Restructuring Loss

For purposes of loss sharing, losses on restructured loans are calculated as the difference between

  (a) the principal, accrued interest and advances due on the loan prior to restructuring, and

  (b) the Net Present Value (NPV) of estimated cash flows on the restructured loan, discounted at

    the most recently published Freddie Mac survey rate on 30-year fixed-rate loans at the restructure date.

The NPV calculations must assume loan prepayment in full at the end of ten years (120 months).

### Form for Calculation - Restructuring Loss

| | |
|---|---|
| **Shared-Loss Month:** | [input month] |
| **Loan no.:** | [input loan no.) |

| *Loan before Restructuring* | |
|---|---|
| Original loan amount | |
| Current unpaid principal balance | |
| Remaining term | |
| Interest rate | |
| Interest Paid-To Date | |
| Monthly payment - P&I | |
| Monthly payment - T&I | |
| Total monthly payment | |
| Loan type (fixed-rate, ARM, I/O, Option ARM, etc.) | |

| *Terms of Modified/Restructured Loan* | |
|---|---|
| Closing date on modified/restructured loan | |
| New Principal balance | |
| Remaining term | |
| Interest rate | |
| Monthly payment - P&I | |
| Monthly payment - T&I | |
| Total monthly payment | |
| Loan type (Fixed-rate, ARM, I/O, Option ARM, negative amortization features, etc.) | |
| Lien type (1st, 2nd) | |
| If adjustable: | |
|   Initial interest rate | |
|   Term - initial interest rate | |

| | | | |
|---|---|---|---|
| Initial payment amount | | | |
| Term - initial payment amount | | | |
| Negative amortization? | [Yes/No] | | |
| Rate reset frequency after first adjustment | | | |
| Next reset date | | | |
| Index | | | |
| Margin | | | |
| Cap per adjustment | | | |
| Lifetime Cap | | | |
| Floor | | | |
| | | | |
| | | | |
| *Restructuring Loss Calculation* | | | |
| Loan Principal balance before restructuring | xx | | |
| Accrued interest, limited to 90 days | xx | (1) | |
| Tax and insurance advances | xx | | |
| 3rd party fees due | xx | | |
| Total loan balance due before restructuring | XX | → | XX (A) |
| | | | |
| Assumptions for NPV Calculation, Restructured Loan: | | | |
| Discount rate for projected cash flows | xx% | (2) | |
| Loan prepayment in full | 120 months | | |
| | | | |
| NPV of projected cash flows                    (3) | XX | → | XX (B) |
| | | | |
| *Loss Amount* | | | XX (A) - (B) |
| Times 80% (Receiver Loss Share percentage) | | | 80% |
| Amount due Purchaser for Receiver Loss Share Amount | | | XX |
| | | | |
| | | | |
| **Footnotes** | | | |
| | | | |
| (1)  Accrued interest is limited to 90 days and is calculated (a) at the note interest rate that would have | | | |
| been in effect if the loan was performing, (b) on the principal balance after application of the last | | | |
| payment made by the borrower. | | | |
| (2)  The discount rate to be used is the most recently published Freddie Mac Survey Rate on 30-year fixed-rate loans | | | |
| at the loan restructuring date. | | | |
| (3)  If the new loan is an adjustable-rate loan, interest rate resets and related cash flows should be projected | | | |
| based on the index rate in effect at the date of the loan restructuring.  If the restructured loan otherwise | | | |
| provides for specified changes in monthly P&I payments over the term of the loan, those changes should | | | |
| be reflected in projected cash flows.  Purchaser must retain supporting schedule of projected cash flows | | | |
| by month as required by Section 2.1 of the Shared-Loss Agreement and provide to the FDIC if requested | | | |

| for sample audit. | | | | |
|---|---|---|---|---|

Federal Deposit Insurance Corporation      H-23      Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

USB_0174

**CALCULATION OF LOSS FOR SHORT SALE LOANS**

| Shared-Loss Month: | [input month] | | | |
|---|---|---|---|---|
| **Loan no.:** | [input loan no.) | | | |
| | | | | |
| | | | | |
| Interest paid-to date | | | | |
| Short Payoff Date | | | | |
| Note Interest rate | | | | |
| | | | | |
| ***Short-Sale Loss calculation*** | | | | |
| Loan Principal balance | xx | | | |
| | | | | |
| Accrued interest, limited to 90 days | xx | (1) | | |
| Attorney's fees | xx | (2) | | |
| Tax and insurance advances | xx | | | |
| 3rd party fees due | xx | | | |
| Gross balance recoverable by Purchaser | XX | | XX | (A) |
| | | | | |
| Amount accepted in Short-Sale | XX | | XX | (B) |
| | | | | |
| ***Loss Amount*** | | | XX | (A) - (B) |
| Times 80% (Receiver Loss Share percentage) | | x | 80% | |
| Amount due Purchaser for Receiver Loss Share Amount | | | XX | |
| | | | | |
| | | | | |
| | | | | |
| (1) Accrued interest is limited to 90 days and is calculated (a) at the note interest rate that would have been in effect if the loan was performing, (b) on the principal balance after application of the last payment made by the borrower. | | | | |
| (2) Reasonable and customary third-party attorney's fees and expenses incurred by Purchaser in connection with any enforcement procedures or otherwise with respect to negotiation and acceptance of Short-Sale payoff. | | | | |
| | | | | |
| DO NOT INCLUDE late fees, prepayment penalties, or any similar lender fees or charges by the Purchaser to the loan account, any allocation of Purchaser's servicing costs, or any allocations of Purchaser's G&A or other operating costs. | | | | |

Federal Deposit Insurance Corporation    H-24                    Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 82 of 91

USB_0175

| Shared-Loss Month: | | [input month] | |
|---|---|---|---|
| **Loan no.:** | | [input loan no.) | |
| | | | |
| | | | |
| **NOTE** | | | |
| The calculation of recovery on a loan for which a Restructuring Loss has been paid will only | | | |
| apply if the loan is sold. | | | |
| | | | |
| **EXAMPLE CALCULATION** | | | |
| | | | |
| Restructuring Loss Information | | | |
| Loan principal balance before restructuring | | $ 200,000 | **A** |
| NPV, restructured loan | | 165,000 | **B** |
| Loss on restructured loan | | $ 35,000 | **A - B** |
| Times FDIC loss share % | | 80% | |
| **Loss share payment to purchaser** | | **$ 28,000** | **C** |
| | | | |
| *Calculation - Recovery amount due to Receiver* | | | |
| Loan sales price | | $ 190,000 | |
| NPV of restructured loan at mod date | | 165,000 | |
| Gain - step 1 | | 25,000 | **D** |
| PLUS | | | |
| Loan UPB after restructuring | (1) | 200,000 | |
| Loan UPB at liquidation date | | 192,000 | |
| Gain - step 2 (principal collections after restructuring) | | 8,000 | **E** |
| Recovery amount | | 33,000 | **D + E** |
| Times FDIC loss share % | | 80% | |
| **Recovery due to FDIC** | | **$ 26,400** | **F** |
| | | | |
| **Net loss share paid to purchaser** | | **$ 1,600** | |
| | | | |
| **Proof Calculation** | (2) | | |
| Loan principal balance | | $ 200,000 | **G** |
| | | | |
| Principal collections on loan | | 8,000 | |
| Sales price for loan | | 190,000 | |
| Total collections on loan | | 198,000 | **H** |
| Net loss on loan | | $ 2,000 | **G - H** |
| Times FDIC loss share % | | 80% | |
| **Loss share payment to purchaser** | | **$ 1,600** | |

USB_0176

|  |  |  |  |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
| (1)  This example assumes that the FDIC loan modification program as shown in Exhibit 5 is applied |  |  |  |
| and the loan restructuring does not result in a reduction in the loan principal balance due from the |  |  |  |
| borrower. |  |  |  |
|  |  |  |  |
| (2)  This proof calculation is provided to illustrate the concept and the Purchaser is not required to |  |  |  |
| provide this with its Recovery calculations. |  |  |  |

Federal Deposit Insurance Corporation      H-26      Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 84 of 91

USB_0177

**Exhibit 3**
**Portfolio Performance and Summary Schedule**

| SHARED-LOSS LOANS | | | | |
|---|---|---|---|---|
| **PORTFOLIO PERFORMANCE AND SUMMARY SCHEDULE** | | | | |
| **MONTH ENDED:** | **[input report month]** | | | |
| | | | | |
| | | | | |
| **POOL SUMMARY** | | | | |
| | # | $ | | |
| Loans at Sale Date | xx | xx | | |
| | | | | |
| Loans as of this month-end | xx | xx | | |
| | | | | |
| | | | | |
| **STATED THRESHOLD TRACKING** | # | $ | | |
| Stated Threshold amount | ■■■■ | | | A |
| | | | | |
| Cumulative loss payments, prior month | | | | |
| Loss payment for current month | | | | |
| Cumulative loss payment, this month | | | | B |
| | | | | |
| Remaining to Stated Threshold | ■■■■ | | | A - B |
| | | | | |
| | | | | Percent of Total |
| **PORTFOLIO PERFORMANCE STATUS** | # | $ | | # |
| Current | | | | |
| 30 - 59 days past due | | | | |
| 60 - 89 days past due | | | | |
| 90 - 119 days past due | | | | |
| 120 and over days past due | | | | |
| In foreclosure | | | | |
| ORE | | | | |
| Total | | | | |
| | | | | |
| Memo Item: | | | | |
| Loans in process of restructuring - total | | | | ■■■■ |
| Loans in bankruptcy | | | | |
| | | | | |
| Loans in process of restructuring by delinquency status | | | | |

Federal Deposit Insurance Corporation          H-27                          Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 85 of 91

USB_0178

| | | | |
|---|---|---|---|
| Current | | | |
| 30 - 59 days past due | | | |
| 60 - 89 days past due | | | |
| 90 - 119 days past due | | | |
| 120 and over days past due | | | |
| In foreclosure | | | |
| Total | | | |
| | | | |
| | | | |
| | | | |
| **List of Loans Paid Off During Month** | | | |
| | Principal | | |
| Loan # | Balance | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **List of Loans Sold During Month** | | | |
| | | | |
| | Principal | Sales | |
| Loan # | Balance | Price | |
| | | | |
| | | | |

Federal Deposit Insurance Corporation     H-28     Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 86 of 91

USB_0179

**Exhibit 4**
**Wire Transfer Instructions**

## PURCHASER WIRING INSTRUCTIONS

**BANK RECEIVING WIRE** _____

**9 DIGIT ABA ROUTING NUMBER** _____

**ACCOUNT**
**NUMBER** _____

**NAME OF**
**ACCOUNT** _____

**ATTENTION TO WHOM** _____

**PURPOSE OF**
**WIRE** _____


## FDIC RECEIVER WIRING INSTRUCTIONS _____

**BANK RECEIVING WIRE** _____

**SHORT NAME** _____

**ADDRESS OF BANK RECEIVING**
**WIRE** _____

**9 DIGIT ABA ROUTING NUMBER** _____

**ACCOUNT NUMBER** _____

**NAME OF ACCOUNT** _____

**ATTENTION TO WHOM** _____

**PURPOSE OF WIRE** _____

Federal Deposit Insurance Corporation     H-29     Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

USB_0180

## EXHIBIT 5

## FDIC MORTGAGE LOAN MODIFICATION PROGRAM

Objective

The objective of this FDIC Mortgage Loan Modification Program ("Program") is to modify the terms of certain residential mortgage loans so as to improve affordability, increase the probability of performance, allow borrowers to remain in their homes and increase the value of the loans to the FDIC and assignees. The Program provides for the modification of Qualifying Loans (as defined below) by reducing the borrower's monthly housing debt to income ratio ("DTI Ratio") to no more than 31% at the time of the modification and eliminating adjustable interest rate and negative amortization features.

Qualifying Mortgage Loans

In order for a mortgage loan to be a Qualifying Loan it must meet all of the following criteria, which must be confirmed by the lender:

- The collateral securing the mortgage loan is owner-occupied; and
- The mortgagor has a first priority lien on the collateral; and
- Either the borrower is at least 60 days delinquent or a default is reasonably foreseeable.

Modification Process

The lender shall undertake a review of its mortgage loan portfolio to identify Qualifying Loans. For each Qualifying Mortgage Loan, the lender shall determine the net present value of the modified loan and, if it will exceed the net present value of the foreclosed collateral upon disposition, then the Qualifying Loan shall be modified so as to reduce the borrower's monthly DTI Ratio to no more than 31% at the time of the modification. To achieve this, the lender shall use a combination of interest rate reduction, term extension and principal forbearance, as necessary.

The borrower's monthly DTI Ratio shall be a percentage calculated by dividing the borrower's monthly income by the borrower's monthly housing payment (including principal, interest, taxes and insurance). For these purposes, (1) the borrower's monthly

USB_0181

income shall be the amount of the borrower's (along with any co-borrowers') documented and verified gross monthly income, and (2) the borrower's monthly housing payment shall be the amount required to pay monthly principal and interest plus one-twelfth of the then current annual amount required to pay real property taxes and homeowner's insurance with respect to the collateral.

In order to calculate the monthly principal payment, the lender shall capitalize to the outstanding principal balance of the Qualifying Loan the amount of all delinquent interest, delinquent taxes, past due insurance premiums, third party fees and (without duplication) escrow advances (such amount, the "Capitalized Balance").

In order to achieve the goal of reducing the DTI Ratio to 31%, the lender shall take the following steps in the following order of priority with respect to each Qualifying Loan:

1. Reduce the interest rate to the then current Freddie Mac Survey Rate for 30-year fixed rate mortgage loans, and adjust the term to 30 years.

2. If the DTI Ratio is still in excess of 31%, reduce the interest rate further, but no lower than 3%, until the DTI ratio of 31% is achieved.

3. If the DTI Ratio is still in excess of 31% after adjusting the interest rate to 3%, extend the remaining term of the loan by 10 years.

4. If the DTI Ratio is still in excess of 31%, calculate a new monthly payment (the "Adjusted Payment Amount") that will result in the borrower's monthly DTI Ratio not exceeding 31%. After calculating the Adjusted Payment Amount, the lender shall bifurcate the Capitalized Balance into two portions – the amortizing portion and the non-amortizing portion. The amortizing portion of the Capitalized Balance shall be the mortgage amount that will fully amortize over a 40-year term at an annual interest rate of 3% and monthly payments equal to the Adjusted Payment Amount. The non-amortizing portion of the Capitalized Balance shall be the difference between the Capitalized Balance and the amortizing portion of the Capitalized Balance. The lender shall forbear on collecting the non-amortizing portion of the Capitalized Balance, and such amount shall be due and payable only upon the earlier of (i) maturity of the modified loan, (ii) a sale of the property or (iii) a pay-off or refinancing of the loan. No interest shall be charged on the non-amortizing portion of the Capitalized Balance, but repayment shall be secured by a first lien on the collateral.

At the end of the five (5) year period, the interest rate on the modified loan shall adjust to the Freddie Mac Survey Rate as of the date of the loan modification, but subject to an annual adjustment cap of one percent (1%) per year. At that time, the monthly amount due by the borrower will also adjust to amortize fully the remaining Capitalized Balance

(or, in any case in which the Capitalized Balance was bifurcated, the amortizing portion thereof) over the remaining term of the modified loan.

Additional Modification Terms

In connection with the modification of any Qualifying Loan, the following additional requirements shall apply.

1. The lender shall not charge (and no borrower shall be required to pay) any modification, refinance or other similar fees or points in connection with the modification, nor shall any such fees, costs or charges be capitalized.

2. Unpaid late fees and prepayment penalties otherwise chargeable to the borrower shall be waived.

3. Modified loans shall not include any prepayment penalties.

4. The lender shall establish an escrow account for the payment of future taxes and insurance premiums.

Related Junior Lien Mortgage Loans

In cases where the lender holds a junior lien mortgage loan that is collateralized by the same property that collateralizes a Qualifying Loan that is modified as described above, the junior lien mortgage loan shall also be modified to enhance overall affordability to the borrower. At a minimum, the lender shall reduce the interest rate on the junior lien mortgage loan to no more than 2% per annum. Further modifications may be made at the lender's discretion as needed to support affordability and performance of the modified first lien Qualifying Loan.

Federal Deposit Insurance Corporation          H-32                                    Downey
LSA Loss Share/Loss Amount/Threshold
Version 1.5 (FM)
11-17-08

Exhibit 3, Page 90 of 91

USB_0183

Single Family Asset Detail for 10023 - Downey Savings & Loan Association



Schedule 4.15A - Single Family -- (File: 10023 - FinalSchedAdj.xls)

USB_0952

Exhibit 4

## ASSIGNMENT AND ASSUMPTION OF INTERESTS AND OBLIGATIONS

THIS ASSIGNMENT AND ASSUMPTION OF INTERESTS AND OBLIGATIONS ("Assignment") is made and entered into as of the 20th day of April, 2009 by and between the Federal Deposit Insurance Corporation as Receiver for Downey Savings & Loan Association, F.A. ("Assignor") and U.S Bank National Association ("Assignee").

Whereas, Assignor and Assignee have entered into that certain Loan Sale Agreement dated November 21, 2008 (the "LSA"), pursuant to which Assignor has agreed to sell, assign, transfer and convey to Assignee all the assets identified on Exhibit A attached to this Agreement (the "Assets").

Whereas, pursuant to a Bill of Sale of even date herewith, Assignor has conveyed to Assignee that part of the Assets which consists of tangible personal property.

Whereas, part of the Assets may consist of documents and instruments evidencing loans (including without limitation, promissory notes, loan agreements, shared credit or participation agreements, inter-creditor agreements, letters of credit, reimbursement agreements, drafts, bankers' acceptances, transmission system confirmations of transaction and other evidences of indebtedness, including loan histories, affidavits, general collection information, correspondence and comments pertaining to such obligations), and equipment leases (the "Agreements to Pay").

Whereas, another part of the Assets may consist of documents securing Agreements to Pay, such as mortgages, deeds of trust, security agreements, loan agreements and other documents or instruments of similar nature relating to the Agreements to Pay (the "Collateral Documents").

Whereas, another part of the Assets may consist of real estate, Contracts for Deed to real estate, and leases, tenancies, concessions, licenses and other rights of occupancy or use related to real estate (including any security deposits relating thereto in Assignor's possession) (the "Real Estate Interests").

Whereas, another part of the Assets may be affected by contracts relating to the Assets, such as collection and service agreements (the "Miscellaneous Agreements"). The term "Miscellaneous Agreements" does not include loan servicing agreements between Assignor and independent contractors.

Whereas, under the LSA, Assignor has agreed to assign and convey to Assignee all of Assignor's right, title and interest to the Agreements to Pay, the Collateral Documents, the Real Estate Interests and the Miscellaneous Agreements related to the Assets.

Whereas, Assignee has agreed to accept and assume all of Assignor's duties, obligations and liabilities under the Agreements to Pay, Collateral Documents, Real Estate Interests and Miscellaneous Agreements related to the Assets (the "Obligations").

Whereas, the term "Advances" as used herein means the sum of all unreimbursed amounts advanced by or on behalf of the failed institution(s) which once owned the Assets (i) to

protect the noteholder's lien position or the collateral, including payment of ad valorem taxes and hazard and forced placed insurance as permitted by the terms of any loan, or (ii) to meet required scheduled payments. The term "Advances" does not include (A) incremental funding of loan proceeds under an Agreement to Pay, such as in the case of a revolving credit loan or a construction loan, or (B) the payment of appraisal fees, broker opinion fees, attorney fees and associated legal fees, foreclosure fees, trustee fees, property inspection fees, property preservation and operating cost fees, tax penalties, title policies, lien search fees, or any other cost that can be directly associated with the collection and servicing of a loan.

NOW THEREFORE, in consideration of the foregoing and the sum of ten dollars ($10.00), and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

1.     <u>Assignor's Assignment</u>. Assignor hereby transfers, grants, conveys and assigns to Assignee all of Assignor's right, title and interest in the Agreements to Pay, the Collateral Documents, the Real Estate Interests and the Miscellaneous Agreements.

2.     <u>Assignee's Acceptance</u>. Assignee does hereby accept such assignment from Assignor and assumes all Obligations arising from and after the date hereof. The Obligations assumed include, without limitation, any and all obligations to (i) make payments relating to Agreements to Pay serviced by Assignor; (ii) make Advances with respect to Agreements to Pay serviced by Assignor, (iii) reimburse third party servicers for Advances on Agreements to Pay, and (iv) make incremental disbursements of loan proceeds, such as in the case of a revolving credit loan or a construction loan.

3.     <u>Assignee's Covenants regarding Securities Law</u>. Assignee hereby represents and warrants to, and covenants with Assignor as follows:

    a.     Assignee understands that (a) neither the Assets, nor any interest therein or evidence thereof, has been registered or qualified under the Securities Act of 1933, as amended (the "Securities Act"), or the securities laws of any state or any other jurisdiction, and (b) the Assignor is not required, and does not intend, to so register or qualify the Assets.

    b.     Assignee is a substantial, sophisticated investor having such knowledge and experience in financial and business matters, and in particular in matters relating to the purchase, sale, origination or ownership of notes and loan participations such as the Assets, that it is capable of evaluating the merits and risks of investment in the Assets and understands and is able to bear the economic risks of such an investment (including a total loss of its investment and the risk that Assignee might be required to hold the Assets for an indefinite period of time).

    c.     Assignee is acquiring the Assets for investment, for its own account, and not for or on account of any other person or entity, and not with a view to or for sale in connection with a distribution within the meaning of Section 5 of the Securities Act.

2

USB_0087

d.      Assignee has been furnished with, and has had an opportunity to review and understands, all information relating to the Assets as has been requested and as is considered necessary by Assignee, and has had all questions arising from or relating to such review answered to the satisfaction of Assignee.

e.      Neither Assignee nor anyone acting on its behalf has (i) offered, transferred, pledged, sold or otherwise disposed of any of the Assets (or any interest therein or evidence thereof) or, (ii) solicited any offer to buy or accept a transfer, pledge or other disposition of any of the Assets (or any interest therein or evidence thereof) from, or (iii) otherwise approached or negotiated with respect to any of the Assets (or any other interest therein or evidence thereof) with any person or entity in any manner, or taken any other action that would constitute a distribution under, or render the disposition to Assignee or the disposition by Assignee to any other party of any of the Assets (or any interest therein or evidence thereof) a violation of the Securities Act or of any other securities law or require registration or qualification pursuant thereto, nor will it act, nor has it authorized or will it authorize any person or entity to so act, in any such manner with respect to the Assets (or any interest therein or evidence thereof).

f.      Either (i) Assignee is not an employee benefit plan within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or a plan within the meaning of Section 4975(e)(l) of the Internal Revenue Code, and Assignee is not, directly or indirectly, purchasing the Assets on behalf of, as investment manager of, as named fiduciary of, as trustee of or with assets of any such plan; or (ii) Assignee's purchase of the Assets (A) will not cause Assignor to be deemed a fiduciary of any such plan, or (B) either will not result in a prohibited transaction under Section 406 of ERISA or Section 4975 of the Internal Revenue Code or will be exempt from the prohibited transaction rules in Section 406 of ERISA and Section 4975 of the Internal Revenue Code.

4.      Assignee's Indemnification.      Assignee hereby indemnifies and holds harmless and agrees to defend Assignor, the failed bank, and Assignor's agents and employees (the "Indemnified Parties") from and against any and all damages, liabilities, losses, costs, charges, liens, deficiencies and expenses of any nature (including, without limitation, reasonable attorneys' fees and all other actual litigation costs) suffered or incurred by or assessed against the Indemnified Parties from and after the date hereof as a result of (i) Assignee's failure to perform the assumed Obligations, or (ii) Assignee's failure to pay the assumed liabilities identified in Section 2 above, or (iii) Assignee's breach of any representation, warranty or covenant contained in this Assignment.

5.      Beneficiaries of this Assignment.  This Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective successors and

3

USB_0088

assigns, and the Federal Deposit Insurance Corporation in its corporate capacity shall be a third-party beneficiary with respect hereto.

6. <u>Incorporation of terms of LSA</u>. This Assignment is made, executed and delivered pursuant to the LSA, and is subject to all of the terms, provisions and conditions thereof.

7. <u>Controlling Law.</u> Federal law of the United States shall control this Agreement. To the extent that federal law does not supply a rule of decision, this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York. Nothing in this Agreement will require any unlawful action or inaction by either party.

8. <u>Counterparts</u>. This Assignment may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

4

IN WITNESS WHEREOF, each of the parties has caused this Assignment and Assumption of Interests and Obligations to be executed and delivered by its duly authorized officer or agent as of the day and year first written above.

**ASSIGNOR:**

FEDERAL DEPOSIT INSURANCE
CORPORATION as RECEIVER for
DOWNEY SAVINGS & LOAN
ASSOCIATION, F.A.

By: _Jim Phillips_
Name: _JIM PHILLIPS_
      Witness

By: _____
Name: _Steven A Carr_
Title: Attorney-in-Fact

**ASSIGNEE:**

U.S. BANK NATIONAL ASSOCIATION

By: _____
Name: _____
      Witness

By: _____
Name: Terrance R. Dolan
Title: Executive Vice President &
      Controller

## ACKNOWLEDGMENT

STATE OF ___TEXAS___ )
                     )
COUNTY OF ___Dallas___ )

Before me, the undersigned authority, a Notary Public in and for the county and state aforesaid, on this day personally appeared ___STeven A Carr___, known to me to be the person whose name is subscribed to the foregoing instrument, as ___Receiver___ of ___Downey Savings and Loan Association FA,___ and acknowledged to me that s/he executed the same as the act of the ___Receiver___ ___, for the purposes and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office on this the 14th day of ___April___,
2009.

_Cassandra T. Knighton_
Notary Public
My Commission expires: _Jan. 11, 2010_

CASSANDRA TERESA KNIGHTON
MY COMMISSION EXPIRES
January 11, 2010

USB_0091

IN WITNESS WHEREOF, each of the parties has caused this Assignment and Assumption of Interests and Obligations to be executed and delivered by its duly authorized officer or agent as of the day and year first written above.

**ASSIGNOR:**

FEDERAL DEPOSIT INSURANCE
CORPORATION as RECEIVER for
DOWNEY SAVINGS & LOAN
ASSOCIATION, F.A.

By: _____
Name: _____
Witness

By: _____
Name: _____
Title: Attorney-in-Fact

**ASSIGNEE:**

U.S. BANK NATIONAL ASSOCIATION

By: _____
Name: _____Karen J. Canon_____
Witness

By: _____
Name: Terrance R. Dolan
Title: Executive Vice President &
Controller

# ACKNOWLEDGMENT

STATE OF _Minnesota_ )
)
COUNTY OF _Hennepin_ )

Before me, the undersigned authority, a Notary Public in and for the county and state aforesaid, on this day personally appeared _Terrance R. Dolan_ , known to me to be the person whose name is subscribed to the foregoing instrument, as _EVP/Controller_ of _US Bank National Association_ , and acknowledged to me that s/he executed the same as the act of the _US Bank_ _National Association_ , for the purposes and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office on this the _1_ day of _April_ , 20_09_.

_____
Notary Public
My Commission expires: _1/31/2010_

USB_0093

Exhibit 5

2

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0245207-00
Check Number
Thursday, OCT 04, 2012 11:24:00
MOD    $2.00:REC   $12.00:FTC    $1.00
DAF    $2.70:REF    $0.30:RED    $1.00
ERD    $1.00:
Ttl Pd   $20.00      Rcpt # 0001422693
                              rrc/RJ/1-2

Recording Requested By
ServiceLink

Recording Requested by &
When Recorded Mail To:
U.S. BANK NATIONAL ASSOCIATION
ATTN.: FAUSTINO BARRERA
3121 MICHELSON DRIVE, STE. 500
IRVINE, CA 92612
PHONE: 949-798-6710

U.S. BANK N.A. Loan #: ███6026
PARCEL ID: *435749*

TS# 70954          **ASSIGNMENT OF DEED OF TRUST**

For value received, the undersigned, FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF **DOWNEY SAVINGS AND LOAN ASSOCIATION, F. A.** BY U.S. BANK NATIONAL ASSOCIATION UNDER LIMITED POWER OF ATTORNEY DATED NOVEMBER 30, 2011 RECORDED NOVEMBER 8, 2011 IN DALLAS COUNTY, TEXAS IN DOCUMENT NUMBER 201100292843, (herein "Assignor"), whose address is 3501 Jamboree Road, Newport Beach, CA 92660, does hereby grant, sell, assign, transfer and convey unto **U.S. BANK NATIONAL ASSOCIATION** (herein "Assignee") whose address is 4801 FREDERICA STREET, OWENSBORO, KY 42301, all interest under that certain mortgage described as follows:

Real estate DEED OF TRUST dated: 03|30|2006
Executed by: CAROL MEIER, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY
To: DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.   Trustee: DSL SERVICE COMPANY
Recorded on: APR-06-2006____   In the office of the: COUNTY RECORDER
County and State where document recorded: CONTRA COSTA, CA
Book/Volume number: _____   Page/Image number: _____
Document number: _____   Certificate number: _____
Rerecording information: Date: _____   Book #: _____   Page #: _____
Document #: 2006-0106478-00 Certificate #: _____

Legal Description (If applicable): _____

**This assignment is made without recourse, representation or warranty, expressed or implied, by the FDIC in its corporate capacity or as Receiver.**

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above described Mortgage.

USB_0034

PAGE TWO

U.S. BANK N.A. Loan #: ▆▆▆6026

IN WITNESS WHEREOF, the undersigned has executed this Assignment of Mortgage on 5/23/2012, but effective NOVEMBER 21, 2008.

FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF **DOWNEY SAVINGS AND LOAN ASSOCIATION, F. A.** BY U.S. BANK NATIONAL ASSOCIATION UNDER LIMITED POWER OF ATTORNEY DATED NOVEMBER 30, 2011 RECORDED NOVEMBER 8, 2011 IN DALLAS COUNTY, TEXAS IN DOCUMENT NUMBER 201100292843

BY: 

NAME: DEBRA R. WIESE, VICE PRESIDENT of U.S. BANK NATIONAL ASSOCIATION

ITS: ATTORNEY-IN-FACT

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT**
STATE OF WISCONSIN)SS
COUNTY OF MILWAUKEE)

On 5/23/2012, before me, **Dorothy Mae Hawley**, Notary Public, personally appeared **Debra R. Wiese** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ⟨signature⟩
Notary Public, State of WISCONSIN
My commission expires: SEPTEMBER 16, 2012

*(Notary seal: NOTARY PUBLIC — DOROTHY MAE HAWLEY — STATE OF WISCONSIN)*

This area for official notarial seal.

PROPERTY ADDRESS: 61 RUDGEAR DR, WALNUT CREEK, CA 94596

END OF DOCUMENT

USB_0035

Exhibit 6

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

FCI LENDER SERVICES, INC.
8180 EAST KAISER BOULEVARD
ANAHEIM HILLS, CA 92808

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2010-0079113-00**
Check Number
**Wednesday, APR 21, 2010 15:30:00**
MOD      $2.00:REC    $12.00:FTC    $1.00
DAF      $2.70:REF    $0.30:RED     $1.00
ERD      $1.00:
|Ttl Pd     $20.00          Nbr-0000452868

Space above this line for recorder's use only

| Title Order No. **435749** | Trustee Sale No. **70954** | Loan No. ▮▮▮6026 |

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is  $15,259.18  as of  04/21/2010  and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in this paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

1



70954          TS-NOD          TS0017          090724

Exhibit 6, Page 1 of 2

**USB_0028**

Continued from page 1

Trustee Sale No. 70954

To find out the amount you must pay, in the form of Cash, in U.S. Dollars, Cashiers Check or Money Order and to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: U.S. BANK NATIONAL ASSOCIATION..CUSTOMER SERVICE DEPARTMENT (949) 798-6002 c/o FCI LENDER SERVICES, INC., 8180 EAST KAISER BOULEVARD, ANAHEIM HILLS, CA 92808-2277.

If you have any questions, you should contact a lawyer or contact any governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** DSL SERVICE COMPANY, is the duly appointed Trustee, or duly authorized agent for the Trustee, or duly designated Agent for the Beneficiary (or its assignee) under a Deed of Trust dated 03/30/2006, executed by CAROL MEIER, A Married Woman as her sole and separate property, as trustor, to secure obligations in favor of DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A., as Beneficiary

RECORDED ON APR 06, 2006 AS DOC #2006-0106478-00 of official records in the Office of the Recorder of Contra Costa County, California, as more fully described on the Deed of Trust, securing the note(s) for the sum of $600,000.00. The beneficial interest under the Deed of Trust and the obligations secured thereby is presently held by Beneficiary (or its assignee). A default in the obligations for which the Deed of Trust is security has occurred in that the payment has not been made of: THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE 12/01/2009 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH ALL LATE CHARGES, ADVANCES TO SENIOR LIENS, INTEREST, INSURANCE, TAXES AND ASSESSMENTS ADVANCED BY THE BENEFICIARY (OR ITS ASSIGNEES)

The undersigned mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.5(b) declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code 2923.5.

Due to the default, Beneficiary (or its assignee) has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with the Trustee, the Deed of Trust and all documents evidencing the obligations secured thereby, and has declared all sums secured thereby immediately due and payable and has elected to cause the trust property to be sold to satisfy the obligations secured thereby.


DATE: <u>04/21/2010</u>

For: DSL SERVICE COMPANY, as Trustee
By: FCI LENDER SERVICES, INC., By ServiceLink, as Agent for: FCI LENDER SERVICES, INC.


**FCI LENDER SERVICES, INC., IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

END OF DOCUMENT

Exhibit 7

RECORDING REQUESTED BY:

**ServiceLink - San Bernardino**

WHEN RECORDED MAIL TO:

**FCI LENDER SERVICES, INC.**
**8180 EAST KAISER BLVD.**
**ANAHEIM HILLS, CA 92808**



CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2010-0150356-00
Check Number
Tuesday, JUL 27, 2010 11:35:00
MOD    $2.00:REC    $12.00:FTC    $1.00
DAF    $2.70:REF    $0.30:RED    $1.00
ERD    $1.00:
Ttl Pd    $20.00        Nbr-0000538010

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

| | | |
|---|---|---|
| Title Order No.: 435749 | Trustee Sale No.: 70954 | Loan No.: ██████6026 |
| APN: 187-032-011 | | |

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED** 03/30/2006. **UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 08/23/2010 at 01:30PM, DSL SERVICE COMPANY
**as the duly appointed Trustee under and pursuant to Deed of Trust** RECORDED ON APR 06, 2006 AS DOC #2006-0106478-00 **of official records in the Office of the Recorder of** Contra Costa **County, California, executed by:**

CAROL MEIER, A Married Woman as her sole and separate property
, **as Trustor**

DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.
, **as Beneficiary**

**WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state). At:** THE COURT STREET ENTRANCE TO THE COUNTY COURTHOUSE, 725 COURT STREET (CORNER OF MAIN & COURT STREETS), MARTINEZ, CA,

**all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California describing the land therein:** AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.

1





70954    TS-NOS    TSC0021    090528

Exhibit 7, Page 1 of 2

**USB_0030**

### NOTICE OF TRUSTEE'S SALE - continued

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be:  61 Rudgear Drive, Walnut Creek CA 94596.

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit:

$628,857.56 (Estimated)

Accrued interest and additional advances, if any, will increase this figure prior to sale.

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell.  The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

Regarding the property that is the subject of this notice of sale, the "mortgage loan servicer" as defined in California Civil Code § 2923.53(k)(3), declares that it has obtained from the Commissioner a final or temporary order of exemption pursuant to California Civil Code section 2923.53 and that the exemption is current and valid on the date this notice of sale is recorded. The timeframe for giving a Notice of Sale specified in Subdivision (a) of Section 2923.52 does not apply to this Notice of Sale pursuant to California Civil Code Sections 2923.52 or 2923.55.

DATE: 7/22/10

For: DSL SERVICE COMPANY, as Trustee
By: FCI LENDER SERVICES, INC., as Agent
8180 EAST KAISER BLVD., ANAHEIM HILLS, CA  92808
U.S. BANK NATIONAL ASSOCIATION, CUSTOMER SERVICE DEPARTMENT (949) 798-6002
FOR TRUSTEE SALE INFORMATION LOG ON TO: WWW.RSVPFORECLOSURES.COM OR CALL: 925-603-7342.

_____
VIVIAN PRIETO, VICE PRESIDENT

**FCI LENDER SERVICES, INC. IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

END OF DOCUMENT

2

Exhibit 8

RECORDING REQUESTED BY:

**ServiceLink - San Bernardino**

WHEN RECORDED MAIL TO:

FCI LENDER SERVICES, INC.
8180 EAST KAISER BLVD.
ANAHEIM HILLS, CA 92808

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2012-0011614-00**
Check Number
Wednesday, JAN 18, 2012 11:42:00
MOD    $2.00 REC   $12.00 FTC    $1.00
DAF    $2.70 REF    $0.30 RED    $1.00
ERD    $1.00
Ttl Pd    $20.00        Rcpt # 0001151381
                              rrc/RJ/1-2
SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

Title Order No.:   435749          Trustee Sale No.: 70954          Loan No.: ███████6026
APN: 187-032-011

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED** 03/30/2006. **UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 02/14/2012 at 01:30PM, DSL SERVICE COMPANY **as the duly appointed Trustee under and pursuant to Deed of Trust** RECORDED ON APR 06, 2006 AS DOC #2006-0106478-00 **of official records in the Office of the Recorder of** Contra Costa **County, California, executed by:**

CAROL MEIER, A Married Woman as her sole and separate property

, as Trustor

DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.

, as Beneficiary

**WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state). At:** THE COURT STREET ENTRANCE TO THE COUNTY COURTHOUSE, 725 COURT STREET, MARTINEZ, CA,

**all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California describing the land therein:** AS MORE FULLY DESCRIBED IN SAID TRUST.

1





70954          TS-NOS          TS0021          090528

Exhibit 8, Page 1 of 2

USB_0032

### NOTICE OF TRUSTEE'S SALE - continued

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be:  61 Rudgear Drive, Walnut Creek CA 94596.

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.  Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit:

$672,690.43 (Estimated)

Accrued interest and additional advances, if any, will increase this figure prior to sale.

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell.  The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

Regarding the property that is the subject of this notice of sale, the "mortgage loan servicer" as defined in California Civil Code § 2923.53(k)(3), declares that it has obtained from the Commissioner a final or temporary order of exemption pursuant to California Civil Code section 2923.53 and that the exemption is current and valid on the date this notice of sale is recorded. The timeframe for giving a Notice of Sale specified in Subdivision (a) of Section 2923.52 does not apply to this Notice of Sale pursuant to California Civil Code Sections 2923.52 or 2923.55.

**DATE:** 1/12/12

For: DSL SERVICE COMPANY, as Trustee
By: FCI LENDER SERVICES, INC., as Agent
8180 EAST KAISER BLVD., ANAHEIM HILLS, CA  92808
U.S. BANK NATIONAL ASSOCIATION, CUSTOMER SERVICE DEPARTMENT (800) 824-6902 or Toll Free # - 1-855-MYUSMAP (or 855-698-7627) - mortgageassistancepoint@usbank.com
FOR TRUSTEE SALE INFORMATION LOG ON TO: WWW.RSVPFORECLOSURES.COM
CALL: 925-603-7342 or 877 RSVP-ADS  or 877 778-7237

_____
VIVIAN PRIETO, VICE PRESIDENT

**FCI LENDER SERVICES, INC. IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

2

END OF DOCUMENT

USB_0033

Exhibit 9

RECORDING REQUESTED BY:

Old Republic Default Management Services

AND WHEN RECORDED MAIL TO:

Old Republic Default Management Services
PO Box 250
Orange, California 92856-6250

SPACE ABOVE THIS LINE FOR RECORDER'S USE

CONTRA COSTA Co Recorder Office
JOSEPH CANCIAMILLA, Clerk-Recorder
**DOC- 2013-0140965-00**
Check Number
Tuesday, JUN 04, 2013 11:21:00
MOD    $2.00:REC    $12.00:FTC    $1.00
DAF    $2.70:REF    $0.30:RED    $1.00
ERD    $1.00;
Ttl Pd    $20.00    Rcpt # 0001686734
rrc/RS/1-2

APN: 187-032-011 TS No.: 12-49374 TSG Order No.: 435749

*435749*

# SUBSTITUTION OF TRUSTEE

**WHEREAS, CAROL MEIER, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY** was the original Trustor, **DSL SERVICE COMPANY** was the original Trustee, and **DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.** was the original Beneficiary under that certain Deed of Trust dated **3/30/2006** and recorded on **4/6/2006** as Instrument No. **2006-0106478**, in book --, page --of Official Records of **Contra Costa** County, California, and

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE,** the undersigned hereby substitutes **Old Republic Default Management Services, a Division of Old Republic National Title Insurance Company,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 2/25/13

**U.S. BANK NATIONAL ASSOCIATION**

_Eloise U. Carillo_
**Eloise Carillo, Officer**

State of California
County of Orange

On February 25, 2013 before me, **Paulette Petrovsky** Notary Public ~~in and for said county~~, personally appeared, **Eloise U. Carillo** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Paulette Petrovsky_ (Seal) TS No.: 12-49374 TSG Order No.: 435749
Notary Public

> PAULETTE PETROVSKY
> Commission # 1872817
> Notary Public - California
> Orange County
> My Comm. Expires Dec 7, 2013

# AFFIDAVIT OF MAILING
## FOR SUBSTITUTION OF TRUSTEE BY CODE

TS No.: **12-49374**

Trustor: **CAROL MEIER, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

I, **Alcira Sorensen - Foreclosure Assistant,** declare: That I am an officer, agent or employee of **Old Republic Default Management Services, a Division of Old Republic National Title Insurance Company** whose business address is:

> 500 City Parkway West, Suite 200
> Orange, California 92868

I am over the age of eighteen years; On **6/4/2013**, by Certified and First Class mail, enclosed in a sealed envelope with postage fully prepaid, I caused to be deposited in the United States Mail, a copy of the attached Substitution of Trustee to the trustee of record under the Deed of Trust described in said Substitution, and;

A copy of the attached Substitution has been mailed prior to the recording thereof, in the manner provided in Section 2924(b) of the Civil Code of the State of California to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: **6/4/2013**

_____
Alcira Sorensen - Foreclosure Assistant

"END OF DOC"

USB_0039

Exhibit 10

RECORDING REQUESTED BY
Old Republic Default Management Services

AND WHEN RECORDED MAIL TO:
U.S. BANK NATIONAL ASSOCIATION
3121 Michelson Drive
Irvine, Ca 92612

CONTRA COSTA Co Recorder Office
JOSEPH CANCIAMILLA, Clerk-Recorder
DOC- 2013-0140966-00
Check Number
Tuesday, JUN 04, 2013 11:21:00
MOD    $2.00:REC     $12.00:FTC     $1.00
DAF    $2.70:REF                    $1.00
ERD    $1.00;       $0.30:RED       $1.00
Ttl Pd    $20.00         Rcpt # 0001686735

435749

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: **12-49374**   TSG Order No.: **435749**   A.P.N.: **187-032-011**

_ATTENTION RECORDER_: **THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY**

- NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/30/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On **7/1/2013 at 1:30 PM, Old Republic Default Management Services, a Division of Old Republic National Title Insurance Company** as duly appointed Trustee pursuant to the Deed of Trust, Recorded **4/6/2006** as Instrument No. **2006-0106478** in book --, page -- of Official Records in the office of the Recorder of **Contra Costa** County, California, executed by: **CAROL MEIER, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY,** as Trustor, **DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.** as Beneficiary. **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH** (payable in full at time of sale by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state). **At the Court St. entrance to the County Courthouse, 725 Court St., (corner of Main and Court St.), Martinez, CA** all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and state, and as more fully described in the above referenced Deed of Trust.

The street address and other common designation, if any, of the real property described above is purported to be:
**61 RUDGEAR DRIVE, WALNUT CREEK, CA 94596**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made in an "AS IS" condition, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$706,544.42** (Estimated). Accrued interest and additional advances, if any, will increase this figure prior to sale. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

USB_0036

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(714) 573-1965** or visit this Internet Web site **www.priorityposting.com**, using the file number assigned to this case **12-49374**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

The Declaration pursuant to California Civil Code, Section 2923.5(a) was fulfilled when the Notice of Default was recorded on 4/21/2010

Date: 5/30/2013

Old Republic Default Management Services, A Division of Old Republic National
Title Insurance Company, as Trustee
500 City Parkway West, Suite 200, Orange, CA 92868-2913
(866) 263-5802
For Sale Information Contact: Priority Posting & Publishing (714) 573-1965



Heather Marsh, Trustee Sale Officer

"We are attempting to collect a debt, and any information we obtain will be used for that purpose."

"END OF DOC"

USB_0037

Exhibit 11

RECORDING REQUESTED BY
**Old Republic Default Management Services**

AND WHEN RECORDED MAIL TO:
**U.S. BANK NATIONAL ASSOCIATION**
**3121 Michelson Drive**
**Suite 500**
**Irvine, Ca 92612**

2014P013843100002
**CONTRA COSTA Co Recorder Office**
**JOSEPH CANCIAMILLA, Clerk-Recorder**
**DOC-2014-0138431-00**
**Acct 1082-LSI Title INC Irvine CA**
**Monday, AUG 18, 2014 12:42:29**
**MOD $2.00|REC $12.00|FTC $1.00**
**DAF $2.70|REF $0.30|RED $1.00**
**ERD $1.00| |**
**Ttl Pd $20.00 Nbr-0002045029**
**mom/RC/1-2**

T.S. No.: **12-49374** TSG Order No.: **435749** A.P.N.: **187-032-011**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

*ATTENTION RECORDER*: **THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY PURSUANT TO CA CIVIL CODE 2923.3**

- NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
  注：本文件包含一个信息摘要
  참고사항: 본 첨부 문서에 정보 요약서가 있습니다
  NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
  TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
  LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

# NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/30/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On **9/15/2014 at 1:00 PM, Old Republic Default Management Services, a Division of Old Republic National Title Insurance Company** as duly appointed Trustee pursuant to the Deed of Trust, Recorded 4/6/2006 as Instrument No. 2006-0106478 in book --, page -- of Official Records in the office of the Recorder of **Contra Costa** County, California, executed by: **CAROL MEIER, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY,** as Trustor, **DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A., A FEDERALLY CHARTERED SAVINGS ASSOCIATION** as Beneficiary. **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH** (payable in full at time of sale by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state). **Behind the Civic Center designation sign at the corner of Willow Pass Road and Parkside Drive, 1900 Parkside Drive, Concord, CA 94519** all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and state, and as more fully described in the above referenced Deed of Trust.

The street address and other common designation, if any, of the real property described above is purported to be:
**61 RUDGEAR DRIVE, WALNUT CREEK, CA 94596**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made in an "AS IS" condition, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$730,193.54** (Estimated). Accrued interest and additional advances, if any, will increase this figure prior to sale. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

USB_0040

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(714) 573-1965** or visit this Internet Web site **www.priorityposting.com**, using the file number assigned to this case **12-49374**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: 8/13/2014

Old Republic Default Management Services, A Division of Old Republic National Title Insurance Company, as Trustee
500 City Parkway West, Suite 200, Orange, CA 92868-2913
(866) 263-5802
For Sale Information Contact: Priority Posting & Publishing (714) 573-1965

Dalaysia Ramirez, Trustee Sale Officer

"We are attempting to collect a debt, and any information we obtain will be used for that purpose."

USB_0041

Exhibit 12

**usbank**

3121 Michelson Drive, Suite 500
Irvine, CA 92612
May 29, 2014

Carol Meier
61 Rudgear Dr.
Walnut Creek, CA 94596

Re: Loan Number: ████ 6026

Dear Ms. Meier,

This will acknowledge receipt of the following documentation dated May 20, 2014, and sent via Federal Express to Andrew Cecere, Vice Chairman and Chief Financial Officer of US Bankcorp, Minneapolis, Minnesota and U.S. Bank Home Mortgage, Irvine, California:

1. Proof of Service
2. Verified Default in Dishonor, Certificate of Non-Response, Certificate of Estoppel
3. First Notice of Fault – Opportunity to Cure
4. Demand for Verified Proof of Claim

Enclosed are copies of U. S. Bank Home Mortgage recent correspondence to you dated December 2013 and February 2014 in response to inquiries from you dated December 2013 and January 2014.

As stated in the Bank's letter dated February 22, 2014, over the past several years you have repeatedly sent correspondence with numerous documents to the Bank asserting various theories of wrongdoing and alleged damages. And, again, we expressly and specifically deny the allegations and characterizations of law and/or fact set forth in your correspondence.

The Bank's position remains the same. The statements made and documents contained within your correspondence do not alter or change the nature or terms of your agreement with U. S. Bank in any way nor is your contractual obligation to repay the balance owed on this account in full neither discharged nor forgiven.

Your account remains due for the February 1, 2010 payment and a foreclosure sale date has been re-scheduled for June 20, 2014.

Unless you are able to bring your loan current or otherwise fulfill your obligation, the Bank is unable to continue to respond to your repeated and invalid allegations.

Sincerely,

Martha Simons
U.S. Bank Home Mortgage
Complaint Response Unit

Enclosures

cc: Executive Communications

**usbank.com**

Member FDIC

**USB_0184**

Exhibit 13

Borrower Name: MEIER, CAROL
Address: 61 RUDGEAR DR
WALNUT CREEK, CA. 94596-6313



| Trans. Code | Transaction Description | Teller # | Reason Code | Effective Date | Payment Due Date | Interest Amount | Escrow Amount | Capped Interest Amount | Late Charge Amount | Unapplied Amount | Amount Received | Principal Balance | Escrow After Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RM8S | Multiple Payment | 9963 | 0 | 08/21/06 | 08/01/06 | $2,562.50 | $0.00 | 0.00 | $153.75 | $0.00 | $2,716.25 | $599,999.50 | $0.00 |
| DEBS | Deferred Expense/Cost Disbursement (Increase)/Receipt | 9991 | 0 | 07/06/06 | 08/01/06 | $0.00 | $0.00 | 0.00 | $0.00 | $0.00 | $0.00 | $599,999.50 | $0.00 |
| P 8S | Principal/Payment Variance Receipt | 9912 | 0 | 07/01/06 | 07/01/06 | $2,562.50 | $0.00 | 0.00 | $0.00 | $0.00 | $2,503.00 | $599,999.50 | $0.00 |
| EP8S | Exception Payment | 9912 | 0 | 05/30/06 | 06/30/06 | $2,959.50 | $0.00 | 0.00 | $0.00 | $0.00 | $2,959.50 | $600,000.00 | $0.00 |
| DEBS | Deferred Expense/Cost Disbursement (Increase)/Receipt | 9961 | 0 | 04/28/06 | 06/01/06 | $0.00 | $0.00 | 0.00 | $0.00 | $0.00 | $0.00 | $600,000.00 | $0.00 |
| LN8S | New Loan Disbursement | 9959 | 0 | 04/06/06 | 06/01/06 | $0.00 | $0.00 | 0.00 | $0.00 | $0.00 | $600,000.00 | $600,000.00 | $0.00 |
| I 8S | Interest Receipt/Disbursement | 9959 | 99 | 04/06/05 | 06/01/06 | $2,108.25 | $0.00 | 0.00 | $0.00 | $0.00 | $2,108.25 | $0.00 | $0.00 |

Exhibit 13, Page 1 of 28

USB_0185

Report Date: 9/28/2012
Loan Number: [redacted]026

Borrower Name: MEIER, CAROL
Address: 51 RUDGEAR DR
WALNUT CREEK, CA. 94596-6313

| Trans. Code | Transaction Description | Teller # | Reason Code | Effective Date | Payment Due Date | Interest Amount | Escrow Amount | Capped Interest Amount | Late Charge Amount | Unapplied Amount | Amount Received | Principal Balance | Escrow After Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RP2 | Payment | 2507 | 0 | 07/10/07 | 07/01/07 | $3,562.30 | $0.00 | 0.00 | $0.00 | $0.00 | $3,562.30 | $599,966.22 | $0.00 |
| EP8S | Exception Payment | 9912 | 0 | 05/08/07 | 06/01/07 | $3,062.33 | $0.00 | 0.00 | $0.00 | $0.00 | $3,062.30 | $599,966.22 | $0.00 |
| EP8S | Exception Payment | 9912 | 0 | 04/26/07 | 05/01/07 | $3,062.33 | $0.00 | 0.00 | $0.00 | $0.00 | $3,062.33 | $599,966.22 | $0.00 |
| EP8S | Exception Payment | 9912 | 0 | 03/29/07 | 04/01/07 | $3,062.33 | $0.00 | 0.00 | $0.00 | $0.00 | $3,062.33 | $599,966.22 | $0.00 |
| EP8S | Exception Payment | 9912 | 0 | 03/08/07 | 03/01/07 | $3,062.33 | $0.00 | 0.00 | $0.00 | $0.00 | $3,062.33 | $599,966.22 | $0.00 |
| RP2 | Payment | 6800 | 0 | 02/16/07 | 02/01/07 | $3,062.33 | $0.00 | 0.00 | $0.00 | $0.00 | $3,062.33 | $599,966.22 | $0.00 |
| RP2E | Payment | 5324 | 0 | 01/16/07 | 01/01/07 | $0.00 | $0.00 | 0.00 | $0.00 | $0.00 | $0.00 | $599,966.22 | $0.00 |
| RP2 | Payment | 5324 | 0 | 01/16/07 | 01/01/07 | $3,062.33 | $0.00 | 0.00 | $0.00 | $0.00 | $3,062.33 | $599,966.22 | $0.00 |
| RP2 | Payment | 1228 | 0 | 12/29/06 | 12/01/06 | $3,062.33 | $0.00 | 0.00 | $103.74 | $0.00 | $3,246.07 | $599,966.22 | $0.00 |
| EP8S | Exception Payment | 9962 | 0 | 10/16/06 | 10/01/08 | $2,562.38 | $0.00 | 0.00 | $0.00 | $0.00 | $2,562.50 | $599,966.22 | $0.00 |
| P8S | Principal/Payment Variance Receipt | 9912 | 0 | 10/16/06 | 10/01/06 | $2,562.38 | $0.00 | 0.00 | $0.00 | $0.00 | $2,563.00 | $599,966.36 | $0.00 |
| RP1 | Payment | 6550 | 0 | 09/24/08 | 09/01/08 | $2,562.50 | $0.00 | 0.00 | $0.00 | $0.00 | $2,585.00 | $599,967.00 | $0.00 |

Exhibit 13, Page 2 of 28

USB_0186

Borrower Name: MEIER, CAROL
Address: 61 RUDGEAR DR
WALNUT CREEK, CA. 94596-6313

| Trans. Code | Transaction Description | Teller # | Reason Code | Effective Date | Payment Due Date | Interest Amount | Escrow Amount | Capped Interest Amount | Late Charge Amount | Unapplied Amount | Amount Received | Principal Balance | Escrow After Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RP2 | Payment | 8367 | 0 | 07/15/08 | 07/01/08 | $3,437.31 | $0.00 | 0.00 | $0.00 | $0.00 | $3,437.36 | $599,966.12 | $0.00 |
| EP8S | Principal Payment Variance Rec... | 9912 | 0 | 03/10/08 | 05/01/08 | $3,937.28 | $0.00 | 0.00 | $0.00 | $0.00 | $3,437.28 | $599,966.17 | $0.00 |
| RP2 | Payment | 1228 | 0 | 05/12/08 | 05/01/08 | $3,937.28 | $0.00 | 0.00 | $0.00 | $0.00 | $3,937.28 | $599,966.22 | $0.00 |
| RP2 | Payment | 9937 | 0 | 03/01/08 | 03/01/08 | $3,937.28 | $0.00 | 0.00 | $0.00 | $0.00 | $3,937.28 | $599,966.22 | $0.00 |
| EP8S | Exception Payment | 9912 | 0 | 03/11/08 | 03/01/08 | $3,937.28 | $0.00 | 0.00 | $0.00 | $0.00 | $3,937.28 | $599,966.22 | $0.00 |
| EP8S | Exception Payment | 9912 | 0 | 02/13/08 | 02/01/08 | $3,937.28 | $0.00 | 0.00 | $0.00 | $0.00 | $3,937.28 | $599,966.22 | $0.00 |
| EP8S | Exception Payment | 9912 | 0 | 01/10/08 | 01/01/08 | $3,937.28 | $0.00 | 0.00 | $0.00 | $0.00 | $3,937.28 | $599,966.22 | $0.00 |
| EP8S | Exception Payment | 9912 | 0 | 12/12/07 | 12/01/07 | $3,937.28 | $0.00 | 0.00 | $0.00 | $0.00 | $3,937.28 | $599,966.22 | $0.00 |
| EP8S | Exception Payment | 9912 | 0 | 11/14/07 | 11/01/07 | $3,562.30 | $0.00 | 0.00 | $0.00 | $0.00 | $3,562.30 | $599,966.22 | $0.00 |
| EP8S | Exception Payment | 9912 | 0 | 10/08/07 | 10/01/07 | $3,562.30 | $0.00 | 0.00 | $0.00 | $0.00 | $3,562.30 | $599,966.22 | $0.00 |
| EP8S | Exception Payment | 9912 | 0 | 09/13/07 | 09/01/07 | $3,562.30 | $0.00 | 0.00 | $0.00 | $0.00 | $3,562.30 | $599,966.22 | $0.00 |
| RP2 | Payment | 0029 | 0 | 08/13/07 | 08/01/07 | $3,562.30 | $0.00 | 0.00 | $0.00 | $0.00 | $3,562.30 | $599,966.22 | $0.00 |

Page 2 of 4

Borrower Name: MEIER, CAROL
Address: 61 RUDGEAR DR
WALNUT CREEK, CA, 94596-6313

| Trans. Code | Transaction Description | Teller # | Reason Code | Effective Date | Payment Due Date | Interest Amount | Escrow Amount | Capped Interest Amount | Late Charge Amount | Unapplied Amount | Amount Received | Principal Balance | Escrow After Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EP8S | Exception Payment | 9912 | 0 | 05/01/09 | 05/01/09 | $3,374.81 | $0.00 | 0.00 | $0.19 | $0.00 | $3,375.00 | $599,966.12 | $0.00 |
| RP2 | Payment | 8897 | 0 | 04/30/09 | 04/01/09 | ██████ | ██████ | ████ | ████ | ████ | ██████ | $599,966.12 | $0.00 |
| DE8S | Deferred Expense/Cost Disbursement (Increase)/Receipt | 9959 | 0 | 03/20/09 | 04/01/09 | $0.00 | $0.00 | 0.00 | $0.00 | $0.00 | $0.00 | $599,966.12 | $0.00 |
| EP8S | Deferred Fee Receipt/Disbursement | 8899 | 0 | 03/20/09 | 04/01/09 | ██████ | ██████ | ████ | ████ | ████ | ██████ | $599,966.12 | $0.00 |
| RP2 | Payment | 5175 | 0 | 03/16/09 | 03/01/09 | $3,374.81 | $0.00 | 0.00 | $0.00 | $0.00 | $3,374.81 | $599,966.12 | $0.00 |
| EP8S | Exception Payment | 9950 | 0 | 02/28/09 | 02/01/09 | ██████ | ██████ | ████ | ████ | ████ | ██████ | $599,966.12 | $0.00 |
| EP8 | Exception Payment | 2207 | 0 | 01/20/09 | 01/01/09 | $3,374.81 | $0.00 | 0.00 | $0.00 | $0.00 | $3,374.81 | $599,966.12 | $0.00 |
| EP8S | Exception Payment | 8912 | 0 | 12/2/08 | 12/01/08 | ██████ | ██████ | ████ | ████ | ████ | ██████ | $599,966.12 | $0.00 |
| EP8S | Exception Payment | 9912 | 0 | 11/17/08 | 11/01/08 | $3,437.31 | $0.00 | 0.00 | $0.00 | $0.00 | $3,437.31 | $599,966.12 | $0.00 |
| RP2 | Payment | 1228 | 0 | 10/16/08 | 10/01/08 | ██████ | ██████ | ████ | ████ | ████ | ██████ | $599,966.12 | $0.00 |
| RP2 | Payment | 4670 | 0 | 09/16/08 | 09/01/08 | $3,437.31 | $0.00 | 0.00 | $0.00 | $0.00 | $3,437.31 | $599,966.12 | $0.00 |
| EP8S | Exception Payment | 8012 | 0 | 09/3/08 | 09/01/08 | ██████ | ██████ | ████ | ████ | ████ | ██████ | $599,966.12 | $0.00 |

Page 1 of 4

ARM PLAN A106
EMP 0   POFO

LN# ▮▮▮▮6026   CAROL MEIER      61 RUDGEAR DR     WALNUT CREEK    CA 945966313

| 1ST MTGE PRIN | 2ND MTGE PRIN | ESC BAL | REST ESC | SUSPENSE | ADV BAL | REPL RES. | HUD BAL | LC BAL | INT DUE | DUE DATE | HUD PRT OF M |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 599,966.12 | .00 | .00 | .00 | 2,025.32 | .00 | .00 | .00 | 1814.23 | .00 | 11-01-09 | .00 00 G |

| P & I 1ST | P&I 2ND | CO TAX | CITY TAX | HAZ INS | H I P | LIEN | BSC A & H | LIFE | MISC | REP RES | TOT PAYNT | INT RATE | DY EM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2874.84 | .00 | .00 | .00 | .00 | .00 | .00 | .00 0 | .00 0 | .00 0 | .00 | 2874.84 | .0575000 | 1 9 |

| 1ST ORIG MTG | 2ND ORIG MTG | PRIN BAL BEG | INT IND | CAP FLAG | MTGR SSN | DEF INT BAL | PRIOR YR PPD INT | PPD INT IND | GPM ORG |
|---|---|---|---|---|---|---|---|---|---|
| 600,000 | 0 | 599,966.12 | | | 374 58 4053 | 0.00 | 0.00 | 0 | |

ASSUM-DT XFER-DEED FHA-SEC/NUM   LIP PAYOFF FC-TRK-SW YE-ACQ-RPT/DATE   SALE-ID EXEMPT PLGD-LN PMT-OPT CALC-METH ELOC BNKRPCY CH/DT
N/07-01-09   DOWNEY

PMT PERIOD 1098-DET-HIST POINTS-PAID/RPTG YR SUPPR-MICR-STMT DI-NOT-RPT-YR REAS CAUS RT-HDR-SW 1ST-DUE-DT REO STAT/COMPL DT
12   .00   06-06

IOE CREDIT YTD/W-H SW/W-H BALANCE  IORE CREDIT YTD/W-H SW/W-H BALANCE  CONSTR CD  NO PURGE FLAG/YR  BNKRPT STAT  LAST DEF DUE
.00   .00   .00   .00   F  11   05-46

REC CORP ADV BAL  3RD REC CORP ADV BAL  FORECL WKST CODE/REINSTATE DATE  INIT-ESC-STMT CODE / DATE  LOSS MIT STATUS/COMPL DATE
.00   .00   9  08-29-09

| DUE DATE | PROC DATE | TP TR | SQ NO | AMOUNT RECEIVED | PRINCIPAL PAID | PRINCIPAL BALANCE | INTEREST PAID | ESCROW PAID | ESCROW BALANCE | ADVANCE BALANCE | STATUS AMOUNT | STATUS BALANCE | UNEARNED INT-BAL. | OTHER AMOUNTS | CFD DCT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | BAL-FWD | 599966.12 | | | | | | | | |
| 07-09 | 07-02 | 1 70 | 1* | 16874.24 | .00 | 599966.12 | 16874.05 | .00 | .00 | .00 | | | | .19 | 11 |
| 06-09 | 07-03 | 1 73 | 1 | 2875.00 | .00 | 599966.12 | | | | | .00 | .00 | .00 | | 1 |
| | | | | | | | | | | | | BATCH 901 EDIT-SEQ 044297 ACTION M540 | | | |
| | | | | | | | | | | | | | | 2875.00 | W |
| | | | | | | | | | | | | | | 07-03-09 | L |
| 06-09 | 07-16 | 1 52 | 1 | .00 | .00 | 599966.12 | | | | | .00 | .00 | .00 | 172.49- | 11 |
| 06-09 | 07-31 | 1 72 | 1 | 2875.00 | .00 | 599966.12 | | | | | .00 | .00 | .00 | | 11 |
| | | | | | | | | | | | | MPL-ID GLBL | | | |
| | | | | | | | | | | | | | | 2875.00 | W |
| 06-09 | 07-31 | 1 72 | 2 | 5750.00- | .00 | 599966.12 | | | | | .00 | .00 | .00 | | |
| | | | | | | | | | | | | BATCH 72B EDIT-SEQ 086919 ACTION OMP4 | | | |
| | | | | | | | | | | | | MPL-ID GLBL | | | |
| | | | | | | | | | | | | | | 5750.00- | W |
| 06-09 | 07-31 | 1 72 | 3 | 5750.00 | .00 | 599966.12 | 2874.84 | .00 | .00 | .00 | | | | .32 | 11 |
| | | | | | | | | | | | | BATCH 72B EDIT-SEQ 086919 ACTION OMP4 | | | |
| | | | | | | | | | | | | MPL-ID GLBL | | | |
| | | | | | | | | | | | | | | 07-31-09 | L |
| 07-09 | 07-31 | 1 72 | 4 | .00 | .00 | 599966.12 | 2874.84 | .00 | .00 | .00 | | | | | 1 |
| | | | | | | | | | | | | BATCH 72B EDIT-SEQ 086919 | | | |
| | | | | | | | | | | | | MPL-ID GLBL | | | |
| | | | | | | | | | | | | | | 07-31-09 | L |
| 08-09 | 08-17 | 1 52 | 1 | .00 | .00 | 599966.12 | .00 | .00 | .00 | .00 | | | | 172.49- | 11 |
| 08-09 | 08-31 | 1 72 | 1 | 2875.00 | .00 | 599966.12 | 2874.84 | .00 | .00 | .00 | | | | .16 | 11 |
| | | | | | | | | | | | | MPL-ID GLBL | | | |
| | | | | | | | | | | | | | | 08-31-09 | L |
| | | | | | | | | | | | | BATCH 72B EDIT-SEQ 086919 | | | |
| 09-09 | 09-16 | 1 52 | 1 | .00 | .00 | 599966.12 | .00 | .00 | .00 | .00 | | | | 172.49- | 11 |
| | | | | | | | | | | | | BATCH 72B EDIT-SEQ 151081 | | | |

USB_0189

LN#  █████6026   CAROL MEIER                                                                        EMP 0   POFO

| DUE DATE | PROC DATE | TP TR | SQ NO | AMOUNT RECEIVED | PRINCIPAL PAID | PRINCIPAL BALANCE | INTEREST PAID | ESCROW PAID | ESCROW BALANCE | ADVANCE BALANCE | STATUS AMOUNT | STATUS BALANCE | UNEARNED INT-BAL. | OTHER AMOUNTS | CFD DCT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09-09 | 09-30 | 1 72 | 1 | 2500.00 | .00 | 599966.12 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | | 1 |
| | | | | | | | | | | | MPL-ID GLBL | | | | |
| | | | | | | | | | | | | | | 2500.00 W | |
| | | | | | | | | | | | | | | 09-30-09 L | |
| 09-09 | 10-16 | 1 52 | 1 | .00 | .00 | 599966.12 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | 172.49- 1 | |
| 09-09 | 10-30 | 1 72 | 1 | 2000.00 | .00 | 599966.12 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | | 1 |
| | | | | | | | | | | | MPL-ID GLBL | | | | |
| | | | | | | | | | | | | | | 2000.00 W | |
| | | | | | | | | BATCH 7ZB EDIT-SEQ 043243 ACTION 0MP4 | | | | | | 1 |
| 09-09 | 10-30 | 1 72 | 2 | 2874.84- | .00 | 599966.12 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | | 1 |
| | | | | | | | | | | | MPL-ID GLBL | | | | |
| | | | | | | | | | | | | | | 2874.84-W | |
| | | | | | | | BATCH 7ZB EDIT-SEQ 043243 ACTION 0MP4 | | | | | | | 1 |
| 09-09 | 10-30 | 1 72 | 3 | 2874.84 | .00 | 599966.12 | 2874.84 | .00 | .00 | .00 | .00 | .00 | .00 | | 1 |
| | | | | | | | | | | | MPL-ID GLBL | | | | |
| | | | | | | | | | | | | | | 10-30-09 L | |
| 09-09 | 11-09 | 1 48 | 1 | .00 | .00 | 599966.12 | 2874.84- | .00 | .00 | .00 | .00 | .00 | .00 | | 1 |
| | | | | | | | | BATCH 7ZB EDIT-SEQ 043243 | | | | REV-CD 03 | | | |
| | | | | | | | | | | | | | | 2874.84 AD | |
| | | | | | | | | | | | | | | 9004      L | |
| 09-09 | 11-09 | 1 72 | 2 | 2400.00 | .00 | 599966.12 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | | 1 |
| | | | | | | | | BATCH 8LL EDIT-SEQ 176836 | | | | MPL-ID GLBL | | | |
| | | | | | | | | | | | | | | 2400.00 W | |
| | | | | | | | | | | | | | | 11-09-09 L | |
| 09-09 | 11-10 | 1 73 | 1 | .00 | .00 | 599966.12 | 2874.84 | .00 | .00 | .00 | .00 | .00 | .00 | | 1 |
| | | | | | | | | BATCH 7ZB EDIT-SEQ 172080 ACTION 1MP8 | | | | | | | |
| | | | | | | | | | | | | | | 2874.84-W | |
| | | | | | | | | | | | | | | 11-10-09 L | |
| 10-09 | 12-16 | 1 52 | 1 | .00 | .00 | 599966.12 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | 142.49- 11 | |
| 10-09 | 12-29 | 1 72 | 1 | 2875.00 | .00 | 599966.12 | 2874.84 | .00 | .00 | .00 | .00 | .00 | .00 | | 1 |
| | | | | | | | | | | | MPL-ID GLBL | | | | |
| | | | | | | | | | | | | | | .16 W | |
| | | | | | | | | BATCH 4AR EDIT-SEQ 110740 ACTION 0MP3 | | | | 12-29-09 L | | | |

REQ-BY TOTALS     35,274.24                   31,248.25                                  .00                          1,193.54
  Y/E                          .00                           .00

OTHER AMOUNT CODES:
A=FHA-PENALTY    G=SER-INTEREST-PAID TO POOL   K=INT-DUE-PD        P=ACCRUED-IOE/IORE   U=REAPPLICATION-FEE       Y=HUD-FUND
B=BSC            H=FEE-AMT                      L=PD-THRU-DT        R=UE-INT-AMT         V=ESCROW-ADVANCE          Z=RESTRICTED-ESCROW
C=235-FEE        I=A-H-PD                       M=ADVANCE-EFF-DATE  S=CR-LIFE-AMT        W=SUSPENSE                DI=DEFERRED-INT-BAL
F=MISC           J=LIFE-PD                      N=ADVANCE-MEMO-AMT  T=ORIG-FEE-AMT       X=REPLACEMENT-RESERVE
AA=SER-FEE-PD    AB=DEFERRED-INT-PD             AC=LIFE-DEF-INT-PD  AD=CHECK-NO  AE=DEFERRED-INT-LTD-PD  AF=LIFE-DEFERRED-INT-LTD-PD
AG=SUB-CODE      AJ=DEF-INT-ADJ-FLAG  AK=ADV-AMT-RECD  AL=TRAN-SOURCE  AM=IOC-SPEC-INT-PD  AN=NON-REC-CORP-ADV  AP=DATE-STAMP  AQ=TIME-
STAMP  AR=MTGR-REC-CORP-ADV  AS=PREV-POSTED  AT=3RD-REC-CORP-ADV  AY=ADJ-YE 1098 IND  AZ=CHOICES-PD
FEE CODES:       1=LATE-CHARGE  2=BAD-CK-FEE  3=CHG-OWNER=CORP-ADV  AY=ADJ-YE 1098 IND  AZ=CHOICES-PD

USB_0190

U.S. BANK HOME MORTGAGE
P.O. BOX 6060
NEWPORT BEACH, CA 92660
(800) 824-6902

                  CUSTOMER ACCOUNT ACTIVITY STATEMENT            DATE 09/28/12
REQ BY A71                                                       PAGE  6

CAROL MEIER
LOAN NUMBER: ████6026

                    ACTIVITY FOR PERIOD 01/01/10 - 09/27/12
PROCESS    DUE     TRANSACTION          TRANSACTION              EFFECTIVE DATE
 DATE      DATE    CODE                 DESCRIPTION              OF TRANSACTION
----------------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/         ESCROW PAID/---------OTHER------------
   AMOUNT       BALANCE   INTEREST  BALANCE   AMOUNT  CODE/DESCRIPTION
----------------------------------------------------------------------------
03-16-10  12-09  152  LATE CHARGE ASSESSMENT
        0.00       0.00      0.00     0.00    142.49-1 LATE CHARGES
03-03-10  12-09  161  ESCROW ADVANCE
   10,953.83      0.00      0.00  10953.83
03-03-10  03-10  329  DELINQUENT TAXES
    7,076.88-     0.00      0.00  7076.88-
                                 10953.83-  NEW PRINCIPAL/ESCROW BALANCES
03-03-10  11-09  312  COUNTY TAXES
    2,030.78-     0.00      0.00  2030.78-
                                  3876.95-  NEW PRINCIPAL/ESCROW BALANCES
03-03-10  03-10  312  COUNTY TAXES
    1,846.17-     0.00      0.00  1846.17
                                  1846.17   NEW PRINCIPAL/ESCROW BALANCES
03-03-10  00-00  631  PROPERTY PRESERVATION
        9.50       0.00      0.00     0.00
02-25-10  12-09  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE: 0.04750       NEW PRIN & INT PAYMENT:   2,374.87
02-25-10  11-09  173  PAYMENT
        0.00       0.00  2,874.84     0.00     19.88 1 LATE CHARGES
                                            2,894.72-  SUSPENSE
02-23-10  11-09  172  PAYMENT
      869.40       0.00      0.00     0.00    869.40   SUSPENSE
02-16-10  11-09  152  LATE CHARGE ASSESSMENT
        0.00       0.00      0.00     0.00    142.49-1 LATE CHARGES
02-09-10  11-09  148  BAD CHECK REVERSAL
        0.00       0.00  2,874.84-    0.00    499.97   SUSPENSE
02-09-10  12-09  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE: 0.05750       NEW PRIN & INT PAYMENT:   2,874.84
02-01-10  12-09  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE: 0.04750       NEW PRIN & INT PAYMENT:   2,374.87
02-01-10  11-09  173  PAYMENT                                   01-29-10
        0.00       0.00  2,874.84     0.00  2,874.84-  SUSPENSE
01-29-10  11-09  172  PAYMENT
    2,374.87       0.00      0.00     0.00  2,374.87   SUSPENSE
01-22-10  11-09  152  LATE CHARGE ASSESSMENT
        0.00       0.00      0.00     0.00    142.49-1 LATE CHARGES

USB_0191

U.S. BANK HOME MORTGAGE
P.O. BOX 6060
NEWPORT BEACH, CA 92660
(800) 824-6902

CUSTOMER ACCOUNT ACTIVITY STATEMENT

REQ BY A71

CAROL MEIER
LOAN NUMBER: ███6026

ACTIVITY FOR PERIOD 01/01/10 - 09/27/12

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | OTHER CODE/DESCRIPTION |
|---|---|---|---|---|---|

| 11-09-10 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 10-18-10 | 12-09 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 112.49-1 | LATE CHARGES |
| 10-18-10 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 09-16-10 | 12-09 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 112.49-1 | LATE CHARGES |
| 09-08-10 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 09-07-10 | 00-00 | 630 | ATTORNEY ADVANCES | | |
| 1,679.40 | 0.00 | 0.00 | 0.00 | | |
| 08-16-10 | 12-09 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 112.49-1 | LATE CHARGES |
| 08-10-10 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 07-21-10 | 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | |
| 24,866.12- | 0.00 | 0.00 | 0.00 | | |
| 07-21-10 | 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | |
| 24,866.12 | 0.00 | 0.00 | 0.00 | | |
| 07-19-10 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 07-16-10 | 12-09 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 112.49-1 | LATE CHARGES |
| 06-16-10 | 12-09 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 112.49-1 | LATE CHARGES |
| 06-11-10 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 05-18-10 | 12-09 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 142.49-1 | LATE CHARGES |
| 05-11-10 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 04-16-10 | 12-09 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 142.49-1 | LATE CHARGES |
| 03-29-10 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |

USB_0192

U.S. BANK HOME MORTGAGE
P.O. BOX 6060
NEWPORT BEACH, CA 92660
(800) 824-6902

CUSTOMER ACCOUNT ACTIVITY STATEMENT           DATE 09/28/12
REQ BY A71                                                PAGE   4

CAROL MEIER
LOAN NUMBER: ▮▮▮▮6026

ACTIVITY FOR PERIOD 01/01/10 - 09/27/12

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | OTHER CODE/DESCRIPTION |
|---|---|---|---|---|---|

| PROCESS DATE | DUE DATE | CODE | DESCRIPTION | | |
|---|---|---|---|---|---|
| 03-14-11 | 12-09 | 161 | ESCROW ADVANCE | | |
| 1,892.39 | 0.00 | 0.00 | 1892.39 | | |
| 03-14-11 | 03-11 | 312 | COUNTY TAXES | | |
| 1,892.39- | 0.00 | 0.00 | 1892.39- | | |
| | | | 15640.61- | NEW PRINCIPAL/ESCROW BALANCES | |
| 03-14-11 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 02-16-11 | 12-09 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 97.49-1 | LATE CHARGES |
| 01-25-11 | 12-09 | 161 | ESCROW ADVANCE | | |
| 902.00 | 0.00 | 0.00 | 902.00 | | |
| 01-25-11 | 02-11 | 351 | HAZARD INSURANCE | | |
| 902.00- | 0.00 | 0.00 | 902.00 | | |
| | | | 13748.22- | NEW PRINCIPAL/ESCROW BALANCES | |
| 01-18-11 | 12-09 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 97.49-1 | LATE CHARGES |
| 12-16-10 | 12-09 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 97.49-1 | LATE CHARGES |
| 12-13-10 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 11-17-10 | 12-09 | 161 | ESCROW ADVANCE | | |
| 1,892.39 | 0.00 | 0.00 | 1892.39 | | |
| 11-17-10 | 11-10 | 312 | COUNTY TAXES | | |
| 1,892.39- | 0.00 | 0.00 | 1892.39- | | |
| | | | 12846.22- | NEW PRINCIPAL/ESCROW BALANCES | |
| 11-17-10 | 12-09 | 168 | REPAY OF ESCROW ADVANCE | | |
| 0.00 | 0.00 | 0.00 | 1892.39- | 1,892.39 | ADVANCE REFUND |
| 11-17-10 | 12-09 | 164 | TAX REFUND DEPOSIT | | |
| 1,892.39 | 0.00 | 0.00 | 1892.39 | | |
| | | | 10953.83- | NEW PRINCIPAL/ESCROW BALANCES | |
| 11-16-10 | 12-09 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 112.49-1 | LATE CHARGES |
| 11-16-10 | 12-09 | 161 | ESCROW ADVANCE | | |
| 1,892.39 | 0.00 | 0.00 | 1892.39 | | |
| 11-16-10 | 11-10 | 312 | COUNTY TAXES | | |
| 1,892.39- | 0.00 | 0.00 | 1892.39- | | |
| | | | 12846.22- | NEW PRINCIPAL/ESCROW BALANCES | |

USB_0193

CUSTOMER ACCOUNT ACTIVITY STATEMENT                DATE 09/28/12

REQ BY A71                                                        PAGE  3

CAROL MEIER
LOAN NUMBER: ▮▮▮▮6026

ACTIVITY FOR PERIOD 01/01/10 - 09/27/12

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | ----OTHER------------ CODE/DESCRIPTION |
| 11-30-11 | 00-00 | 630 | ATTORNEY ADVANCES | | |
| 630.00 | 0.00 | 0.00 | 0.00 | | |
| 11-28-11 | 12-09 | 173 | PAYMENT | | 11-25-11 |
| 1,800.00 | 0.00 | 0.00 | 0.00 | 1,800.00 | SUSPENSE |
| 11-16-11 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 11-14-11 | 12-09 | 161 | ESCROW ADVANCE | | |
| 1,912.83 | 0.00 | 0.00 | 1912.83 | | |
| 11-14-11 | 11-11 | 312 | COUNTY TAXES | | |
| 1,912.83- | 0.00 | 0.00 | 1912.83- | | |
| | | | | 17553.44- | NEW PRINCIPAL/ESCROW BALANCES |
| 10-19-11 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 10-14-11 | 12-09 | 173 | PAYMENT | | 10-13-11 |
| 1,800.00 | 0.00 | 0.00 | 0.00 | 1,800.00 | SUSPENSE |
| 09-20-11 | 12-09 | 173 | PAYMENT | | 09-15-11 |
| 1,800.00 | 0.00 | 0.00 | 0.00 | 1,800.00 | SUSPENSE |
| 09-09-11 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 08-17-11 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 08-16-11 | 12-09 | 173 | PAYMENT | | 08-15-11 |
| 2,784.44 | 0.00 | 0.00 | 0.00 | 2,784.44 | SUSPENSE |
| 07-18-11 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 05-25-11 | 00-00 | 630 | ATTORNEY ADVANCES | | |
| 300.00 | 0.00 | 0.00 | 0.00 | | |
| 05-06-11 | 00-00 | 630 | ATTORNEY ADVANCES | | |
| 400.00 | 0.00 | 0.00 | 0.00 | | |
| 04-12-11 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 03-28-11 | 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | |
| 54,000.00- | 0.00 | 0.00 | 0.00 | | |
| 03-28-11 | 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | |
| 54,000.00 | 0.00 | 0.00 | 0.00 | | |
| 03-16-11 | 12-09 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 97.49-1 | LATE CHARGES |

U.S. BANK HOME MORTGAGE
P.O. BOX 6060
NEWPORT BEACH, CA 92660
(800) 824-6902

CUSTOMER ACCOUNT ACTIVITY STATEMENT

REQ BY A71

CAROL MEIER
LOAN NUMBER: ■■■6026

ACTIVITY FOR PERIOD 01/01/10 - 09/27/12

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | OTHER AMOUNT | CODE/DESCRIPTION |
|---|---|---|---|---|---|
| 03-16-12 02-10 | 152 | LATE CHARGE ASSESSMENT | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 143.61-1 | LATE CHARGES |
| 03-08-12 02-10 | 161 | ESCROW ADVANCE | | | |
| 1,912.83 | 0.00 | 0.00 | 1912.83 | | |
| 03-08-12 03-12 | 312 | COUNTY TAXES | | | |
| 1,912.83- | 0.00 | 0.00 | 1912.83- | | |
| | | | 18685.13- | NEW PRINCIPAL/ESCROW BALANCES | |
| 02-23-12 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 47,746.44- | 0.00 | 0.00 | 0.00 | | |
| 02-23-12 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 47,746.44 | 0.00 | 0.00 | 0.00 | | |
| 02-16-12 02-10 | 152 | LATE CHARGE ASSESSMENT | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 143.61-1 | LATE CHARGES |
| 02-15-12 00-00 | 631 | PROPERTY PRESERVATION | | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 01-31-12 00-00 | 630 | ATTORNEY ADVANCES | | | |
| 800.00 | 0.00 | 0.00 | 0.00 | | |
| 01-17-12 00-00 | 631 | PROPERTY PRESERVATION | | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 01-06-12 02-10 | 175 | PRINCIPAL PAYMENT | | | |
| 0.00 | 2,653.56 | 0.00 | 0.00 | 2,653.56- | SUSPENSE |
| | 597,312.56 | | | NEW PRINCIPAL/ESCROW BALANCES | |
| 01-06-12 01-10 | 168 | REPAY OF ESCROW ADVANCE | | | |
| 0.00 | 0.00 | 0.00 | 390.57- | 390.57 | ADVANCE REFUND |
| | | | | | 11-28-11 |
| 01-06-12 01-10 | 173 | PAYMENT | | | |
| 0.00 | 0.00 | 2,374.87 | 390.57 | | |
| | | | 16772.30- | NEW PRINCIPAL/ESCROW BALANCES | |
| 01-06-12 12-09 | 168 | REPAY OF ESCROW ADVANCE | | | |
| 0.00 | 0.00 | 0.00 | 390.57- | 390.57 | ADVANCE REFUND |
| | | | | | 11-28-11 |
| 01-06-12 12-09 | 173 | PAYMENT | | | |
| 0.00 | 0.00 | 2,374.87 | 390.57 | 5,530.88- | SUSPENSE |
| | | | 17162.87- | NEW PRINCIPAL/ESCROW BALANCES | |
| 12-22-11 00-00 | 630 | ATTORNEY ADVANCES | | | |
| 475.00 | 0.00 | 0.00 | 0.00 | | |
| 12-19-11 00-00 | 631 | PROPERTY PRESERVATION | | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |

Exhibit 13, Page 11 of 28

USB_0195

```
                    U.S. BANK HOME MORTGAGE
                    P.O. BOX 6060
                    NEWPORT BEACH, CA 92660
                    (800) 824-6902


                 CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 09/28/12
REQ BY A71                                                    PAGE    1


CAROL MEIER
61 RUDGEAR DR
WALNUT CREEK        CA 94596



LOAN NUMBER: ████6026
**************************************************************************
------------------------- CURRENT ACCOUNT INFORMATION --------------------
   DATE        TOTAL        PRINCIPAL      LOAN        CURRENT
 PAYMENT      PAYMENT      & INTEREST    INTEREST     PRINCIPAL       ESCROW
   DUE        AMOUNT        PAYMENT        RATE        BALANCE        BALANCE
 02-01-10    2,690.27      2,374.87      4.75000     591,312.56     18,685.13-
**************************************************************************
```

|               | ACTIVITY FOR PERIOD 01/01/10 - 09/27/12 | | | | |
|---|---|---|---|---|---|
| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | | EFFECTIVE DATE OF TRANSACTION |

```
   TRANSACTION    PRIN. PAID/              ESCROW PAID/ ----------OTHER------------
     AMOUNT        BALANCE     INTEREST    BALANCE    AMOUNT  CODE/DESCRIPTION
---------------------------------------------------------------------------
09-19-12  00-00  631  PROPERTY PRESERVATION
           9.50        0.00        0.00        0.00
09-17-12  02-10  152  LATE CHARGE ASSESSMENT
           0.00        0.00        0.00        0.00     147.93-1 LATE CHARGES
08-21-12  00-00  631  PROPERTY PRESERVATION
           9.50        0.00        0.00        0.00
08-16-12  02-10  152  LATE CHARGE ASSESSMENT
           0.00        0.00        0.00        0.00     147.93-1 LATE CHARGES
07-24-12  00-00  631  PROPERTY PRESERVATION
           9.50        0.00        0.00        0.00
07-16-12  02-10  152  LATE CHARGE ASSESSMENT
           0.00        0.00        0.00        0.00     147.93-1 LATE CHARGES
06-18-12  02-10  152  LATE CHARGE ASSESSMENT
           0.00        0.00        0.00        0.00     147.93-1 LATE CHARGES
06-18-12  00-00  631  PROPERTY PRESERVATION
           9.50        0.00        0.00        0.00
05-16-12  02-10  152  LATE CHARGE ASSESSMENT
           0.00        0.00        0.00        0.00     143.61-1 LATE CHARGES
04-18-12  00-00  631  PROPERTY PRESERVATION
           9.50        0.00        0.00        0.00
04-16-12  02-10  152  LATE CHARGE ASSESSMENT
           0.00        0.00        0.00        0.00     143.61-1 LATE CHARGES
03-20-12  00-00  631  PROPERTY PRESERVATION
           9.50        0.00        0.00        0.00
```

USB_0196

CAROL MEIER
LOAN NUMBER: ███████6026

```
                  ACTIVITY FOR PERIOD 04/06/06 - 06/28/17
PROCESS     DUE    TRANSACTION            TRANSACTION              EFFECTIVE DATE
DATE        DATE   CODE                   DESCRIPTION              OF TRANSACTION
---------------------------------------------------------------------------------
   TRANSACTION  PRIN. PAID/      ESCROW PAID/ -----------OTHER------------
   AMOUNT       BALANCE   INTEREST   BALANCE   AMOUNT   CODE/DESCRIPTION
---------------------------------------------------------------------------------
09-19-12  00-00  631  PROPERTY PRESERVATION
        9.50       0.00      0.00      0.00
09-17-12  02-10  152  LATE CHARGE ASSESSMENT
        0.00       0.00      0.00      0.00      147.93-1 LATE CHARGES
08-21-12  00-00  631  PROPERTY PRESERVATION
        9.50       0.00      0.00      0.00
08-16-12  02-10  152  LATE CHARGE ASSESSMENT
        0.00       0.00      0.00      0.00      147.93-1 LATE CHARGES
07-24-12  00-00  631  PROPERTY PRESERVATION
        9.50       0.00      0.00      0.00
07-16-12  02-10  152  LATE CHARGE ASSESSMENT
        0.00       0.00      0.00      0.00      147.93-1 LATE CHARGES
06-18-12  02-10  152  LATE CHARGE ASSESSMENT
        0.00       0.00      0.00      0.00      147.93-1 LATE CHARGES
06-18-12  00-00  631  PROPERTY PRESERVATION
        9.50       0.00      0.00      0.00
```

USB_0197

CAROL MEIER
LOAN NUMBER: ███████6026

ACTIVITY FOR PERIOD 04/06/06 - 06/28/17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | OTHER AMOUNT | CODE/DESCRIPTION |
|---|---|---|---|---|---|

| Date | Due | Code | Description | | |
|---|---|---|---|---|---|
| 03-28-13 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 03-18-13 | 02-10 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 145.44-1 | LATE CHARGES |
| 03-13-13 | 02-10 | 161 | ESCROW ADVANCE | | |
| 2,152.39 | 0.00 | 0.00 | 2152.39 | | |
| 03-13-13 | 03-13 | 312 | COUNTY TAXES | | |
| 2,152.39- | 0.00 | 0.00 | 2152.39- | | |
| | | | 22989.91- | NEW PRINCIPAL/ESCROW BALANCES | |
| 02-19-13 | 02-10 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 145.44-1 | LATE CHARGES |
| 02-19-13 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 01-25-13 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 01-16-13 | 02-10 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 145.44-1 | LATE CHARGES |
| 12-26-12 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 12-17-12 | 02-10 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 145.44-1 | LATE CHARGES |
| 12-13-12 | 00-00 | 630 | ATTORNEY ADVANCES | | |
| 1,076.20 | 0.00 | 0.00 | 0.00 | | |
| 11-21-12 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 11-16-12 | 02-10 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 147.93-1 | LATE CHARGES |
| 11-08-12 | 02-10 | 161 | ESCROW ADVANCE | | |
| 2,152.39 | 0.00 | 0.00 | 2152.39 | | |
| 11-08-12 | 11-12 | 312 | COUNTY TAXES | | |
| 2,152.39- | 0.00 | 0.00 | 2152.39- | | |
| | | | 20837.52- | NEW PRINCIPAL/ESCROW BALANCES | |
| 10-25-12 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 10-16-12 | 02-10 | 152 | LATE CHARGE ASSESSMENT | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 147.93-1 | LATE CHARGES |

USB_0198

CAROL MEIER
LOAN NUMBER: ████6026

ACTIVITY FOR PERIOD 04/06/06 - 06/28/17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | -----OTHER----- CODE/DESCRIPTION |
|---|---|---|---|---|---|
| 12-26-13 02-10 164  TAX REFUND DEPOSIT | | | | | |
| 38.05 | 0.00 | 0.00 | 38.05 | | |
| | | | | 25175.05- | NEW PRINCIPAL/ESCROW BALANCES |
| 12-24-13 00-00 601  MISC. CORPORATE DISBURSEMENT | | | | | |
| 105.00 | 0.00 | 0.00 | 0.00 | | |
| 12-24-13 00-00 601  MISC. CORPORATE DISBURSEMENT | | | | | |
| 105.00 | 0.00 | 0.00 | 0.00 | | |
| 12-17-13 00-00 631  PROPERTY PRESERVATION | | | | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 11-07-13 02-10 161  ESCROW ADVANCE | | | | | |
| 2,223.19 | 0.00 | 0.00 | 2223.19 | | |
| 11-07-13 11-13 312  COUNTY TAXES | | | | | |
| 2,223.19- | 0.00 | 0.00 | 2223.19- | | |
| | | | | 25213.10- | NEW PRINCIPAL/ESCROW BALANCES |
| 10-01-13 00-00 630  ATTORNEY ADVANCES | | | | | |
| 437.00 | 0.00 | 0.00 | 0.00 | | |
| 09-17-13 00-00 631  PROPERTY PRESERVATION | | | | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 08-29-13 00-00 630  ATTORNEY ADVANCES | | | | | |
| 1,722.00 | 0.00 | 0.00 | 0.00 | | |
| 06-25-13 00-00 631  PROPERTY PRESERVATION | | | | | |
| 105.00 | 0.00 | 0.00 | 0.00 | | |
| 06-11-13 00-00 631  PROPERTY PRESERVATION | | | | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 05-31-13 00-00 631  PROPERTY PRESERVATION | | | | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 05-30-13 00-00 601  MISC. CORPORATE DISBURSEMENT | | | | | |
| 30.00 | 0.00 | 0.00 | 0.00 | | |
| 05-30-13 00-00 601  MISC. CORPORATE DISBURSEMENT | | | | | |
| 350.00 | 0.00 | 0.00 | 0.00 | | |
| 05-16-13 02-10 152  LATE CHARGE ASSESSMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 145.44-1 | LATE CHARGES |
| 04-24-13 00-00 631  PROPERTY PRESERVATION | | | | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 04-16-13 02-10 152  LATE CHARGE ASSESSMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 145.44-1 | LATE CHARGES |

USB_0199

CAROL MEIER
LOAN NUMBER: ████6026

ACTIVITY FOR PERIOD 04/06/06 - 06/28/17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | --------OTHER-------- CODE/DESCRIPTION |
| 01-05-15 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 105.00- | 0.00 | 0.00 | 0.00 | | |
| 01-05-15 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 350.00- | 0.00 | 0.00 | 0.00 | | |
| 01-05-15 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 361.00- | 0.00 | 0.00 | 0.00 | | |
| 01-05-15 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 8,889.36- | 0.00 | 0.00 | 0.00 | | |
| 01-05-15 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 210.00- | 0.00 | 0.00 | 0.00 | | |
| 01-05-15 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 210.00- | 0.00 | 0.00 | 0.00 | | |
| 01-05-15 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 2,605.00- | 0.00 | 0.00 | 0.00 | | |
| 01-05-15 02-10 | 132 | LATE CHARGE ADJUSTMENT | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 5,906.36 | 1 LATE CHARGES |
| 11-21-14 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 20.00 | 0.00 | 0.00 | 0.00 | | |
| 11-21-14 00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 20.00- | 0.00 | 0.00 | 0.00 | | |
| 11-20-14 00-00 | 630 | ATTORNEY ADVANCES | | | |
| 3,994.76 | 0.00 | 0.00 | 0.00 | | |
| 09-04-14 00-00 | 631 | PROPERTY PRESERVATION | | | |
| 85.00 | 0.00 | 0.00 | 0.00 | | |
| 03-05-14 02-10 | 161 | ESCROW ADVANCE | | | |
| 2,185.14 | 0.00 | 0.00 | 2185.14 | | |
| 03-05-14 03-14 | 312 | COUNTY TAXES | | | |
| 2,185.14- | 0.00 | 0.00 | 2185.14- | | |
| | | | 27360.19- | | NEW PRINCIPAL/ESCROW BALANCES |
| 02-03-14 00-00 | 601 | MISC. CORPORATE DISBURSEMENT | | | |
| 105.00 | 0.00 | 0.00 | 0.00 | | |
| 01-30-14 00-00 | 601 | MISC. CORPORATE DISBURSEMENT | | | |
| 105.00 | 0.00 | 0.00 | 0.00 | | |
| 01-09-14 00-00 | 631 | PROPERTY PRESERVATION | | | |
| 9.50 | 0.00 | 0.00 | 0.00 | | |
| 12-26-13 02-10 | 168 | REPAY OF ESCROW ADVANCE | | | |
| 0.00 | 0.00 | 0.00 | 38.05- | 38.05 | ADVANCE REFUND |

CAROL MEIER
LOAN NUMBER: ████6026

ACTIVITY FOR PERIOD 04/06/06 - 06/28/17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | ------OTHER------ CODE/DESCRIPTION |
|---|---|---|---|---|---|

```
03-27-15  00-00  633  MISC. F/C AND B/R EXPENSES
    95.00       0.00      0.00      0.00
03-20-15  00-00  766  MISC. REPAYMENT
   105.00       0.00      0.00      0.00
03-19-15  00-00  745  CORP. ADVANCE ADJUSTMENT
    20.00       0.00      0.00      0.00
03-19-15  00-00  745  CORP. ADVANCE ADJUSTMENT
    20.00-      0.00      0.00      0.00
03-05-15  02-10  161  ESCROW ADVANCE
 2,222.07       0.00      0.00   2222.07
03-05-15  03-15  312  COUNTY TAXES
 2,222.07-      0.00      0.00   2222.07-
                                 29582.26-  NEW PRINCIPAL/ESCROW BALANCES
02-09-15  00-00  710  ATTORNEY ADVANCE REPAYMENT
   470.75       0.00      0.00      0.00
02-05-15  00-00  631  PROPERTY PRESERVATION
    15.00       0.00      0.00      0.00
02-02-15  00-00  601  MISC. CORPORATE DISBURSEMENT
   105.00       0.00      0.00      0.00
01-29-15  00-00  633  MISC. F/C AND B/R EXPENSES
    95.00       0.00      0.00      0.00
01-14-15  00-00  630  ATTORNEY ADVANCES
   650.00       0.00      0.00      0.00
01-05-15  00-00  745  CORP. ADVANCE ADJUSTMENT
 8,889.36       0.00      0.00      0.00
01-05-15  00-00  745  CORP. ADVANCE ADJUSTMENT
   210.00       0.00      0.00      0.00
01-05-15  00-00  745  CORP. ADVANCE ADJUSTMENT
   105.00       0.00      0.00      0.00
01-05-15  00-00  745  CORP. ADVANCE ADJUSTMENT
   350.00       0.00      0.00      0.00
01-05-15  00-00  745  CORP. ADVANCE ADJUSTMENT
   361.00       0.00      0.00      0.00
01-05-15  00-00  745  CORP. ADVANCE ADJUSTMENT
   210.00       0.00      0.00      0.00
01-05-15  00-00  745  CORP. ADVANCE ADJUSTMENT
 2,605.00       0.00      0.00      0.00
```

USB_0201

CAROL MEIER
LOAN NUMBER: ████6026

ACTIVITY FOR PERIOD 04/06/06 ~ 06/28/17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | -----------OTHER------------- CODE/DESCRIPTION |
|---|---|---|---|---|---|
| 01-11-16 02-10 161 | ESCROW ADVANCE | | | | |
| 2,254.90 | 0.00 | 0.00 | 2254.90 | | |
| 01-11-16 03-16 312 | COUNTY TAXES | | | | |
| 2,254.90- | 0.00 | 0.00 | 2254.90- | | |
| | | | 31837.16- | | NEW PRINCIPAL/ESCROW BALANCES |
| 01-05-16 00-00 631 | PROPERTY PRESERVATION | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 12-21-15 00-00 745 | CORP. ADVANCE ADJUSTMENT | | | | |
| 274.25 | 0.00 | 0.00 | 0.00 | | |
| 12-21-15 00-00 745 | CORP. ADVANCE ADJUSTMENT | | | | |
| 274.25- | 0.00 | 0.00 | 0.00 | | |
| 12-02-15 00-00 631 | PROPERTY PRESERVATION | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 11-03-15 00-00 631 | PROPERTY PRESERVATION | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 10-07-15 00-00 631 | PROPERTY PRESERVATION | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 09-01-15 00-00 631 | PROPERTY PRESERVATION | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 08-17-15 00-00 631 | PROPERTY PRESERVATION | | | | |
| 85.00 | 0.00 | 0.00 | 0.00 | | |
| 08-04-15 00-00 631 | PROPERTY PRESERVATION | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 07-08-15 00-00 745 | CORP. ADVANCE ADJUSTMENT | | | | |
| 190.00 | 0.00 | 0.00 | 0.00 | | |
| 07-08-15 00-00 745 | CORP. ADVANCE ADJUSTMENT | | | | |
| 190.00- | 0.00 | 0.00 | 0.00 | | |
| 07-06-15 00-00 631 | PROPERTY PRESERVATION | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 06-03-15 00-00 631 | PROPERTY PRESERVATION | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 05-15-15 00-00 633 | MISC. F/C AND B/R EXPENSES | | | | |
| 95.00 | 0.00 | 0.00 | 0.00 | | |
| 05-06-15 00-00 631 | PROPERTY PRESERVATION | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-02-15 00-00 631 | PROPERTY PRESERVATION | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |

USB_0202

CAROL MEIER
LOAN NUMBER: ████6026

ACTIVITY FOR PERIOD 04/06/06 - 06/28/17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | ------------OTHER------------ CODE/DESCRIPTION |
|---|---|---|---|---|---|
| 08-17-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 30.00 | 0.00 | 0.00 | 0.00 | | |
| 08-17-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 305.00- | 0.00 | 0.00 | 0.00 | | |
| 08-17-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 30.00- | 0.00 | 0.00 | 0.00 | | |
| 08-01-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 15.00- | 0.00 | 0.00 | 0.00 | | |
| 08-01-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 07-29-16  00-00  631  PROPERTY PRESERVATION | | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 07-19-16  00-00  631  PROPERTY PRESERVATION | | | | | |
| 95.00 | 0.00 | 0.00 | 0.00 | | |
| 07-19-16  00-00  631  PROPERTY PRESERVATION | | | | | |
| 105.00 | 0.00 | 0.00 | 0.00 | | |
| 07-19-16  00-00  631  PROPERTY PRESERVATION | | | | | |
| 105.00 | 0.00 | 0.00 | 0.00 | | |
| 06-29-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 15.00- | 0.00 | 0.00 | 0.00 | | |
| 06-29-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 06-28-16  00-00  631  PROPERTY PRESERVATION | | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 06-01-16  00-00  631  PROPERTY PRESERVATION | | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-28-16  00-00  631  PROPERTY PRESERVATION | | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 03-29-16  00-00  631  PROPERTY PRESERVATION | | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 03-04-16  00-00  631  PROPERTY PRESERVATION | | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 02-08-16  00-00  631  PROPERTY PRESERVATION | | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 01-13-16  00-00  630  ATTORNEY ADVANCES | | | | | |
| 49.00 | 0.00 | 0.00 | 0.00 | | |

CAROL MEIER
LOAN NUMBER: ████6026

```
                ACTIVITY FOR PERIOD 04/06/06 - 06/28/17
PROCESS   DUE    TRANSACTION            TRANSACTION              EFFECTIVE DATE
DATE      DATE   CODE                   DESCRIPTION              OF TRANSACTION
------------------------------------------------------------------------------
   TRANSACTION  PRIN. PAID/         ESCROW PAID/ ------------OTHER------------
     AMOUNT      BALANCE   INTEREST   BALANCE  AMOUNT  CODE/DESCRIPTION
------------------------------------------------------------------------------
10-25-16  00-00  745  CORP. ADVANCE ADJUSTMENT
       8.44         0.00      0.00      0.00
10-25-16  00-00  745  CORP. ADVANCE ADJUSTMENT
     147.22         0.00      0.00      0.00
10-25-16  00-00  745  CORP. ADVANCE ADJUSTMENT
      15.00         0.00      0.00      0.00
10-25-16  00-00  745  CORP. ADVANCE ADJUSTMENT
       8.44-        0.00      0.00      0.00
10-25-16  00-00  745  CORP. ADVANCE ADJUSTMENT
     147.22-        0.00      0.00      0.00
10-25-16  00-00  745  CORP. ADVANCE ADJUSTMENT
      15.00-        0.00      0.00      0.00
10-21-16  00-00  630  ATTORNEY ADVANCES
       8.44         0.00      0.00      0.00
10-12-16  00-00  630  ATTORNEY ADVANCES
     467.22         0.00      0.00      0.00
10-05-16  00-00  631  PROPERTY PRESERVATION
      85.00         0.00      0.00      0.00
09-28-16  00-00  745  CORP. ADVANCE ADJUSTMENT
      15.00-        0.00      0.00      0.00
09-28-16  00-00  745  CORP. ADVANCE ADJUSTMENT
      15.00         0.00      0.00      0.00
09-27-16  00-00  631  PROPERTY PRESERVATION
      15.00         0.00      0.00      0.00
09-02-16  00-00  745  CORP. ADVANCE ADJUSTMENT
      15.00         0.00      0.00      0.00
09-02-16  00-00  745  CORP. ADVANCE ADJUSTMENT
      15.00-        0.00      0.00      0.00
09-01-16  00-00  745  CORP. ADVANCE ADJUSTMENT
      15.00-        0.00      0.00      0.00
09-01-16  00-00  745  CORP. ADVANCE ADJUSTMENT
      15.00         0.00      0.00      0.00
08-31-16  00-00  631  PROPERTY PRESERVATION
      15.00         0.00      0.00      0.00
08-17-16  00-00  745  CORP. ADVANCE ADJUSTMENT
     305.00         0.00      0.00      0.00
```

CAROL MEIER
LOAN NUMBER: ▇▇▇6026

ACTIVITY FOR PERIOD 04/06/06 ~ 06/28/17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | ------------OTHER------------- CODE/DESCRIPTION |
|---|---|---|---|---|---|
| 12-14-16  00-00  631  PROPERTY PRESERVATION | | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 12-07-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 100.00 | 0.00 | 0.00 | 0.00 | | |
| 12-07-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 100.00- | 0.00 | 0.00 | 0.00 | | |
| 12-06-16  00-00  630  ATTORNEY ADVANCES | | | | | |
| 100.00 | 0.00 | 0.00 | 0.00 | | |
| 11-22-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 1,180.00 | 0.00 | 0.00 | 0.00 | | |
| 11-22-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 1,180.00- | 0.00 | 0.00 | 0.00 | | |
| 11-21-16  00-00  630  ATTORNEY ADVANCES | | | | | |
| 1,180.00 | 0.00 | 0.00 | 0.00 | | |
| 11-16-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 175.00 | 0.00 | 0.00 | 0.00 | | |
| 11-16-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 175.00- | 0.00 | 0.00 | 0.00 | | |
| 11-15-16  00-00  630  ATTORNEY ADVANCES | | | | | |
| 175.00 | 0.00 | 0.00 | 0.00 | | |
| 11-14-16  02-10  161  ESCROW ADVANCE | | | | | |
| 2,310.82 | 0.00 | 0.00 | 2310.82 | | |
| 11-14-16  11-16  312  COUNTY TAXES | | | | | |
| 2,310.82- | 0.00 | 0.00 | 2310.82- | | |
| | | | 34147.98- | NEW PRINCIPAL/ESCROW BALANCES | |
| 11-02-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 100.00 | 0.00 | 0.00 | 0.00 | | |
| 11-02-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 100.00- | 0.00 | 0.00 | 0.00 | | |
| 11-01-16  00-00  630  ATTORNEY ADVANCES | | | | | |
| 100.00 | 0.00 | 0.00 | 0.00 | | |
| 10-26-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 95.00 | 0.00 | 0.00 | 0.00 | | |
| 10-26-16  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 95.00- | 0.00 | 0.00 | 0.00 | | |
| 10-25-16  00-00  633  MISC. F/C AND B/R EXPENSES | | | | | |
| 95.00 | 0.00 | 0.00 | 0.00 | | |

**USB_0205**

CAROL MEIER
LOAN NUMBER: ████6026

```
                 ACTIVITY FOR PERIOD 04/06/06 - 06/28/17
PROCESS   DUE    TRANSACTION           TRANSACTION         EFFECTIVE DATE
DATE      DATE   CODE                  DESCRIPTION         OF TRANSACTION
------------------------------------------------------------------------
   TRANSACTION  PRIN. PAID/        ESCROW PAID/ ------------OTHER-------------
     AMOUNT     BALANCE    INTEREST  BALANCE   AMOUNT   CODE/DESCRIPTION
------------------------------------------------------------------------
02-14-17  00-00  631  PROPERTY PRESERVATION
       15.00          0.00       0.00      0.00
01-30-17  00-00  745  CORP. ADVANCE ADJUSTMENT
      155.00          0.00       0.00      0.00
01-30-17  00-00  745  CORP. ADVANCE ADJUSTMENT
      155.00-         0.00       0.00      0.00
01-27-17  00-00  630  ATTORNEY ADVANCES
      155.00          0.00       0.00      0.00
01-26-17  00-00  630  ATTORNEY ADVANCES
      500.00          0.00       0.00      0.00
01-18-17  00-00  633  MISC. F/C AND B/R EXPENSES
       95.00          0.00       0.00      0.00
01-13-17  00-00  745  CORP. ADVANCE ADJUSTMENT
       75.00          0.00       0.00      0.00
01-13-17  00-00  745  CORP. ADVANCE ADJUSTMENT
       75.00-         0.00       0.00      0.00
01-12-17  00-00  630  ATTORNEY ADVANCES
       75.00          0.00       0.00      0.00
01-11-17  00-00  631  PROPERTY PRESERVATION
       15.00          0.00       0.00      0.00
01-11-17  00-00  745  CORP. ADVANCE ADJUSTMENT
      100.00          0.00       0.00      0.00
01-11-17  00-00  745  CORP. ADVANCE ADJUSTMENT
      100.00-         0.00       0.00      0.00
01-10-17  00-00  630  ATTORNEY ADVANCES
      100.00          0.00       0.00      0.00
01-10-17  00-00  630  ATTORNEY ADVANCES
      300.00          0.00       0.00      0.00
12-21-16  02-10  168  REPAY OF ESCROW ADVANCE
        0.00          0.00       0.00   2310.82-  2,310.82   ADVANCE REFUND
12-21-16  02-10  164  TAX REFUND DEPOSIT
    2,310.82          0.00       0.00   2310.82
                                       31837.16-  NEW PRINCIPAL/ESCROW BALANCES
12-20-16  00-00  631  PROPERTY PRESERVATION
       95.00          0.00       0.00      0.00
12-19-16  00-00  630  ATTORNEY ADVANCES
      100.00          0.00       0.00      0.00
```

CAROL MEIER
LOAN NUMBER: ████6026

ACTIVITY FOR PERIOD 04/06/06 - 06/28/17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | --------OTHER-------- AMOUNT | CODE/DESCRIPTION |
|---|---|---|---|---|---|
| 04-14-17  00-00  631  PROPERTY PRESERVATION | | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 03-30-17  00-00  630  ATTORNEY ADVANCES | | | | | |
| 50.00 | 0.00 | 0.00 | 0.00 | | |
| 03-30-17  00-00  630  ATTORNEY ADVANCES | | | | | |
| 50.00 | 0.00 | 0.00 | 0.00 | | |
| 03-16-17  00-00  631  PROPERTY PRESERVATION | | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 03-09-17  02-10  161  ESCROW ADVANCE | | | | | |
| 2,310.82 | 0.00 | 0.00 | 2310.82 | | |
| 03-09-17  03-17  312  COUNTY TAXES | | | | | |
| 2,310.82- | 0.00 | 0.00 | 2310.82- | | |
| | | | 34147.98- | NEW PRINCIPAL/ESCROW BALANCES | |
| 03-07-17  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 274.00 | 0.00 | 0.00 | 0.00 | | |
| 03-07-17  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 95.00 | 0.00 | 0.00 | 0.00 | | |
| 03-07-17  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 274.00- | 0.00 | 0.00 | 0.00 | | |
| 03-07-17  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 95.00- | 0.00 | 0.00 | 0.00 | | |
| 03-06-17  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 50.00 | 0.00 | 0.00 | 0.00 | | |
| 03-06-17  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 50.00- | 0.00 | 0.00 | 0.00 | | |
| 03-03-17  00-00  630  ATTORNEY ADVANCES | | | | | |
| 50.00 | 0.00 | 0.00 | 0.00 | | |
| 03-03-17  00-00  630  ATTORNEY ADVANCES | | | | | |
| 50.00 | 0.00 | 0.00 | 0.00 | | |
| 02-17-17  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 50.00 | 0.00 | 0.00 | 0.00 | | |
| 02-17-17  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 50.00- | 0.00 | 0.00 | 0.00 | | |
| 02-16-17  00-00  630  ATTORNEY ADVANCES | | | | | |
| 50.00 | 0.00 | 0.00 | 0.00 | | |
| 02-16-17  00-00  630  ATTORNEY ADVANCES | | | | | |
| 50.00 | 0.00 | 0.00 | 0.00 | | |

USB_0207

CAROL MEIER
61 RUDGEAR DR
WALNUT CREEK        CA 94596

LOAN NUMBER: ████6026
**************************************************************************
------------------------- CURRENT ACCOUNT INFORMATION -------------------

| DATE PAYMENT DUE | TOTAL PAYMENT AMOUNT | PRINCIPAL & INTEREST PAYMENT | LOAN INTEREST RATE | CURRENT PRINCIPAL BALANCE | ESCROW BALANCE |
|---|---|---|---|---|---|
| 02-01-10 | 2,374.90 | 2,374.87 | 4.75000 | 597,312.56 | 31,837.16- |
| 2ND MORTGAGE: | | | 0.00   0.00000 | 0.00 | |

**************************************************************************

ACTIVITY FOR PERIOD 04/06/06 - 06/28/17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | ------------OTHER------------- AMOUNT | CODE/DESCRIPTION |
|---|---|---|---|---|---|

| 06-16-17 02-10 | 168 REPAY OF ESCROW ADVANCE | | | | |
|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 2310.82- | 2,310.82 | ADVANCE REFUND |
| 06-16-17 02-10 | 164 TAX REFUND DEPOSIT | | | | |
| 2,310.82 | 0.00 | 0.00 | 2310.82 | | |
| | | | 31837.16- | NEW PRINCIPAL/ESCROW BALANCES | |
| 06-16-17 00-00 | 745 CORP. ADVANCE ADJUSTMENT | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 06-16-17 00-00 | 745 CORP. ADVANCE ADJUSTMENT | | | | |
| 15.00- | 0.00 | 0.00 | 0.00 | | |
| 06-15-17 00-00 | 633 MISC. F/C AND B/R EXPENSES | | | | |
| 95.00 | 0.00 | 0.00 | 0.00 | | |
| 06-15-17 00-00 | 631 PROPERTY PRESERVATION | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 05-23-17 00-00 | 631 PROPERTY PRESERVATION | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 05-05-17 00-00 | 630 ATTORNEY ADVANCES | | | | |
| 50.00 | 0.00 | 0.00 | 0.00 | | |
| 05-05-17 00-00 | 630 ATTORNEY ADVANCES | | | | |
| 50.00 | 0.00 | 0.00 | 0.00 | | |
| 04-17-17 00-00 | 745 CORP. ADVANCE ADJUSTMENT | | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-17-17 00-00 | 745 CORP. ADVANCE ADJUSTMENT | | | | |
| 15.00- | 0.00 | 0.00 | 0.00 | | |

USB_0208

CAROL MEIER
MICHAEL YESK ESQ YESK LAW
70 DORAY DR SUITE 16
PLEASANT HILL     CA 94523


LOAN NUMBER: ████6026
*********************************************************************
----------------------- CURRENT ACCOUNT INFORMATION -----------------------

| DATE PAYMENT DUE | TOTAL PAYMENT AMOUNT | PRINCIPAL & INTEREST PAYMENT | LOAN INTEREST RATE | CURRENT PRINCIPAL BALANCE | ESCROW BALANCE |
|---|---|---|---|---|---|
| 02-01-10 | 2,374.90 | 2,374.87 | 4.75000 | 597,312.56 | 42,874.03- |
| 2ND MORTGAGE: | | | 0.00  0.00000 | 0.00 | |

*********************************************************************

ACTIVITY FOR PERIOD 06/01/17 - 06/13/18

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | ------------OTHER------------ AMOUNT | CODE/DESCRIPTION |
|---|---|---|---|---|---|
| 06-12-18  00-00 | 631 | PROPERTY PRESERVATION | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 05-15-18  00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 05-15-18  00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 15.00- | 0.00 | 0.00 | 0.00 | | |
| 05-14-18  00-00 | 631 | PROPERTY PRESERVATION | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-17-18  00-00 | 631 | PROPERTY PRESERVATION | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 03-13-18  00-00 | 631 | PROPERTY PRESERVATION | | | |
| 20.00 | 0.00 | 0.00 | 0.00 | | |
| 03-09-18  02-10 | 161 | ESCROW ADVANCE | | | |
| 4,200.11 | 0.00 | 0.00 | 4200.11 | | |
| 03-09-18  03-18 | 312 | COUNTY TAXES | | | |
| 4,200.11- | 0.00 | 0.00 | 4200.11- | | |
| | | | 42874.03- | NEW PRINCIPAL/ESCROW BALANCES | |
| 03-02-18  00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | |
| 03-02-18  00-00 | 745 | CORP. ADVANCE ADJUSTMENT | | | |
| 15.00- | 0.00 | 0.00 | 0.00 | | |
| 02-22-18  02-10 | 161 | ESCROW ADVANCE | | | |
| 2,636.65 | 0.00 | 0.00 | 2636.65 | | |

USB_0209

CAROL MEIER
LOAN NUMBER: ▮▮▮▮6026

```
                     ACTIVITY FOR PERIOD 06/01/17 - 06/13/18
PROCESS   DUE   TRANSACTION           TRANSACTION           EFFECTIVE DATE
DATE      DATE  CODE                  DESCRIPTION           OF TRANSACTION
--------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/       ESCROW PAID/ -----------OTHER-------------
  AMOUNT       BALANCE   INTEREST   BALANCE   AMOUNT  CODE/DESCRIPTION
--------------------------------------------------------------------------
02-22-18  02-18  315  WATER/IRRIGATION
       125.55-       0.00      0.00    125.55-
                                     38673.92-  NEW PRINCIPAL/ESCROW BALANCES
02-22-18  02-18  315  WATER/IRRIGATION
     2,511.10-       0.00      0.00   2511.10-
                                     38548.37-  NEW PRINCIPAL/ESCROW BALANCES
02-13-18  00-00  745  CORP. ADVANCE ADJUSTMENT
       100.00        0.00      0.00      0.00
02-13-18  00-00  745  CORP. ADVANCE ADJUSTMENT
       100.00-       0.00      0.00      0.00
02-12-18  00-00  745  CORP. ADVANCE ADJUSTMENT
       100.00-       0.00      0.00      0.00
02-12-18  00-00  745  CORP. ADVANCE ADJUSTMENT
       100.00        0.00      0.00      0.00
02-09-18  00-00  631  PROPERTY PRESERVATION
        20.00        0.00      0.00      0.00
02-09-18  00-00  745  CORP. ADVANCE ADJUSTMENT
       285.00        0.00      0.00      0.00
02-09-18  00-00  745  CORP. ADVANCE ADJUSTMENT
       863.00        0.00      0.00      0.00
02-09-18  00-00  745  CORP. ADVANCE ADJUSTMENT
        68.02        0.00      0.00      0.00
02-09-18  00-00  745  CORP. ADVANCE ADJUSTMENT
        15.00        0.00      0.00      0.00
02-09-18  00-00  745  CORP. ADVANCE ADJUSTMENT
       285.00-       0.00      0.00      0.00
02-09-18  00-00  745  CORP. ADVANCE ADJUSTMENT
        15.00-       0.00      0.00      0.00
02-09-18  00-00  745  CORP. ADVANCE ADJUSTMENT
       863.00-       0.00      0.00      0.00
02-09-18  00-00  745  CORP. ADVANCE ADJUSTMENT
        68.02-       0.00      0.00      0.00
01-10-18  00-00  632  STATUTORY EXPENSES
        85.00        0.00      0.00      0.00
01-10-18  00-00  631  PROPERTY PRESERVATION
        20.00        0.00      0.00      0.00
```

USB_0210

CAROL MEIER
LOAN NUMBER: ▓▓▓▓6026

```
                  ACTIVITY FOR PERIOD 06/01/17 - 06/13/18
PROCESS    DUE     TRANSACTION         TRANSACTION              EFFECTIVE DATE
DATE       DATE    CODE                DESCRIPTION              OF TRANSACTION
---------------------------------------------------------------------------
   TRANSACTION  PRIN. PAID/         ESCROW PAID/ -----------OTHER-------------
    AMOUNT       BALANCE   INTEREST   BALANCE    AMOUNT  CODE/DESCRIPTION
---------------------------------------------------------------------------
01-09-18  00-00  745  CORP. ADVANCE ADJUSTMENT
    9,099.36-      0.00      0.00      0.00
01-09-18  00-00  745  CORP. ADVANCE ADJUSTMENT
    9,099.36       0.00      0.00      0.00
12-13-17  00-00  745  CORP. ADVANCE ADJUSTMENT
       20.00       0.00      0.00      0.00
12-13-17  00-00  745  CORP. ADVANCE ADJUSTMENT
       20.00-      0.00      0.00      0.00
12-12-17  00-00  631  PROPERTY PRESERVATION
       20.00       0.00      0.00      0.00
11-17-17  00-00  631  PROPERTY PRESERVATION
       15.00       0.00      0.00      0.00
11-09-17  02-10  161  ESCROW ADVANCE
    4,200.11       0.00      0.00   4200.11
11-09-17  11-17  312  COUNTY TAXES
    4,200.11-      0.00      0.00   4200.11-
                                   36037.27-   NEW PRINCIPAL/ESCROW BALANCES
10-17-17  00-00  745  CORP. ADVANCE ADJUSTMENT
       15.00       0.00      0.00      0.00
10-17-17  00-00  745  CORP. ADVANCE ADJUSTMENT
       15.00-      0.00      0.00      0.00
10-16-17  00-00  631  PROPERTY PRESERVATION
       15.00       0.00      0.00      0.00
10-10-17  00-00  630  ATTORNEY ADVANCES
      250.00       0.00      0.00      0.00
09-20-17  00-00  633  MISC. F/C AND B/R EXPENSES
       95.00       0.00      0.00      0.00
09-18-17  00-00  631  PROPERTY PRESERVATION
       15.00       0.00      0.00      0.00
09-13-17  00-00  630  ATTORNEY ADVANCES
      100.00       0.00      0.00      0.00
08-15-17  00-00  631  PROPERTY PRESERVATION
       15.00       0.00      0.00      0.00
07-31-17  00-00  630  ATTORNEY ADVANCES
      100.00       0.00      0.00      0.00
07-26-17  00-00  630  ATTORNEY ADVANCES
       30.00       0.00      0.00      0.00
```

USB_0211

CAROL MEIER
LOAN NUMBER:  ████6026

                ACTIVITY FOR PERIOD 06/01/17 - 06/13/18
PROCESS    DUE      TRANSACTION           TRANSACTION              EFFECTIVE DATE
DATE       DATE     CODE                  DESCRIPTION              OF TRANSACTION
-------------------------------------------------------------------------------
   TRANSACTION   PRIN. PAID/        ESCROW PAID/ -----------OTHER-------------
     AMOUNT       BALANCE    INTEREST    BALANCE    AMOUNT  CODE/DESCRIPTION
-------------------------------------------------------------------------------
07-24-17  00-00  633  MISC. F/C AND B/R EXPENSES
      95.00         0.00       0.00      0.00
07-18-17  00-00  633  MISC. F/C AND B/R EXPENSES
      95.00         0.00       0.00      0.00
07-14-17  00-00  631  PROPERTY PRESERVATION
      15.00         0.00       0.00      0.00
07-11-17  00-00  630  ATTORNEY ADVANCES
     100.00         0.00       0.00      0.00
07-05-17  00-00  632  STATUTORY EXPENSES
     863.00         0.00       0.00      0.00
07-05-17  00-00  632  STATUTORY EXPENSES
      68.02         0.00       0.00      0.00
06-16-17  02-10  168  REPAY OF ESCROW ADVANCE
       0.00         0.00       0.00   2310.82-   2,310.82   ADVANCE REFUND
06-16-17  02-10  164  TAX REFUND DEPOSIT
   2,310.82         0.00       0.00   2310.82
                                     31837.16-   NEW PRINCIPAL/ESCROW BALANCES
06-16-17  00-00  745  CORP. ADVANCE ADJUSTMENT
      15.00         0.00       0.00      0.00
06-16-17  00-00  745  CORP. ADVANCE ADJUSTMENT
      15.00-        0.00       0.00      0.00
06-15-17  00-00  633  MISC. F/C AND B/R EXPENSES
      95.00         0.00       0.00      0.00
06-15-17  00-00  631  PROPERTY PRESERVATION
      15.00         0.00       0.00      0.00

USB_0212

Exhibit 14

APN: 187-032-011-4
Recording requested by:

**Title365**

When recorded mail to:

Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101
619-645-7711

CONTRA COSTA Co Recorder Office
JOSEPH CANCIAMILLA, Clerk-Recorder
DOC- 2015-0237834-00
Check Number
Friday, NOV 13, 2015 10:57:00
MOD    $2.00 | REC  $12.00 | FTC   $1.00
DAF    $2.70 | REF   $0.30 | RED   $1.00
ERD    $1.00 |
Tll Pd    $20.00      Nbr-0002441981
                                    lrc / RJ / 1-2

TS No.: CA-15-684699-BF                    Space above this line for recorders use

# Substitution of Trustee

WHEREAS, **Carol Meier, a married woman as her sole and separate property** was the original Trustor, **DSL Service Company, a California Corporation** was the original Trustee, and **Downey Savings and Loan Association, F.A.** was the original Beneficiary under that certain Deed of Trust dated **3/30/2006** and recorded on **4/6/2006** as Instrument No. 2006-0106478-00    of Official Records of **CONTRA COSTA** County, **CA**; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes **QUALITY LOAN SERVICE CORPORATION** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

USB_0042

TS No.: **CA-15-684699-BF**

**U.S. Bank National Association**

Signed by: 

Print Name: Christina J. Gordon, Assistant Vice President

Date: __11-4-15__

State of Kentucky)

County of Daviess                    )

The foregoing instrument was acknowledged before me this __11-4-15__ (date) by
Christina J. Gordon, Assistant Vice President of U.S. Bank National
Association, a federally-chartered banking association, on behalf of U.S. Bank National
Association.

_____ (seal)
(Signature of notary)

Notary Public, State at Large                    (Title or rank)
__532173__                                       (Serial number, if any)

OFFICIAL SEAL
**LORRIE MOORE**
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires 4-16-2019
ID # 532173

"END OF DOC"

Exhibit 15

20189002399400005
**CONTRA COSTA Co Recorder Office**
**JOSEPH CANCIAMILLA, Clerk-Recorder**
**DOC 2018-0023994-00**
**Acct 2795-SPL Title 365 Newport Beach**
**Thursday, FEB 15, 2018 09:21:23**
**SB2   $75.00|MOD   $5.00|REC   $15.00**
**FTC   $4.00|DAF   $2.70|REF   $0.30**
**RED   $1.00|ERD   $1.00|**
**Ttl Pd   $104.00       Nbr-0003145067**
**AAV/RC/1-5**

APN No.: **187-032-011-4**
Recording requested by:
Quality Loan Service Corp

Title365
When recorded mail to:
Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101

---

TS No.: **CA-15-684699-BF**                                      Space above this line for Recorder's use
Order No.: **730-1506561-70**
Property Address: **61 RUDGEAR DRIVE, WALNUT CREEK, CA 94596**

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE
COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code § 2923.3)
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION,** and you may have the legal right to bring your account in good standing
by paying all of your past due payments plus permitted costs and expenses within the time
permitted by law for reinstatement of your account, which is normally five business days prior to
the date set for the sale of your property. No sale date may be set until approximately 90 days
from the date this Notice of Default may be recorded (which date of recordation appears on this
notice). This amount is **$265,514.53** as of **2/13/2018** and will increase until your account
becomes current.

While your property is in foreclosure, you still must pay other obligations (such as
insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make
future payments on the loan, pay taxes on the property, provide insurance on the property, or pay
other obligations as required in the note and deed of trust or mortgage, the beneficiary or
mortgagee may insist that you do so in order to reinstate your account in good standing. In
addition, the beneficiary or mortgagee may require as a condition of reinstatement that you
provide reliable written evidence that you paid all senior liens, property taxes, and hazard
insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization
of the entire amount you must pay. You may not have to pay the entire unpaid portion of your
account, even though full payment was demanded, but you must pay all amounts in default at the
time payment is made. However, you and your beneficiary or mortgagee may mutually agree in
writing prior to the time the notice of sale is posted (which may not be earlier than three-months

after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**U.S. Bank National Association**
**C/O Quality Loan Service Corporation**
**411 Ivy Street**
**San Diego, CA 92101**
**619-645-7711**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **3/30/2006**, executed by **Carol Meier, a married woman as her sole and separate property,** as Trustor, to secure certain obligations in favor of **Downey Savings and Loan Association, F.A.,** as beneficiary, recorded 4/6/2006, as Instrument No. **2006-0106478-00,** of Official Records in the Office of the Recorder of **CONTRA COSTA** County, **California** describing land therein: **as more fully described in said Deed of Trust.**

Said obligations including **1** NOTE(S) FOR THE ORIGINAL sum of **$600,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

> **The installments of principal and interest which became due on 2/1/2010, and all subsequent installments of principal and interest through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect and preserve its security, all of which must be paid as a condition of reinstatement, including all sums that shall accrue through reinstatement or pay-off. Nothing in this notice shall be construed as a waiver of any fees owing to the Beneficiary under the Deed of Trust pursuant to the terms of the loan documents.**

**USB_0080**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Pursuant to the attached Declaration, the mortgage servicer declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.55 or § 2923.5, or is otherwise exempt from the requirements of § 2923.55 and §2923.5.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Dated: 2/13/18

**Quality Loan Service Corp., Trustee**

By: January Crawford, Assistant Secretary

USB_0081

**CALIFORNIA DECLARATION OF COMPLIANCE**
**(CAL. CIV. CODE § 2923.55(e))**

Borrower(s):      CAROL MEIER,
Property Address:  61 RUDGEAR DRIVE, WALNUT CREEK, CA 94596
Trustee Sale No.:    CA-15-684699-BF

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares as follows:

1. [  ] The mortgage servicer has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55(b)(2). Initial contact was made on _____.

2. [  ] The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code § 2923.55(f) but has not made contact despite such due diligence. The due diligence efforts were satisfied on _____.

3. [ x ] No contact was required because the individual did not meet the definition of "borrower" under California Civil Code § 2920.5(c).

4. [  ] The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" residential real property as defined by California Civil Code § 2924.15.

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

U.S. BANK NATIONAL ASSOCIATION

Dated: _November 3, 2015_

_____
Signature of Agent or Employee

Audra L. Casey, Assistant Vice President
_____
Printed Name of Agent or Employee

ATTACHMENT TO NOTICE OF DEFAULT

Exhibit 15, Page 4 of 5

USB_0082

State of Kentucky
County of Daviess

The foregoing instrument was subscribed and sworn to before me this $\underline{11\text{-}3\text{-}15}$
(date), by Audra L. Casey, Assistant Vice President (name(s) and title(s) of authorized
affiant(s)) of U.S. Bank National Association, a federally chartered banking
association, on behalf of U.S. Bank National Association.



(signature of notary)

(seal)

State at Large
(title or rank)



OFFICIAL SEAL
KINDRA CABELL
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires 4-18-2019
ID # 532172

Edited 02/04/2015

USB_0083

Exhibit 16

Recording requested by:
Quality Loan Service Corp.
*Title365*
When recorded mail to:
Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101

2018008197400002
**CONTRA COSTA Co Recorder Office**
**JOSEPH CANCIAMILLA, Clerk-Recorder**
**DOC 2018-0081974-00**
**Acct 2795-SPL Title 365 Newport Beach**
**Thursday, MAY 24, 2018 08:10:38**
**SB2 $75.00|MOD $2.00|REC $12.00**
**FTC $1.00|DAF $2.70|REF $0.30**
**RED $1.00|ERD $1.00|**
**Ttl Pd $95.00 Nbr-0003218234**
**mkk/RC/1-2**

---

TS No. CA-15-684699-BF
Order No.: 730-1506561-70

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code 2923.3)
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/30/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial Code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):       **Carol Meier, a married woman as her sole and separate property**
Recorded:         **4/6/2006** as Instrument No. **2006-0106478-00**      of Official Records in the office of the Recorder of **CONTRA COSTA** County, California;

Date of Sale:    **7/3/2018 at 9:00 AM**
Place of Sale:    **At the Pleasant Hill Community Center, located at 320 Civic Drive, Pleasant Hill, CA 94523. In the Auction.com Room**
Amount of unpaid balance and other charges: **$817,983.03**
The purported property address is:      **61 RUDGEAR DRIVE, WALNUT CREEK, CA 94596**
Assessor's Parcel No.: **187-032-011-4**

---

USB_0084

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **800-280-2832** for information regarding the trustee's sale or visit this Internet Web site **http://www.qualityloan.com**, using the file number assigned to this foreclosure by the Trustee: **CA-15-684699-BF**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the sale is set aside for any reason, including if the Trustee is unable to convey title, the Purchaser at the sale shall be entitled only to a return of the monies paid to the Trustee. This shall be the Purchaser's sole and exclusive remedy. The purchaser shall have no further recourse against the Trustor, the Trustee, the Beneficiary, the Beneficiary's Agent, or the Beneficiary's Attorney.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Date: 5/22/2018

**Quality Loan Service Corporation**
**411 Ivy Street**
**San Diego, CA 92101**
**619-645-7711 For NON SALE information only**
**Sale Line: 800-280-2832**
**Or Login to: http://www.qualityloan.com**
**Reinstatement Line: (866) 645-7711 Ext 5318**

Quality Loan Service Corp. by: Ronald Alonzo, Assistant Secretary

USB_0085

Exhibit 17

Title365
Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101

COPY of Document Recorded at
Contra Costa, CA County Recorder
2018-0124087 BK:  PG:
08/03/2018   has not been compared with
original. Original will be returned when
process has been completed.

Fee: 20.00 DTT: 0.00 CA-SB2: 75.00
Total: 95.00

TS No.  CA-15-684699-BF
Order No.: 730-1506561-70

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code 2923.3)

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/30/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial Code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):        **Carol Meier, a married woman as her sole and separate property**
Recorded:        4/6/2006 as Instrument No. **2006-0106478-00**        of Official Records in the office of the Recorder of **CONTRA COSTA** County, California;

Date of Sale:    **9/11/2018 at 9:00 AM**
Place of Sale:    **At the Pleasant Hill Community Center, located at 320 Civic Drive, Pleasant Hill, CA 94523. In the Auction.com Room**
Amount of unpaid balance and other charges:  **$826,350.99**
The purported property address is:     **61 RUDGEAR DRIVE, WALNUT CREEK, CA 94596**
Assessor's Parcel No.: **187-032-011-4**

USB_0967

TS No.: **CA-15-684699-BF**

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 800-280-2832 for information regarding the trustee's sale or visit this Internet Web site **http://www.qualityloan.com**, using the file number assigned to this foreclosure by the Trustee: **CA-15-684699-BF**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the sale is set aside for any reason, including if the Trustee is unable to convey title, the Purchaser at the sale shall be entitled only to a return of the monies paid to the Trustee. This shall be the Purchaser's sole and exclusive remedy. The purchaser shall have no further recourse against the Trustor, the Trustee, the Beneficiary, the Beneficiary's Agent, or the Beneficiary's Attorney.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Date: 8/1/2018

**Quality Loan Service Corporation**
**411 Ivy Street**
**San Diego, CA 92101**
**619-645-7711 For NON SALE information only**
**Sale Line: 800-280-2832**
**Or Login to: http://www.qualityloan.com**
**Reinstatement Line: (866) 645-7711 Ext 5318**

_____

Quality Loan Service Corp. by: Ronald Alonzo, Assistant Secretary

USB_0968